1

**LAW OFFICES OF**
**RONALD A. MARRON**
2
RONALD A. MARRON (SBN 175650)
3
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
4
*skye@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
5
*mike@consumersadvocates.com*
6
651 Arroyo Drive
7
San Diego, California 92103
Telephone: (619) 696-9006
8
Facsimile: (619) 564-6665
9
*Attorneys for Plaintiff*
10
*and the Proposed Class*

11
UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA
12

13
VEDA WOODARD on behalf of
herself, all others similarly situated, and
14
the general public,

15
       Plaintiff,

16
       v.
17
LEE LABRADA; LABRADA
18
BODYBUILDING NUTRITION, INC.;
LABRADA NUTRITIONAL
19
SYSTEMS, INC.; DR. MEHMET C.
OZ, M.D.; ENTERTAINMENT
20
MEDIA VENTURES, INC. d/b/a OZ
MEDIA; ZOCO PRODUCTIONS,
21
LLC; HARPO PRODUCTIONS, INC;
22
SONY PICTURES TELEVISION, INC;
NATUREX, INC.; and INTERHEALTH
23
NUTRACEUTICALS, INC.;
24

25
       Defendants.
26

Case No.:

**CLASS ACTION COMPLAINT**

**Demand for Jury Trial**

27

28

i

CLASS ACTION COMPLAINT

1

## TABLE OF CONTENTS

JURISDICTION AND VENUE ................................................................- 1 -

NATURE OF THE ACTION ................................................................- 1 -

THE PARTIES ................................................................- 15 -

COMMON FACTUAL ALLEGATIONS ................................................- 22 -

I.    "Big Fat Lies" In the Dietary Supplement Industry .......................- 22 -

II.   Labrada Capitalizes off of the Billion Dollar Supplement Industry .............- 24 -

III.  Representations and Warranties on the Product Labels ....................- 26 -
      A. The Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER. ..........- 27 -
      B.  The Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER .............- 29 -
      C.  The Labrada Raspberry Ketones METABOLIC ENHANCER ...................- 33 -
      D.  The Labrada FAT BUSTER FAT LOSS AID ..............................- 34 -

IV.   The Labrada Marketing Scheme ................................................- 36 -

V.    Dr. Oz Misrepresents His Ties to the Supplement Industry...................- 40 -
      A. Dr. Oz Promotes Green Coffee Bean Extract ...........................- 44 -
      B. Dr. Oz Promotes Supercitrimax® Garcinia Cambogia ...................- 46 -
      C. Dr. Oz Promotes Raspberry Ketones ..................................- 48 -

VI.   False Advertising of Supercitrimax® ......................................- 49 -

VII. False Advertising of Svetol® ..............................................- 52 -

VIII. The Labrada Products Do Not Provide Weight-Loss Benefits...................- 54 -

IX.   Defendants Misrepresent the Quality of the Labrada Products .....................- 56 -

X.    False Claims regarding artificial Ingredients .............................- 57 -

XI.   Labrada Products Are Not "Made in the USA." ...........................- 58 -

JOINT LIABILITY ................................................................- 58 -

TOLLING THE STATUTE OF LIMITATIONS ....................................- 63 -

ii

CLASS ACTION COMPLAINT

CLASS ACTION ALLEGATIONS ....................................................- 64 -

CLAIMS FOR RELIEF .......................................................................- 67 -

    CLAIM FOR FRAUD AND DECEIT..........................................- 67 -

    CLAIM FOR NEGLIGENT MISREPRESENTATION ..................- 74 -

    CLAIM FOR QUASI-CONTRACT / UNJUST ENRICHMENT...................- 75 -

    CLAIM FOR UNFAIR COMPETITION .......................................- 76 -

    CLAIM FOR VIOLATIONS OF THE CLRA ................................- 79 -

    CLAIM FOR FALSE ADVERTISING..........................................- 81 -

    CLAIM FOR BREACH OF EXPRESS WARRANTY ..................- 82 -

    CLAIM FOR BREACH OF IMPLIED WARRANTY OF

    MERCHANTABILITY ................................................................- 83 -

PRAYER FOR RELIEF ......................................................................- 85 -

JURY DEMAND .................................................................................- 86 -

iii

CLASS ACTION COMPLAINT

Plaintiff Veda Woodard ("Plaintiff"), individually and on behalf of all others similarly situated and the general public, brings this action against Lee Labrada, Labrada Bodybuilding Nutrition, Inc., Labrada Nutritional Systems, Inc. (collectively "Labrada"), Dr. Mehmet C. Oz, M.D. ("Dr. Oz"), Entertainment Media Ventures, Inc. d/b/a Oz Media ("Oz Media"), Zoco Productions, LLC ("Zoco"), Harpo Productions, Inc. ("Harpo"), Sony Pictures Television, Inc. ("Sony"), Naturex, Inc. ("Naturex"), and Interhealth Nutraceuticals Incorporated ("Interhealth") (collectivley the "Defendats") demanding a trial by jury, and alleges on information and belief or by investigation of her counsel as set forth in the preceding paragraphs.

## JURISDICTION AND VENUE

1.     This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are doing business throughout this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district.

## NATURE OF THE ACTION

3.     This is a class action lawsuit on behalf of purchasers of Labrada weight-loss supplement products that include the "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER," the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER," the "Labrada Raspberry Ketones METABOLIC ENHANCER" and the Labrada FAT BUSTER FAT LOSS AID (collectively the "Labrada Products" or "Products").

4.     Through a comprehensive and uniform marketing scheme, Defendants have claimed that the Products are "*miracles in a bottle*" that will "*bust your body fat for good*." Defendants also represent that the Products are backed by multiple scientific

- 1 -

CLASS ACTION COMPLAINT

"*references*" and are effective as "***Fat Loss Aids***" and powerful "***Fat Busters***." However, the Products do not provide any weight loss benefits. Indeed, the Labrada Products are only effective at trimming the wallets of unsuspecting consumers.

5.     The Labrada Products contain purported active ingredients that are derived from plant materials, fruit extracts, and other herbal ingredients. Some of these ingredients are also proprietary brands. For example, Svetol® is a Green Coffee Bean Extract used in the Labrada FAT LOSS OPTIMIZER. Svetol® is manufactured, distributed, and sold by Defendant Naturex, Inc. According to the Svetol® website, "Svetol® is the most studied and proven green coffee bean extract for losing weight and increasing lean body mass. Svetol®, developed by Naturex, is a natural plant extract of decaffeinated green coffee. Svetol® is derived from 100% premium Robusta beans that have undergone a proprietary processing technology which extracts a high concentration of key chlorogenic acids." A product brochure states that "Svetol® inhibits glucose-6-phosphatase and increases fat release from the adipose tissue (scientifically tested)." Moreover, according to Naturex, its efficacy on weight management has been "clinically proven."

6.     The Labrada Garcinia Cambogia Product contains the proprietary active ingredient Supercitrimax®, which is manufactured, distributed, marketed, and sold by Defendant Interhealth. Supercitrimax® is a weight-loss supplement ingredient containing an extract of the *Garcinia cambogia* fruit.  According to the Interhealth website, "Super CitriMax® is a patented, 60% hydroxycitric acid (HCA) water extract from Garcinia cambogia. It is uniquely bound to calcium and potassium for maximum stability, solubility, bioavailability, and efficacy. Super CitriMax® is an established brand supported by 4 peer-reviewed clinical research publications and extensive safety research."

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

7.     Sales of weight-loss supplement products like the Labrada Products exploded after television broadcasts of *The Doctor Oz Show* featured a segment called the "Five Biggest Fat Busters for Five Body Types in Just Five Days." During that series, celebrity Defendant Doctor Mehmet C. Oz touted the "magic" benefits of Green Coffee beans, Garcinia Cambogia, and Raspberry Ketones.[1]

8.     For example, Dr. Oz stated the following about Green Coffee Bean Extract: "Magic is make believe, but [a] little bean has scientists saying they found a ***magic weight-loss cure*** for every body type. It's green coffee beans. When turned into a supplement this ***miracle pill can burn fat fast***." Similarly, Dr. Oz called Garcinia Cambogia a "***revolutionary fat buster***" and that "it could be the ***magic ingredient that lets you lose weight without diet or exercise***." With respect to Raspberry Ketones, Dr. Oz stated: "Now I've got the ***number one miracle in a bottle to burn your fat***, it's raspberry ketone."[2]

9.     As one news article noted, "Products mentioned by Dr. Mehmet Oz on *The Doctor Oz Show* have a habit of being conspicuously absent from store shelves the following day. This phenomenon, termed the 'Oz Effect,' has taken retailers by storm– and by surprise–since store managers have no advance warning that a given product will be blasted into notoriety from a mention by the 'celebri-doc.'"[3]

---

[1] *C.f.* Bahar Gholipour, *Dr. Oz's 'Miracle' Diet Pills: Five Controversial Supplements*, LIVE SCIENCE (Jun. 18, 2014 06:39 PM), http://www.livescience.com/46397-science-of-dr-oz-miracle-diet-pills.html (Providing "a look at some of the supposedly metabolism-boosting, weight-loss supplements Oz has endorsed, for which there's scarce scientific data").

[2] *See, e.g.,* http://goo.gl/w7bDVs (episode featuring Green Coffee Bean Extract); http://goo.gl/mZ55gF (episode featuring raspberry ketones); http://goo.gl/KuEOL8 (episode featuring garcinia cambogia).

[3] *See* Alice G. Walton, *The Oz Effect: Medicine or Marketing*, FORBES (June 6, 2006), http://goo.gl/XM1rav.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10



11   10.   Despite the representations made by Dr. Oz and the other Defendants,
12   "there is no miracle pill that can help Americans lose excess weight, so [consumers]
13   have to rely on responsible behavior – including eating right and being physically
14   active."[4]   In fact, all credible scientific evidence shows that supplement products
15   containing green coffee beans, Garcinia Cambogia, and Raspberry Ketones do not
16   work to help users lose weight. One randomized-controlled study that evaluated the
17   efficacy of Garcinia Cambogia as a weight-loss aid found that participants who were
18   taking Garcinia Cambogia showed no significant difference in weight-loss than
19   participants taking a placebo.[5]

20   11.   As a renowned surgeon at Columbia University with specialized medical
21   and scientific knowledge, Dr. Oz knew that the claims he was making about the
22   supplements being "miracle fat busters" were patently false or misleading consumers.
23   Dr. Oz concealed his fraud by affirmatively representing to  consumers that he was
24

25   [4] Staff Report, *Deception in Weight-Loss Advertising Workshop: Sizing Opportunities
26   and Building Partnerships to Stop Weight- Loss Fraud*, FEDERAL TRADE COMMISSION
     (Dec. 2003), https://goo.gl/2sevyj.
27   [5] *See* Heymsfield *et al.*, *Garcinia cambogia (Hydroxycitric Acid) as a Potential
     Antiobesity Agent: A Randomized Controlled Trial*, J. AM. MED. ASS'N, VOL. 280, NO.
28   18 (1998), http://goo.gl/iO2Njs.

CLASS ACTION COMPLAINT

giving his objective opinion about the products based on his specialized knowledge. Dr. Oz has consistently maintained that he does not promote any specific brand of supplements. He even launched a campaign called "IT'S NOT ME" that is designed to "warn viewers about rogue marketers engaged in copyright infringement by using the Dr. Oz name." On multiple episodes of *The Dr. Oz Show,* he also made statements like: *"*I'M GOING TO SAY SOMETHING FOR EVERYBODY TO HEAR, <u>I DON'T SELL THE STUFF</u>, <u>I DON'T MAKE ANY MONEY OFF THIS</u>, AND <u>I'M NOT GOING TO MENTION ANY SPECIFIC BRANDS</u>."[6]

12.    But Dr. Oz does promote particular brands of weight-loss proprietary ingredients like Supercitrimax® and Svetol® as well as supplement products like  the Labrada Products.

13.    *The Dr. Oz Show* frequently features special guests who use their titles as "doctors" and "nutrition experts" to mislead consumers about the effectiveness of the Products. For example, Dr. Oz once featured Dr. Harry Preuss in an episode about Garcinia cambogia. Dr. Oz stated "Revolutionary new research says [garcinia] could be the magic ingredient that lets you lose weight without diet or exercise. Dr. Harry Preuss is at the forefront of the research." But Dr. Harry Preuss is a paid spokesperson for Interhealth.[7] Defendants have omitted material facts about the "science" and their "studies" supporting the products. One material fact that has been concealed from consumers is that ***Dr. Preuss has co-authored over ninety clinical studies with Dr. Debasis Bagchi — Interhealth's Senior Vice President of Research and Development***.[8] Almost every study finds that a herbal supplement extract of some kind

---

[6] A clip of that episode is available at the following link beginning at the 03:35 mark on the timeline: http://goo.gl/eJXQgS.

[7] *See Biography of ANH-USA Board Member Harry G. Preuss*, ALLIANCE FOR NATURAL HEALTH, http://goo.gl/ZVDjkp (noting that Dr. Preuss is a "consultant" for Interhealth).

[8] *See Biography of Debasis Bagchi*, iHEALTH TUBE.COM, https://goo.gl/Zghpse; Curriculum Vitae of Harry G. Preuss, M.D., http://www.ihtglobal.com/hgpcv.pdf.

CLASS ACTION COMPLAINT

is "effective" or "novel,"  as summarized on the following table:

| PRODUCT: | PREUSS WAS PAID BY: | RESULTS: |
| --- | --- | --- |
| Coenzyme Q10 to prevent free radicals.[9] | The manufacturer | It works! |
| A "novel" fenugreek extract to treat hormonal disorders[10] | The manufacturer | It works! |
| A "novel" extract of Trigonella Foenum-Graecum seed to treat diabetes[11] | The manufacturer | It works! |
| A "novel" grape seed extract to repair DNA damage[12] | The manufacturer | It works! |
| Konjac glucomannan for significant weight loss[13] | The manufacturer | It works! |
| Two coconut oils for treatment of staph infections[14] | The manufacturer | It works! |
| Maitake mushroom extracts to decrease hypertension[15] | The manufacturer | It works! |

[9] http://www.ncbi.nlm.nih.gov/pubmed/20213261

[10] Pruess, et al., *Efficacy of a Novel Fenugreek Seed Extract (Trigonella foenum-graecum, Furocyst) in Polycystic Ovary Syndrome (PCOS)*, http://www.ncbi.nlm.nih.gov/pubmed/20567593

[11] Pruess, et al., *Safety, efficacy and toxicological evaluation of a novel, patented anti-diabetic extract of Trigonella Foenum-Graecum seed extract (Fenfuro)*, http://www.ncbi.nlm.nih.gov/pubmed/25045923

[12] Pruess, et al., *Mechanistic pathways of antioxidant cytoprotection by a novel IH636 grape seed proanthocyanidin extract.* http://www.ncbi.nlm.nih.gov/pubmed/12587719

[13] Pruess, et al., *Konjac Glucomannan Dietary Supplementation Causes Significant Fat Loss in Compliant Overweight Adults.* http://www.ncbi.nlm.nih.gov/pubmed/26492494

[14] Pruess, et al *In vitro and in vivo effects of two coconut oils in comparison to monolaurin on Staphylococcus aureus: rodent studies*, http://www.ncbi.nlm.nih.gov/pubmed/23767861

[15] Pruess, et al *Maitake mushroom extracts ameliorate progressive hypertension and other chronic metabolic perturbations in aging female rats.*, *http://www.ncbi.nlm.nih.gov/pubmed/20567593*

- 7 -

CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| Saw Palmetto to treat prostate growth[16] | The manufacturer | It works! |
| A "novel" potassium bound form of HCA extracted from Garcinia cambogia[17] | Defendant Interhealth (The manufacturer) | It works! |

14.    Many of the Preuss/Bachgi studies were also performed in India at a research center called the "Laila Impex." However, the Laila Impex is operated by Laila Nutraceuticals— one of India's largest supplement exporters.[18] Supercitrimax® is actually manufactured by Laila Nutraceuticals in India and then imported into the United States by Interhealth.[19] Defendants do not disclose this fact and instead make affirmative representations to the contrary by saying the Labrada Products are "Made in the USA."

15.    Interhealth was even assigned the patent rights to Supercitrimax® directly from Laila or its executives.[20] For example, at least two patents note that the assignor was "Ganga Raju, Gokaraju" and the assignee is Defendant Interhealth. Mr. Ganga Raju is the founder of the multi-billion dollar Laila Group of companies and is a member of India's parliament.[21]

16.    Defendants have also concealed material facts about the clinical studies supporting Green Coffee Bean extract.  One study that was touted by Dr. Oz was

---

[16] Preuss, et al., *Comparison of Saw Palmetto (extract and whole berry) and Cernitin on prostate growth in rats*,  http://www.ncbi.nlm.nih.gov/pubmed/12962139

[17] Preuss, et al., *Efficacy of a novel calcium/potassium salt of (-)-hydroxycitric acid in weight control,* http://www.ncbi.nlm.nih.gov/pubmed/16366421.

[18] *See Laila Nutraceuticals in talks with global PEs to raise $40 million, may offer 40 percent stake*, THE ECONOMIC TIMES (Aug. 21, 2014), http://goo.gl/0OlgU0.

[19] *See id.* (explaining that "Laila Nutra has its manufacturing facility in Vijayawada, Andhra Pradesh, [India] and supplies [its] ingredients to its overseas clients such as US-based PL Thomas Inc. and Interhealth Nutraceuticals Inc.").

[20] *See, e.g.,*  U.S. Patent Nos. 6,875,891; 7,943,186; 7,858,128.

[21] *See* Gokaraju Ganga Raju, WIKIPEDIA.ORG, https://en.wikipedia.org/wiki/Gokaraju_Ganga_Raju.

CLASS ACTION COMPLAINT

1  ***retracted by the journal that published it*** after an FTC investigation revealed that "the

2  principal investigator repeatedly: (1) altered the weights and other key measurements

3  of the subjects; (2) changed the length of the trial; and (3) confused which subjects took

4  either the placebo or [Green Coffee Bean Extract] at various points during the trial."[22]

5  That same study actually ***appears on the bottle of the Labrada Green Coffee Product***.

6

7

8

9

10

11

12

13  

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27  [22] *See FTC v. Applied Food Sciences, Inc.*, Civ. No., 1-14-cv-00851 (W.D. Tex. Sept.

28  8, 2014), https://www.ftc.gov/system/files/documents/cases/140908afscmpt.pdf.

- 9 -

CLASS ACTION COMPLAINT

1

2      17.     Below is how the *Vinson* study now appears online at the U.S. National

3  Library of Medicine's website:[23]

4



[23] U.S. NAT. LIB. OF MED., NAT. INST. HEALTH, PMC I.D. No. PMC3267522,
http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3267522/.

CLASS ACTION COMPLAINT

18. The retracted *Vinson* study was first widely-disseminated to the public and the media by Doctor Joe Vinson himself at the 243rd National Meeting & Exposition of the American Chemical Society (ACS), which took place at the San Diego Convention Center on March 27, 2012.[24]



Dr. Joe Vinson announces results of a now-retracted study showing that green coffee beans can help dieters lose weight. Taken at the March 2012 meeting of the American Chemical Society in San Diego. *Bradley J. Fikes*

19. Other studies cited in support of Svetol®, Supercitrimax®, and Raspberry Ketones all suffer from similar flaws and Defendants conceal material facts about how the studies were conducted or misrepresent the studies altogether. Some of the more prominint flaws include the following:

- Multiple studies cited on the labels used rodents like "Sprague-Dawley rats" as the test subjects instead of actual human beings who are likely to use the products.

---

[24] *See* Bradley J. Fikes, *Study on coffee, weight loss retracted*, SAN DIEGO UNION-TRIBUNE (Oct. 22, 2014 1:03 PM), http://goo.gl/sVZttB (Providing a video recording of the presentation).

- 11 -

CLASS ACTION COMPLAINT

- Each and every one of the studies suffers from flawed methodologies and are not the result of accepted scientific methodologies for conducting clinical studies.

- Several studies were completely funded by supplement manufacturers or were conducted in "research facilities" in India that are owned and operated by affiliated supplement manufacturers.

- The researchers who conducted several of the studies were employees of the ingredient manufacturers.

- Several studies were conducted *in Vitro* by using cell cultures instead of actual human beings.

- The test subjects in several studies were given other supplements *in addition to* Garcinia Cambogia and/or Green Coffee Bean Extract.

20.   Defendants have misled the public about the true nature of their studies. Plaintiff and the Class relied on Defendants' representations that the Products are supported by scientific "references" and are effective for use as weight loss aids.

21.   Aside from the faulty and biased clinical studies touted by Defendants, no credible studies are showing that green coffee bean extract, Garcinia cambogia, and raspberry ketone supplements work at all to help users lose weight. In fact, several reliable and peer-reviewed studies show that the supplements do not work at all to aid weight loss as further discussed in this complaint.

22.   The sale of fraudulent weight-loss supplements is a matter of national concern and sales of falsely labeled products— such as the Labrada Products— has become an epidemic.  In fact, Dr. Oz was even called to testify before the United States Senate's Consumer Protection, Product Safety, Insurance, and Data Security

CLASS ACTION COMPLAINT

Subcommittee regarding the marketing and sales of supplement products.[25] Committee Chairwoman, Senator Clair McCaskill of Missouri, was the first to question Dr. Oz about the science behind supplements containing Garcinia Cambogia, Green Coffee Bean Extract, and Raspberry Ketones.[26]

**SENATOR McCASKILL:**

I can't figure this out Dr. Oz...I get that you do a lot of good on your show.  I understand that you give a lot of information that's great information about health, and you do it in a way that's understandable.  You're very talented, you're obviously very bright.  You've been trained in science-based medicine.

Now, here are three statements you've made on your show:

- **'YOU MAY THINK MAGIC IS MAKE-BELIEVE, BUT THIS LITTLE BEAN HAS SCIENTISTS SAYING THEY'VE FOUND THE MAGIC WEIGHT-LOSS CURE FOR EVERY BODY TYPE.  IT'S GREEN COFFEE EXTRACT.'**
- **'I'VE GOT THE NUMBER ONE MIRACLE IN A BOTTLE TO BURN YOUR FAT!  IT'S RASPBERRY KETONES.'**
- **'GARCINIA CAMBOGIA: IT MAY BE THE SIMPLE SOLUTION YOU'VE BEEN LOOKING FOR TO BUST YOUR BODY FAT FOR GOOD.'**

I don't get why you need to say this stuff, because ***you know it's not true!***  So why, when you have this amazing megaphone, and this amazing ability to communicate, why would you cheapen your show by saying things like that?"

---

[25] *Protecting Consumers from False and Deceptive Advertising of Weight-Loss Products: Hearing Before the Subcomm. On Consumer Protection, Product Safety, And Insurance,* 113th CONG., 65–71 (2014), https://goo.gl/xy6gVY.

[26] *See* "*Sen. McCaskill Questions Dr. Oz on 'Flowery' Language on His Show,*" C-SPAN, http://goo.gl/Dh4K1D.

CLASS ACTION COMPLAINT

**DR. OZ:**

Well, if I could disagree about whether they work or not, and I'll move on to the issue of the words that I used.

And just with regards to whether they work or not - take green coffee bean extract as an example - I'm not going to argue that it would pass FDA muster if it was a pharmaceutical drug seeking approval.  But among the natural products that are out there, this is a product that has several clinical trials.  There was one large one, one very good quality one, that was done the year we talked about this in 2012 [Referring to the Retracted *Vinson* Study]**.**

**SENATOR McCASKILL:**

I want to know about that clinical trial.  Because the only one I know was 16 people in India that were paid for by the company that was— at the point in time you initially talked about this being a 'miracle'— ***the only study that was out there was the one with 16 people in India that was written up by somebody who was being paid by the company who was producing it***.

****

**SENATOR McCASKILL:**

Well then why would you say something is a miracle in a bottle?

**DR. OZ:**

My job, I feel, on the show is to be a cheerleader for the audience.  And when they don't think they have hope and when they don't think they can make it happen, I'm willing to look and I do look everywhere, including alternative healing traditions, for any evidence that might be supportive to them.

- 14 -

CLASS ACTION COMPLAINT



23.     Plaintiff brings this class action on behalf of herself and all other similarly situated purchasers of Labrada brand weight loss products containing Garcinia Cambogia, Green Coffee Bean Extract, and Raspberry Ketones who were duped into paying for worthless weight-loss supplements. Plaintiff and the Class members hereby seek redress for Defendants' intentional misrepresentations, fraudulent concealments, breaches of express and implied warranties, violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, violations of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* and other unjust and inequitable conduct committed by Defendants.

## THE PARTIES

### I.     Plaintiff Veda Woodard

24.     Plaintiff Veda Woodard, is a resident of Murrieta, California. Plaintiff Woodard purchased the "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER," the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER," and the "Labrada Raspberry Ketones METABOLIC ENHANCER" on multiple occasions

- 15 -

CLASS ACTION COMPLAINT

beginning on or around June of 2013 and continuing until approximately December of 2013 from Vitamin Shoppe stores located in Murrieta, California and in Temecula, California. Plaintiff Woodard paid approximately $14.99 to $19.99 for each of the Products that she purchased.

25.     Plaintiff Woodard saw the Misrepresentations prior to and at the time of purchase and understood them as representations and warranties that the Products were safe and effective for weight loss and fat loss as advertised.  Ms. Woodard relied on the representations made on the Products' label in deciding to purchase the Products. Additionally, Plaintiff Woodard saw episodes of *The Doctor Oz Show* that promoted the products and relied on the representations made on *The Doctor Oz Show* in deciding to purchase the Products.  These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Products had she known the representations were false. She also understood that in making the sale, the retailer was acting with the knowledge and approval of and/or as the agents of Defendants. She also understood that the purchase involved a direct transaction between herself and the ingredient manufacturers because her purchase came with the ingredients manufacturers misrepresentations and warranties that the products were, in fact, safe and effective for weight loss and fat loss, among other things. Plaintiff Woodard would consider purchasing the Products again if the advertising statements made on the Product labels and in the Product advertisements were, in fact, truthful and represented in a manner as not to deceive consumers.

## II.     Defendant Lee Labrada

26.     Defendant Lee Labrada is a resident of Tomball, Texas. Defendant Lee Labrada is the founder, president, and C.E.O. of both Defendant Labrada Body Building, Inc. and Defendant Labrada Nutritional Systems, Inc. Defendant Lee Labrada is a public figure who is recognized as a world-renowned bodybuilder.

27.     Defendant Lee Labrada develops, manufactures, promotes, markets, distributes, and/or sells the Labrada Products across the United States, including to

- 16 -

CLASS ACTION COMPLAINT

hundreds of thousands of consumers in California. Lee Labrada has authorized and ratified the use of his name, image, and likeness to promote the Labrada Products and has reaped substantial profits thereby.

### III.   Defendant Labrada Body Building, Inc.

28.     Defendant Labrada Bodybuilding Nutrition, Inc. is a corporation organized under the laws of the state of Texas that maintains its principal place of business at 333 North park Central Drive, Suite Z, Houston, Texas. Defendant Labrada Body Building, Inc. develops, manufactures, promotes, markets, distributes, and/or sells the Labrada Products across the United States, including to hundreds of thousands of consumers in California. Defendant Lee Labrada is the Chief Executive Officer and Founder of Labrada Bodybuilding Nutrition, Inc. According to the United States Patent and Trademark Office, Defendant Labrada Bodybuilding Nutrition is the owner of the "Labrada Nutrition" trademark. The labels and packaging for the Labrada Products uniformly state that the Labrada Products are "Developed and Manufactured for Labrada Nutrition."

### IV.   Defendant Labrada Nutritional Systems, Inc.

29.     Defendant Labrada Nutritional Systems, Inc. is a corporation organized under the laws of the state of Texas that maintains its principal place of business at 333 North park Central Drive, Suite Z, Houston, Texas. Defendant Labrada Nutritional Systems, Inc. develops, manufactures, promotes, markets, distributes, and/or sells the Labrada Products across the United States, including to hundreds of thousands of consumers in California. Defendant Lee Labrada is the Chief Executive Officer and Founder of Labrada Nutritional Systems, Inc.

### V.   Defendant Dr. Mehmet C. Oz, M.D.

30.     Defendant Dr. Mehmet C. Oz, M.D. ("Dr. Oz") is a resident of New York City, New York. Defendant Dr. Mehmet C. Oz has been called "America's Doctor"[27]

_____

[27] "AMERICA'S DOCTOR" is a registered trademark owned by Dr. Mehmet C. Oz.

CLASS ACTION COMPLAINT

by Oprah Winfrey and was a frequent guest on *The Oprah Winfrey* television show. In 2009, Harpo Productions—Oprah's production company— began producing *The Dr. Oz Show* featuring Defendant Dr. Mehment C. Oz. *The Dr. Oz Show* is a three-time Emmy Award-winning broadcast that aired its 1,000th episode in May of 2015. The show is broadcast in all U.S. markets in 118 countries around the word.  Additionally, Dr. Oz has authored seven *New York Times* bestselling books. According to a *Bloomberg* biography, Dr. Oz is affiliated with several venture capital firms, hospitals, pharmaceutical manufacturers, and distributors.[28] Defendant Dr. Mehmet C. Oz promotes and markets the Labrada Products (and/or their active ingredients)  across the United States, including to hundreds of thousands of consumers in California.

## VI.   Defendant Entertainment Media Ventures, Inc. d/b/a Oz Media

31.    Defendant Entertainment Media Ventures, Inc. d/b/a Oz Media ("Oz Media" or "EMV") is a California corporation that maintains its principal place of business at 5225 Wilshire Blvd. #777, Los Angeles, California 90036. EMV is registered to do business in California as entity number C2133554. Defendant EMV is an entertainment venture capital firm that is operated by Dr. Oz's Hollywood agent, Sanford R. Climan. Mr. Climan rose to success as an agent at the Creative Artists Agency ("CAA") and has represented actors by the likes of Robert De Niro, Robert Redford, Kevin Costner, Danny DeVito, and Michael Man. In 2013, "Mr. Climan partnered with Dr. Mehmet Oz to form Oz Media, which is dedicated to building companies committed to improving health and wellness across cultures and geographies."[29] Defendant Oz Media is responsible for the marketing and promotion of the Labrdada Products (and/or their active ingredients) across the United States, including to hundreds of thousands of consumers in California.

## VII.   Defendant Zoco Productions, LLC

32.    Defendant Zoco Productions, LLC ("Zoco") is a Delaware limited

---

[28]Executive Profile of Dr. Oz, BLOOMBERG, http://goo.gl/YjH84n.
29 http://emventures.com/who-we-are/.

CLASS ACTION COMPLAINT

1  liability company that maintains its principal place of business in New York City, New

2  York. Zoco produces *The Doctor Oz Show* and operates the website for the *The Doctor*

3  *Show*. Defendant Zoco promotes and markets the Labrada Products (and/or their

4  proprietary active ingredients) across the United States, including to hundreds of

5  thousands of consumers in California.

6  **VIII.  Defendant Harpo Productions, Inc.**

7  33.   Defendant Harpo Productions, Inc. is an Illinois corporation that

8  maintains its principal place of business in Chicago, Illinois. According to its LinkedIn

9  web page, "Harpo Productions (also referred to as Harpo Studios) is a multimedia

10  production company founded by Oprah Winfrey and is based in Chicago, Illinois. It is

11  the most successful production company in daytime talk, producing The Oprah

12  Winfrey Show, The Dr. Oz Show, and The Nate Berkus Show, as well as having

13  developed Dr. Phil and Rachael Ray. Also, Harpo creates and produces original

14  television programming for broadcast, syndication, and cable." Harpo is Oprah spelled

15  backwards. Based on information and belief, Defendant Zoco is a wholly-owned

16  subsidiary of Defendant Harpo.   Defendant Harpo promotes and markets the Labrada

17  Products (and/or their proprietary active ingredients) across the United States,

18  including to hundreds of thousands of consumers in California.

19  **IX.   Defendant Sony Pictures Television, Inc.**

20  34.   Defendant Sony Pictures Television, Inc. ("Sony") is a Delaware

21  corporation that maintains its principal place of business at 10202 W Washington

22  Blvd., Spp #119 Culver City, California. Sony is registered to do business in California

23  as entity number C1619277. Sony is one of the world's largest content providers. An

24  article that appeared on the Oprah Winfrey website in 2009 stated the following:

25  Dr. Mehmet C. Oz, MD, better known to millions as Dr. Oz, the renowned

26  and popular surgeon, educator, and best-selling author who appears

27  regularly on The Oprah Winfrey Show, will debut in first-run syndication

28  next year with a series co-produced by Harpo Productions and Sony

- 19 -

CLASS ACTION COMPLAINT

Pictures Television (SONY) and distributed by SONY, it was jointly announced today by Oprah Winfrey; Tim Bennett, president, Harpo Productions; and Steve Mosko, president, Sony Pictures Television.   The series, Dr. Oz (working title), will be available to stations across the country to launch in Fall 2009. Under the multi-year agreement, SONY will handle all distribution efforts for the show in the United States and Canada, advertiser sales and marketing, and co-produce the series with Harpo Productions.[30]

35.    Defendant Sony promotes and markets the Labrada Products (and/or their active ingredients) across the United States, including to hundreds of thousands of consumers in California.

## X.    Defendant Naturex, Inc.

36.    Defendant Naturex, Inc. ("Naturex") is a Delaware corporation that maintains its principal place of business at 375 Huyler Street, South Hackensack, New Jersey. Defendant Naturex develops, manufactures, promotes, markets, distributes, and/or sells the Svetol® brand Green Coffee Bean Extract ingredient and the Labrada Green Coffee Bean Product with Svetol® throughout the United States, including in California. Defendant Naturex, Inc. is registered to do business in the state of California as entity number C1575823.

37.    According to the U.S. Patent and Trademark Office, the "Svetol" trademark is owned by Naturex, S.A, which is the French holding company for Naturex, Inc. The Naturex LinkedIn web page describes the company's business operations as follows:

Naturex is the global leader in specialty plant-based natural ingredients. Through its dedicated business units, the Group addresses

---

[30] *See* Press Release, *Harpo Productions and Sony Pictures Television to Launch Dr. Oz* (Jun. 13, 2009), http://www.oprah.com/pressroom/Harpo-Productions-and-Sony-Pictures-Will-Launch-Dr-Oz.

CLASS ACTION COMPLAINT

the specific needs of 3 strategic markets: Food & Beverage, Nutrition & Health, and Personal Care. The company offers its customers a full array of high quality ingredients, responsibly sourced from nature for food, pharmaceutical, nutraceutical and cosmetic applications. Naturex's head office is in Avignon, France. The company employs more than 1,700 people and benefits from 8 sourcing offices around the world and high-performance manufacturing operations across 15 sites in Europe, Morocco, the United States, Brazil, Australia, India and Chile. It also has a global commercial presence through a dedicated network of 25 sales offices.[31]

38.   The "Naturex Group" maintains three offices and two "multifunction sites" in the United States. A Naturex sales office is located 3080 Bristol Street, Suite 540, Costa Mesa, California 92626.

**XI.   Defendant Interhealth Nutraceuticals, Inc.**

39.   Defendant Interhealth Nutraceuticals Incorporated ("Interhealth") is a California Corporation with its principal place of business at 5451 Industrial Way, Benicia, California 94510. Interhealth develops, manufactures, promotes, markets, distributes, and/or sells Supercitrimax® and the Labrada Garcinia Cambogia with Supercitrimax® product across the United States, including to hundreds of thousands of consumers in California.

40.   According to its website, "InterHealth Nutraceuticals specializes in researching, developing, marketing and distributing proprietary branded nutraceutical ingredients. InterHealth ingredients are sold worldwide to manufacturers of dietary supplements and functional foods & beverages." Interhealth is the owner of the "Supercitrimax" trademark.

41.   Interhealth's Supercitrimax® trademark and logo appear on the bottles of the Labrada Garcinia Cambogia.

---

[31] *See* LinkedIn: Naturex, https://www.linkedin.com/company/naturex.

CLASS ACTION COMPLAINT

## COMMON FACTUAL ALLEGATIONS

**I.     "Big Fat Lies" In the Dietary Supplement Industry**

42.   Sales of weight loss supplements in America is a $37-billion a year industry.[32] To take advantage of Americans desperate for anything that will make it easier to lose weight, scammers flock to the weight-loss supplement industry to make a quick buck. In fact, "More than one in ten fraud claims submitted to the FTC are, in fact, for weight-loss products."[33]

43.   In 2004, the FTC launched "Operation Big Fat Lies" to "stop deceptive advertising and provide refunds to consumers harmed by unscrupulous weight-loss advertisers; encourage media outlets not to carry advertisements containing bogus weight-loss claims; and educate consumers to be on their guard against companies promising miraculous weight loss without diet or exercise." More than ten years later, the sales of bogus weight-loss supplements continue to defraud consumers. In 2014, the FTC again took action by releasing its "Gut Check" publication that seeks help the media spot false weight loss claims. Nonetheless, The FTC's efforts have proven mostly ineffective in stopping bogus supplement sales likely due to the agency's budget restraints and lobbying efforts from deep-pocketed supplement manufacturers. Since 1927, the FTC has filed only a little more than 250 cases against marketers of deceptive weight-loss products. Most of these suits involve small fly-by-night operations instead of the largest players in the industry.

44.   Meanwhile, consumers continue to lose money on products that simply do not work. Even worse, some of these weight-loss products are extremely dangerous and have been linked to multiple fatalities. An article by CBS News stated the following:

---

[32] Elizabeth O'Brien, *Dietary supplements: a $37 billion-a-year scam?,* CBS NEWS (Jan. 22, 2016 12:57 PM), http://goo.gl/AmFOYv.

[33] *Protecting Consumers from False and Deceptive Advertising of Weight-Loss Products*: *Hearing Before the Subcomm. On Consumer Protection, Product Safety, And Insurance,* 113th CONG., 65–71 (2014), https://goo.gl/xy6gVY

CLASS ACTION COMPLAINT

In a normal world a company like Iovate Health Sciences, maker of the diet supplement Hydroxycut, shouldn't exist. Twice its products have killed people. Twice its products have been removed from the market by the FDA. Twice the company has "reformulated" the product to replace its active ingredient with a completely different substance. Yet Iovate continues to sell its snake oil, making the same "clinically proven" claims for each generation of its product, often with identical wording.

This bizarre operation was summed up in a recent federal court ruling allowing a class-action suit against the company to proceed. The case stems from the FDA's decision to remove Hydroxycut from the market in 2009, after it received 23 reports of liver damage from the drug and at least one death.

Although Iovate had marketed Hydroxycut as 'clinically proven' to help consumers 'lose weight fast,' 'without any unwanted side effects,' and that the products are 'backed by science,' there was no clinical proof of Hydroxycut's safety or efficacy. The ruling notes that in one study commissioned by Iovate, subjects using Hydroxycut lost less weight than the placebo group.

*******

Hydroxycut used to contain ephedra until it was banned by the FDA for triggering heart attacks and at least one death specifically linked to Hydroxycut. Iovate replaced that active ingredient with **Garcinia Cambogia,** a fruit native to Asia and Africa and used by very poor people to make meals more filling. ***It has never been proven to help with weight loss, according to the ruling.***[34]

---

[34] *See* Jim Edwards, *How Hydroxycut Stays in Business Despite Deaths, Recalls and a Class-Action Suit*, CBS NEWS (Jun. 3, 2011), http://goo.gl/uGeQU5.

CLASS ACTION COMPLAINT

45.    Not only did the reformulated version of Hydroxycut use Garcinia cambogia as an ingredient, but Hydroxycut also contained Garcinia cambogia that is manufactured by Defendant Interhealth. Now, Interhealth manufacturers, markets, distributes and sells Supercitrimax® Garcinia cambogia through a syndicate supplement network comprised of companies like Labrada who directly market the products to consumers. However, supplement suppliers also covertly market their proprietary ingredient products through use of daytime television shows like *The Dr. Oz Show*. Consumers are duped into believing that these paid endorsements are neutral and provided by a real disinterested doctor who assured them that "he does not sell the stuff."

## II.    Labrada Capitalizes off of the Billion Dollar Weight-Loss Supplement Industry

46.    Labrada Nutrition and Labrada Bodybuilding were founded by Defendant Lee Labrada, a former professional bodybuilder who has won 22 professional bodybuilding titles. Defendant Lee Labrada is also one of the few pro bodybuilders who has placed in the top four at the "Mr. Olympia" competition seven consecutive years in a row; a feat he shares with the likes of Arnold Schwarzenegger.

47.    In 1995, Defendant Lee Labrada founded Labrada Nutrition and launched the Labrada Product line that consists mostly of protein powders and other muscle building "stacks."  Labrada is also well-known for its Lean Body® line of protein shakes that are sold at major retail stores like Walmart.

48.    According to *Bloomberg*, "Mr. Labrada guided Labrada Nutrition to become one of the fastest growing privately-held companies in the U.S.-earning Inc. 500 status-in only six years."[35]

---

[35] *See Executive Profile of Lee Labrada*, BLOOMBERG ONLINE, http://goo.gl/LS8pAb.

- 24 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    49.    The Labrada website claims that "**Labrada supplements are proven to**
20  **work, both in the lab and in the field, to help you reach your physique goals**. Our
21  products are backed by scientific research and studies- not hype. When you choose a
22  Labrada supplement, you are using a quality product that contains efficacious amounts
23  of active ingredients, not the 'pixie dust' sprinkling that most competitors sell you
24  under the guise of a 'proprietary blend.' It's right there on the label for you to see. We
25  call that 'truth in labeling.'"[36]

26    50.    Labrada began selling weight-loss supplements containing Garcinia

27

28  [36] http://www.labrada.com/company.

CLASS ACTION COMPLAINT

1   Cambogia, Green Coffee Bean Extract, and Raspberry Ketone sometime around 2012

2   under its "Wellness Line" brand of products. Each of the Labrada Products at issue in

3   this complaint sell at a retail price of approximately $19.99, except the Raspberry

4   Ketone Product that sells at retail for approximately $10.99.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21     **III.    Representations and Warranties on the Product Labels**

22       51.    For purposes of this section, each statement that appears in quotation

23   marks ("") below create affirmative representations about the Products and also create

24   express and implied warranties that were relied on by Plaintiff and the Class members

25   in deciding to purchase the products.

26       52.    These statements will from now on be referred to in this Complaint as the

27   "Express Warranties."

28

CLASS ACTION COMPLAINT

1
2          ***A.  The Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER.***
3
4
5
6
7
8
9
10
11
12          
13
14
15
16
17
18
19
20
21
22
23          53.     The front label of the Labrada Green Coffee Bean Extract deceptively
24   states that the product is a "Fat Loss Optimizer" that is "From the Makers of LEAN
25   BODY." The front label further states that the product contains "Svetol®, 45%
26   Chlorogenic Acid," and is "Stimulant Free."
27          54.     The side-label of the Product states "**Green Coffee Bean Extract** is a
28

- 27 -

CLASS ACTION COMPLAINT

1  natural powder extract from unroasted coffee beans. Green Coffee Bean Extract is rich

2  in natural compounds, such as chlorogenic acids, that are known to have health benefits

3  and to influence glucose and fat metabolism."



23  55.  The side-label further states that "Recent peer-reviewed published studies

24  have found that Green Coffee Bean Extract" does the following:

- **"Helps Support Significant Fat Loss."** and

- **"Contains Natural Anti-Oxidant Properties"**

27  56.  Below these statements is a "**References**" section that is surrounded by a

CLASS ACTION COMPLAINT

bright red rectangle that cites the following studies that purportedly support the product's weight-loss benefits:

1. "Vinson JA, et al. Diab. Metab. Snyder & Obes. Jan 2012"

2. "Farah A, et al. Jour of Nutr. Dec. 2008"

57.    The back label of the Labrada Green Coffee Bean Product states "Green Coffee Bean Extract: 400 mg," then below that statement reads "Svetol®** Standardized to 45-50% total Chlorogenic Acids.

58.    The back label then has a "Other Ingredients" section that reads "Gelatin, Maltodextrin, Magnesium Stearate, Silica, Sodium Copper Chlorophyllin, and titanium dioxide." In bold-face typed capital letters on the back label appear the statements:

    a) **"ZERO FILLERS"**

    b) **"ZERO BINDERS"**

    c) **"ZERO ARTIFICIAL INGREDIENTS."**

59.    Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons described herein.

**B. The Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER**

60.    The front label of the Labrada Garcinia Cambogia states that the product is a "**Dual Action Fat Buster**" that:

- "Increases Fat Burning,"

- "Curbs Appetite to Aid Weight Loss,"

61.    The front label further says that the Product is "From the Makers of LEAN BODY" and is made with "Supercitrimax® 60% HCA."

- 29 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

62.    The Labrada Garcinia Cambogia side label states that "Labrada Garcinia Cambogia with Super CitriMax® is a <u>Dual Action Fat Buster</u>" and "Studies suggest that HCA may inhibit body fat formation and suppress appetite." The label further states, "Use of 2800-3000 mg/day of HCA for 8 weeks has been shown to:"

- "Reduce body weight"
- "Curb appetite and food intake"
- "Boost fat burning during exercise and enhances glycogen synthesis"

63.    The side label also contains a "References" section that cites to the following three publications:

- "Preuss HG, Rao CV, Garis R., et al., *Journal of Medicine* 2004; 35 (1-6):33-48."
- "Downs BW, Bagchi M. Subbaraju GV, et al. Mutation Research 2005; 579 (1-2): 149-162."
- "Chen IS, Haung SW Lu HC, et al. British Journal of Nutrition. Apr. 2012; 107(7): 1048-1055."

64.    The side label further features the "SuperCitrimax" logo next to a statement saying that "Super CitriMax® is a registered trademark of Interhealth N.I."

65.     The back label of the Labrada Garcinia cambogia Product states "Garcinia Cambogia Extract: 1560mg," then below that statement reads "standardized minimum 60% (-)- Hydroxycitric acid (HCA) 936 mg."

66.    The back label then has a "Other Ingredients" section that reads "Hypromellose (capsules)," and "Titanium Dioxide."

67.    In bold-face typed capital letters on the back label appear the statements:

- **"ZERO FILLERS"**
- **"ZERO BINDERS"**
- **"ZERO ARTIFICIAL INGREDIENTS."**

- 31 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

68.     The back label further states that the Product is "Made in the USA" next to a picture of an American Flag.

69.     Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

### C. The Labrada Raspberry Ketones METABOLIC ENHANCER

70.     The front label of the Labrada Raspberry Ketones deceptively states that the product is a "*Metabolic Enhancer*" that provides "*Natural Fat Loss Support*" and is "From the Makers of **LEAN BODY**." The front label further states the following:

- **"Supports Body Fat Reduction"**
- **"Increases Lipolysis"**
- **"Healthy Anti-Oxidant"**



CLASS ACTION COMPLAINT

71.    The back label of the Labrada Raspberry Ketones Product states "Raspberry Ketones: 100mg." The back label then has a "Other Ingredients" section that reads "Gelatin (capsule)," "Maltodextrin," "Magnesium Stearate," "Silica," "Titanium Dioxide Capsule" "(FD&C  Red #40, FD&C Blue #1)."

72.    Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

**D. The Labrada FAT BUSTER FAT LOSS AID**



CLASS ACTION COMPLAINT

73.    The front label of the Labrada Fat Buster Fat Loss Aid deceptively states that the product is a "***Fat Buster***" and a "***Natural Fat Burner***" that is "From the Makers of LEAN BODY."

74.    The front label further states that the product contains:

- "Svetol® Green Coffee Bean"
- "Ursolic Acid"
- "Raspberry Ketones."



CLASS ACTION COMPLAINT

75.  The side-label of the Product states the following:

- "Labrada Fat Buster capsules combine three of the most powerful natural fat loss aids in existence to help you shed unwanted pounds quickly and healthfully."

- "Svetol® Green Coffee Bean Extract contains high amounts of a powerful fat-fighter called chlorogenic acid. Studies suggest that chlorogenic acid inhibits the enzymes responsible for the production of fat. It also slows down absorption of sugar."

- "Raspberry Ketones stimulate fat loss and regulate metabolism by increasing the release of stored fat and augmenting the fat burning hormone adiponectin."

- "Ursolic Acid is naturally occurring in apple peels and rosemary. It's been shown to support both fat loss and prevent muscle loss while dieting."

- "See Website for Scientific References."

76.  Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties, and Defendants have breached said warranties for the reasons described herein.

77.  As further detailed in Plaintiff's claims for relief section, Plaintiff is bringing claims for breach of express warranty and breach of implied warranty of merchantability against Defendants in their capacity of as manufacturers. The Express Warranties in this section of the complaint are incorporated by reference into all claims Plaintiff assert for breach of warranty.

**IV.  Defendants Falsely Advertise and Market the Labrada Products**

78.  Defendants engaged in a massive, uniform marketing and advertising campaign designed to convince consumers that Labrada Products have the ability to, significantly "bust body fat" and aid with weight-loss.

CLASS ACTION COMPLAINT

79.     Defendants disseminated materially false and misleading statements regarding the efficacy of the Products through a broad range of advertisement medium, including branded websites, brand sponsorship, earned advertising, editorial content in magazines, and through social media.

80.     Defendants advertise the Labrada Products online through the Labrada.com website, and through affiliated websites. Defendants also employ flashy graphics and web banners that tout the weight-loss benefits of the Labrada Products.





81.     Plaintiff alleges that each of the statements shown in the banners above, including "stimulates fat loss," "inhibits fat absorption," "increases fat burning" and "healthy anti-oxidant" with respect to raspberry ketones are material representations

CLASS ACTION COMPLAINT

1  that are false and misleading.

2       82.    Plaintiff also alleges that on Labrada Garcinia Cambogia banner, the

3  statements "Increases Fat Burning," "Cubs Appetite," "Lowers Cholesterol" and

4  "Contains  Clinical  Dose  of  Supercitrimax"  create  affirmative  and  material

5  representations that are false and misleading.

6       83.    The  Labrada  website  also  touts  the  scientific  studies  supposedly

7  supporting the Products, but fails to disclose material facts about those studies. Some

8  studies do not even mention the Products or ingredients at issue and it is unclear if some

9  of the studies even exist at all or if they are available to the general public.

10      84.    Labrada  also  uses  YouTube  extensively  to  promote  its  weight-loss

11  products and Labrada actively maintains its own YouTube channel at the following

12  URL address: https://www.youtube.com/channel/UCze0IKoM9yjYCVhmDP4oQtQ.

13      85.    Links to the Labrada YouTube videos can be found on the websites of

14  retailers like the Vitamin Shoppe.   Exemplars of Defendants' YouTube videos are

15  shown below.



Green Coffee Bean Extract - Labrada Nutrition

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12



Garcinia Cambogia - Labrada Nutrition

13
14
15
16
17
18
19
20
21
22
23
24
25



Raspberry Ketones - Labrada Nutrition

26
27
28

- 39 -

CLASS ACTION COMPLAINT

86.    Each of the Labrada YouTube videos furthers Labrada's overall advertising theme and marketing message that the Products are backed by credible science to aid with weight-loss and provide "fat busting" abilities.

87.    The Labrada message is furthered on other mediums like social media accounts like Twitter and through in-store promotional displays at stores like the Vitamin Shoppe.

### V.    Dr. Oz Deceives Consumers about the Ingredients in the Labrada Products and Misrepresents His Ties to the Supplement Industry

88.    The Dr. Oz Show is an Emmy-award winning daytime television show that is watched by millions of Americans. Dr. Oz frequently discusses topics relating to weight-loss and obesity. An article in the *New Yorker* stated the following about *The Dr. Oz Show* and its promotion of supplement products:

> Most days, Oz mines what he refers to as his go-to subjects: obesity and cancer. But both the show and his Web site concentrate on the type of weight-loss plans more commonly found on infomercials in the middle of the night: "Dr. Oz's Three-Day Detox"; "Eat Yourself Skinny"; "Oz-Approved Seven-Day Crash Diet"; "Stairway to Skinny Workout."

> Cancer, Oz told me, "is our Angelina Jolie. We could sell that show every day." Typical themes have included "Five Fast-Moving Cancers"; "Four Body Pains That Could Mean Cancer"; "Three Cancer-Preventing Secrets"; and "What You Can Eat to Defeat Cancer."

> Last year, in a show about weight loss, **Oz introduced raspberry ketones**, a herbal supplement, as "the No. 1 miracle in a bottle to burn your fat." That set off a wave of panic buying throughout the nation. The supplement quickly vanished from the shelves of health-food stores. Oz told his audience that the product regulates the hormone adiponectin, which could help teach the body to be thin. But the only relevant research he cited had been conducted on laboratory rats and cell cultures—not on humans.

- 40 -

CLASS ACTION COMPLAINT

A similar buying frenzy followed his embrace, a few months ago, of "the miracle" of green coffee beans. "You may think that magic is make-believe," Oz said at the beginning of the show. "But this little bean has scientists saying they have found a magic weight-loss cure for every body type. It's green coffee beans, and, when turned into a supplement—this miracle pill can burn fat fast. This is very exciting. And it's breaking news."

None of those assertions turn out to be accurate. When coffee beans are roasted, the plant compound, chlorogenic acid, is broken down. Scientists think that the compound itself has an effect on limiting glucose absorption, which in turn helps reduce weight. While the beans are still green, the chlorogenic acid remains intact. In theory, that means the beans can aid metabolic regulation—but theory is not data.

Oz based his announcement on a study that was presented at last year's annual meeting of the American Chemical Society, in San Diego, where researchers reported that sixteen overweight men and women lost an average of seventeen pounds in twenty-two weeks when taking green coffee beans in supplement form. On the show, Oz did not mention that the study was funded by Applied Food Sciences, which makes green-coffee-bean supplements.[37]

89.     Dr. Oz has consistently stated that he does not promote any specific brands of supplement products. But why then would Dr. Oz make statements about herbal supplements that have little scientific support? Indeed, a published study in the *British Medical Journal* concluded that credible science does not support more than half of all assertions about products on The Dr. Oz Show.[38]

---

[37] *See* Michael Specter, *The Operator: Is America's Most Trusted Doctor Doing More Harm Than Good?*, THE NEW YORKER (Feb. 4, 2013), http://www.newyorker.com/magazine/2013/02/04/the-operator.
[38] *See* Christina Korownyk *et al.* , *Televised medical talk shows—what they recommend and the evidence to support their recommendations: a prospective observational study*, BRITISH MED. J. (2014) http://www.bmj.com/content/349/bmj.g7346.

CLASS ACTION COMPLAINT

90.     A careful review of The Doctor Oz Show reveals, however, that Dr. Oz has mislead the public about his sponsorships and affiliations with those in the supplement industry. Dr. Oz was paid by Defendants Labrada, Interhealth, and/or Naturex in exchange for promoting Green Coffee Bean Extract, Garcinia Cambogia, and Raspberry Ketones on *The Dr. Oz Show*.

91.     Dr. Oz has concealed his association with Defendant Interhealth.  As of the date of filing this complaint, the Dr. Oz website still has an episode posted that promotes Meratrim® weight-loss supplements.[39] The caption to the video reads: "Dr. Oz has a brand-new fat loss program that works faster than ever! Learn how to block fat stores, burn fat after eating and activate calorie-burning mechanisms easier than ever before. Plus, everything you need to know about Meratrim® supplements." Meratrim®, however, is trademarked proprietary ingredient that marketed and sold by Defendant Interhealth.[40]

92.     One episode of *The Dr. Oz Show* featuring Garcinia Cambogia also touted the need for viewers to choose a garcinia supplement that contains HCA (hydroxy citric acid) with potassium:

**DR. OZ:**

You can buy Garcinia Cambogia extract at health food stores. You can buy it online. I do want to go through the guidelines for how to buy wisely.

Doctor Chen, what do we look for on the bottle so people don't get taken advantage of?

**DR. CHEN:**

---

*See* Website for The Dr. Oz Show, [39] http://www.doctoroz.com/episode/triple-your-fat-loss.
[40]*See* Interhealth website, Meritrim,  http://www.interhealthusa.com/our-brands/meratrim/

CLASS ACTION COMPLAINT

It's really important to look for the words Garcinia Cambogia or GCE, which is Garcinia Cambogia Extract. You're looking for a percentage of this HCA, which is that ingredient in the rind of at least sixty percent. Because it actually is absorbed better with mineral salts, <u>like potassium or potassium and calcium</u>, you want to make sure that that's included.

**DR. OZ:**

You want to have it say <u>K or say potassium</u> next to it……

**Dr. Oz:**

All right, so I've warned everybody that ***I'm not going to mention specific brands***, but I do want to go through exactly what I would look for. You're going to look on that list of ingredients. There should be **ZERO FILLERS**. There should be **ZERO BINDER**, **ZERO ARTIFICIAL INGREDIENTS**, all right? Remember, you should never see my picture next to it, because I never sell it. You see my picture next to it, that means they're stealing from you. I guarantee, as soon as the show airs, there are going to be thousands of fake ads out there. Don't go for those. I don't want you to be confused, so I do want to answer your questions from the audience just to make sure you're all on the same page with me.

93.     Dr. Oz fails to disclose that there is only one brand of Garcinia cambogia that contains potassium. Indeed, Defendant Interhealth's Supercitrimax® brand is the only brand that contains HCA bound to potassium because Interhealth owns patents allowing it to exclusively manufacture a form of HCA bound to potassium.[41] Moreover, Dr. Oz's reference to "Fat Busters" and products that contain "Zero Fillers, Zero Binders, and Zero Artificial Ingredients" are calculated promotions of the Labrada brand products. In fact, Defendant Labrada Bodybuilding Nutrition, Inc. actually owned the trademark to the term "<u>FAT BUSTER</u>."[42]

94.     But the association does not end there. *The Dr. Oz Show* website also

---

[41] *See, e.g.,*  U.S. Patent Nos. 6,875,891; 7,943,186; 7,858,128.
[42] "FAT BUSTER," Trademark Serial No. 85829378, http://goo.gl/zTYqW7.

CLASS ACTION COMPLAINT

reveals that a Mr. Chris Kiham serves on the "medical advisory board" for Dr. Oz. However, Mr. Kiham "conducts medicinal plant research for Naturex, one of the largest botanical extraction companies in the world." Naturex is the manufacturer of the Svetol® ingredient in the Labrada Green Coffee Bean Extract.

95.     Recently released internal emails also show that Dr. Oz systematically puts business interests ahead of sound advice to his viewers. Some commentators have concluded that these emails prove that Dr. Oz profits from the products he promotes on *The Dr. Oz Show*.[43]

96.     It is beyond plausible that Dr. Oz is a paid spokesperson for Defendants Labrada, Interhealth, and/or Naturex. Plaintiff alleges that Defendant have violated California Civil Code Section 1170(3) by "Misrepresenting the affiliation, connection, or association with, or certification by, another" with respect to their sales and promotions of the Labrada Products. A close review of statements made on *The Dr. Oz Show* are very similar to labeling claims made on the Labrada products.

**A. Dr. Oz Promotes Green Coffee Bean Extract**

97.     Plaintiff alleges on information and belief that *The Doctor Oz Show* promoted Svetol® Green Coffee Bean Extract and/or the Labrada Green Coffee Bean Extract on at least one occasion in or around 2012. A partial transcript of that episode reads as follows:

> **DR. OZ:**   Magic is make-believe, but this little bean has scientists saying they found a magic weight-loss cure for every body type. It's green coffee beans. When turned into a supplement this miracle pill can ***burn fat fast***. For anyone who wants to lose weight this is very exciting, and it's breaking news.
>
> Millions of you love coffee. Now, you're going to love it for a whole other reason. A staggering newly released study reveals that the coffee

---

[43] *See* Dan Diamond, *Even Dr. Oz's Boss Thinks He's 'Full Of [It]'*, FORBES (April 21, 2015 06:45AM), http://goo.gl/aCF9Fb.

CLASS ACTION COMPLAINT

bean in its purest, raw form may hold the secret to weight loss that you've been waiting for. The study, presented at a meeting of the world's largest scientific society, triggered unprecedented excitement for a weight loss study. It showed women and men who took green coffee extract lost an astounding amount of fat and weight. 17 pounds in 22 weeks by doing absolutely nothing extra in their day. Could this be the magic weight loss bean to help you melt away unwanted pounds that you've been waiting for?

Next, private doctor and certified nutritionist Lindsey Duncan is here with the findings.

**DR. LINDSEY DUNCAN:** *You know, I usually don't recommend weight loss supplements.* This one has got me really really excited. In the medical community, the weight loss community is all buzzing about this. Here's why. The recent study that you were talking about earlier, the participants took the capsules and they did nothing else. They didn't exercise, they didn't change their diet, they actually consumed 2,400 calories a day. They burned only 400 calories. Now, that's weight gain, not weight loss. They lost over 10% of their total body weight.

*********

**DR. OZ:**   How does it work?

**DR. LINDSEY:**  Well, it's amazing. It's what we call a triple threat. It's the chlorogenic acid that causes the effect, and it works 3 ways. The first way is it goes in and it causes the body to burn glucose, or sugar, and burn fat, mainly in the liver. The second way, and the most important way, is it slows the release of sugar into the bloodstream. When you don't have sugar building up in the bloodstream, you don't have fat building up. Sugar turns to fat. Everybody must remember that. When the 2 are combined together, you get this synergistic effect that basically burns and blocks and stops fat, but it also is natural and safe.

CLASS ACTION COMPLAINT



98.     The "study" that Dr. Oz touted on this episode was the *Vinson* study that was retracted by the authors after data was found to be falsified.

99.     Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

100.   Defendants also omit material facts regarding the true nature of the Labrada and/or Svetol® Products and the true nature behind the studies that Defendants claim support the products advertising claims.

### B. Dr. Oz Promotes Supercitrimax® Garcinia Cambogia

101.   Plaintiff alleges on information and belief that *The Dr. Oz Show* promoted Supercitrimax® Garcinia Cambogia Extract and/or the Labrada Garcinia Cambogia Product on at least one occasion in or around 2012. A partial transcript from that episode reads as follows:

**DR. OZ:** From African mangoes to green coffee, it's the most talked about topic. Everybody wants to know what's the ***newest, fastest fat***

- 46 -

CLASS ACTION COMPLAINT

*buster*. You've been stopping me on the street, emailing me. Even my family is asking the same question. How can I burn fat without spending every waking moment exercising and dieting? I just don't have any time to put in more effort. Well thanks to brand new scientific research, I can tell you about a ***revolutionary fat buster***. You're hearing it here first.

**ANNOUNCER:** It's called garcinia cambogia, a pumpkin shaped fruit that grows in Southeast Asia and India, and it just might be the most exciting breakthrough in natural weight loss to date. ***Revolutionary new research says it could be the magic ingredient that lets you lose weight without diet or exercise.*** Dr. Harry Preuss is at the forefront of the research.

 **DR. HARRY PREUSS:** The ideal weight loss program is one in which you lose fat and you retain your muscle or even build it. With garcinia, you can make that happen. I tell women, "Look at your breast size. If your figure is getting much smaller, that's exactly what you want."

**OTHER DOCTOR:** Garcinia is an ***exceptionally effective fat buster***. It inhibits the production of fat in the body, and when the body is not making fat, it's burning fat.

**ANNOUNCER:** Could garcinia cambogia be the ***fat busting breakthrough*** you've been waiting for?

**DR. OZ:** The ***newest, fastest fat buster*** and one of the least expensive too is garcinia cambogia extract. I know it's a mouthful. I'll let you write it down. Garcinia cambogia. Because it may be the simple solution you've been looking for to ***bust your body fat for good***.

CLASS ACTION COMPLAINT

102.   Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

103.   Defendants also omit material facts regarding the true nature of the Supercitrimax® Product and the true nature behind the "clinical studies" that Defendants claim support the products advertising claims.

### C. Dr. Oz Promotes Raspberry Ketones

104.   Plaintiff alleges on information and belief that *The Dr. Oz Show* promoted Labrada Brand Raspberry Ketones on at least one occasion in or around 2012. A partial transcript from that episode reads as follows:

**DR. OZ:**

We've been talking about the ***five biggest fat busters*** for five body types, in just five days. Now I've got the number one miracle in a bottle to burn your fat, it's raspberry ketone. Weight loss expert Lisa Lynn swears by this supplement for those with fat all over their bodies, and who want anything, will to do anything, to get rid of that fat.

**LISA LYNN:**

You said it, anything.

**DR. OZ:**

How'd you find this thing? It's amazing. I've got to say before this preamble, raspberry ketone is something that I've heard about in the periphery, I never understood how powerful it could be until I started doing research for this. How'd you find it, and why do you think it's so valuable?

**LISA LYNN:**

**Research, research, research**. I think it's really valuable, because the ketones come from red raspberries. **Very healthy, no side effects, and**

CLASS ACTION COMPLAINT

**they help your body burn fat. Not only that, they slice it up inside the cell so it burns fat easier, and we all want easier**

105.   Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

106.   Defendants also omit material facts regarding the true nature of the Labrada Raspberry Ketone Product and the true nature behind the "clinical studies" that Defendants claim support the products advertising claims.

### VI.   False Advertising of Supercitrimax®



107.   The Interhealth website makes the following claims about Supercitrimax®. Plaintiff alleges that the Labrada defendants knew that the following statements were false or recklessly disregarded their truth.

1)   "Super CitriMax® is a patented, 60% hydroxycitric acid (HCA) water extract from Garcinia cambogia. It is uniquely bound to calcium and potassium for maximum stability, solubility, bioavailability and efficacy. **Super CitriMax® is an established brand supported by <u>4 peer-reviewed clinical research publications,</u> and extensive safety research**."

- 49 -

CLASS ACTION COMPLAINT

(1) "3x more effective than diet and exercise alone"
(2) "44% increase in serotonin levels"
(3) "25% reduction in daily calorie intake"
(4) "Self-affirmed GRAS"

2)   "Super CitriMax® branded Garcinia cambogia is patented and has been extensively studied and shown to reduce weight 3 times more effectively than diet and exercise. The quality of Garcinia cambogia products available online and in stores varies widely. Choose this weight loss supplement if you want an established brand with established benefits. It **is backed by three published clinical research studies demonstrating weight loss and reduced calorie intake**"

3)   "If you've recently started a weight loss journey, you are probably well aware of how many choices come along with this decision. With so many options available, making the right choices for you can seem intimidating. Fortunately, choosing a supplement to add to your healthy new lifestyle doesn't have to be difficult. If you're looking for a supplement to help you reach your weight loss goals, **Super CitriMax**®, along with diet and exercise, can help! It is backed by **three published clinical research studies** demonstrating weight loss and reduced calorie intake, so you can feel confident about your choice."

4)   "Garcinia cambogia is a tropical fruit that has been shown to be a powerful tool in promoting healthy weight loss. It has become a popular ingredient in many weight loss supplements. With so many supplements containing Garcinia cambogia available, the quality can vary widely. This supplement from Interhealth is the first Garcinia cambogia to be certified by LabDoor, an independent company that tests supplements for safety and quality. It is manufactured using strict laboratory-controlled procedures to ensure optimum potency, purity, and efficacy."

5)   "This supplement contains the same established branded ingredient studied by Dr. Harry G. Preuss at Georgetown University Medical Center. The supplement also contains calcium and potassium, which work together to help increase bioavailability and efficacy. If you're looking for an established brand with established benefits, choose Super CitriMax®!"

CLASS ACTION COMPLAINT

6)   "Clinical research shows that taking supplement, combined with diet and exercise, reduced body weight by an average of 10 pounds. People taking it also lost 3 times as much weight as those taking a placebo pill. People participating in the research adhered to a 2,000 calorie a day diet and exercised for 30 minutes a day, five days a week."

108.   The Interhealth website also displays a video promoting the Labrada Garcinia Cambogia product that features Defendant Lee Labrada.



109.   Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

110.   Defendants also omit material facts regarding the true nature of the Supercitrimax® Product and the true nature of the "clinical studies" that Defendants claim to support the products advertising claims.

CLASS ACTION COMPLAINT

## VII.   False Advertising of Svetol®



111.    Defendant Naturex® disseminates false and misleading statements about the Svetol® product and Plaintiff alleges that the Labrada Defendants knew that such statements were false or that Labrada recklessly disregarded the truth behind the statements.

112.    The Svetol® website features an introductory video depicting a woman with a glove on her hand removing and erasing body weight and fat from her abdomen.[44]

113.    The website goes on to tout the supposed science behind Svetol®:

1) "The 9 published scientific studies on Svetol® support its beneficial effects on healthy weight management:"

2) "10% Body Mass Index Reduction: Clinical study demonstrates 5.7% body weight loss over 2 months supplementation & reduction of BMI by 10%"

3) "Glucose regulation: Pilot study shows Svetol®'s effect on blood sugar levels"

4) "Fat burning effect: +4% lean mass/fat mass ratio Study

---

[44] http://www.svetol.com/what-is-svetol/.

CLASS ACTION COMPLAINT

demonstrates Svetol®'s benefits on fat mass reduction. The clinical study demonstrates that Svetol® is an effective weight loss solution: you don't lose water or muscle, it makes you lose fat!"

5) "Svetol® will bring you healthy weight loss results, without crash dieting or side effects. Moreover, it is fully natural and does not contain harmful chemicals. Millions of consumers have already used Svetol® as a safe and effective natural solution."

  o  1) "Svetol® is a 100% all-natural plant concentrate, with well-identified and controlled bioactives."

  o  2) "Svetol® has no reported side effects."

  o  3) "Contains less caffeine than a quarter cup of coffee."

6) "In a published 60 day double-blind, placebo-controlled clinical trial, human subjects taking SVETOL® combined with proper nutrition lost up to 14 pounds and over 100% more weight loss than placebo group."

7) "SVETOL® cuts weight via 3 key benefits:

  o  1) "Improves body shape and firmness by improving lean to fat mass ratio"

  o  2) "Shuts down glucose pathways so you can burn fat more easily"

  o  3) "Decreases intestinal glucose absorption"

114.    Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons alleged herein.

115.    Defendants also omit material facts regarding the true nature of the Supercitrimax® Product and the true nature behind the "clinical studies" that

- 53 -

CLASS ACTION COMPLAINT

Defendants claim support the products advertising claims.

## VIII.   The Labrada Products Do Not Provide the Advertised Weight-Loss Benefits

116.   All competent and reliable scientific studies conclude that the active ingredients in the Products do not provide the touted weight loss benefits.  In an attempt to conceal the truth about their supplements, Defendants have misled consumers by stating or implying that Labrada Garcinia Cambogia is backed by "clinical studies." But the only "clinical studies" supporting the Product are either irrelevant, wholly unreliable, or conducted by Defendants themselves. If Plaintiffs and the class knew that the studies supporting the products were conducted by biased researchers or that the underlying data was manipulated or fraudulently presented, they would not have purchased the Products.

### A.  The Evidence Against Garcinia Cambogia

117.   A significant *Garcinia/*HCA weight loss study was published in 1998 by a group of researchers at Columbia University's Obesity Research Center that was lead by Dr. Heymsfield and published in the *Journal of the American Medical Association*.[45] This study was, and remains, one of the longest duration (12 weeks) and largest (135 subjects divided equally into placebo and control groups) randomized double-blind clinical trials of *Garcinia cambogia.*

118.   The study found that a *Garcinia* extract failed to produce a significant loss of weight and fat mass beyond that observed with placebo.[46]

119.   *The Heymsfield* study has stood the test of time. In 2011, it was one of

---

[45] S.B. Heymsfield, *et al.,* "Garcinia Cambogia (Hydroxycitric Acid) As a Potential Antiobesity Agent: A Randomized Controlled Trial," *J. Amer. Med. Assoc.* 280(18):1596-600 (1998).  *Full text available at* http://jama.jamanetwork.com/article.aspx?articleid=188147.  (Accessed October 14, 2015).

[46] In fact, the data suggests that the placebo group, on average, consistently lost <u>more</u> weight than the *Garcinia* treatment group across the entire time course of the study.

CLASS ACTION COMPLAINT

only 12 clinical trials deemed worthy of inclusion in a landmark meta-analyses of supplements like *Garcinia cambogia* and is assigned the highest Jadad score[47] of all included studies.[48,49]

120. In 2004, Max Pittler and Edzard Ernst, complementary medicine researchers at the universities of Exeter and Plymouth, published a systematic review of prior meta-analyses[50] and clinical trials of a variety of over-the-counter weight loss aids in *The American Journal of Clinical Nutrition*. The results indicated that none of the weight loss aids worked, including the *Garcinia cambogia* products reviewed. Moreover, adverse events were reported in the *Garcinia* trials reviewed. The report concluded that "none of the reviewed dietary supplements," which included Garcinia cambogia, "can be recommended for over-the-counter use."[51]

121. Meta-analyses of research on *Garcinia cambogia* and/or HCA have evaluated all known published credible human scientific studies. The meta-analyses uniformly conclude that HCA-containing supplements, such as Labrada's Garcinia

---

[47] "Jadad score" is a benchmark measuring the likelihood of bias in clinical trials, with higher numbers indicating lower likelihoods of bias. For a meta-analysis, Jadad scoring is carried out by a panel of scientists who are themselves blinded as to the authorship of articles. A.R. Jadad, R.A. Moore, *et al.,* "Assessing the Quality of Reports of Randomized Clinical Trials: is Blinding Necessary?" *Controlled Clinical Trials* 17(1):1-12 (1996). http://goo.gl/rdsRW3 .

[48] *See* Table 1 *in* I. Onakpoya, *et al.,* "*The Use of Garcinia Extract (Hydroxycitric Acid) as a Weight Loss Supplement: A Systematic Review and Meta-Analysis of Randomised Clinical Trials,*" J. OBESITY (2011), http://www.hindawi.com/journals/jobe/2011/509038/.

[49] Heymsfield recently defended his results and stated that marketers of *Garcinia cambogia* are "weaving a story with obscure facts. Maybe each fragment has some validity, but if you wind it together it makes no sense at all." *See* "*The Claims Make this Supplement Tempting, But They're Untrue,*" CONSUMER REPORTS (Aug. 10, 2015)

[50] A meta-analysis contrasts and combines results from different studies in an attempt to identify patterns among study results, sources of disagreement, and other relationships between the studies.

[51] M.H. Pittler & E. Ernst, "*Dietary Supplements for Body-Weight Reduction: A Systematic Review,*" AMER. J. OF CLIN. NUTR. (May 2004).

CLASS ACTION COMPLAINT

Cambogia Product, have little or no positive effect on weight loss in healthy individuals.

### B. The Evidence Against Green Coffee Bean Extract

122.   A study in the *Journal of Agricultural and Food Chemistry* found that the main ingredient in Svetol®- chlorogenic acid- was not effective when given to mice over a 12-week period. In fact, taking the compound gave the mice early symptoms of diabetes.[52] Moreover,  "A meta-analysis a few years ago combined the results from three small, short-term trials. The authors found that green coffee extract was associated with losing about 5 pounds. But this slimming effect vanished when the authors analyzed the two studies that used the type of supplement recommended by Dr. Oz — green coffee extract enriched with chlorogenic acid."[53]

### C. The Evidence Against Raspberry Ketones

123.   There is no evidence whatsoever that raspberry ketones can aid weight loss in humans. In fact, "Raspberry ketones have never been tested on humans in scientific studies."[54] Defendants' claims like raspberry ketones can "slice up fat" is patently false.

124.   None of the other ingredients in the Labrada Products provide the advertised weight loss benefits.

### IX.    Defendants Misrepresent the Quality of the Labrada Products

125.   In 2013, a consumer advocacy website that performs independent testing of consumer goods published a review of different Garcinia Cambogia supplements. Fourteen products were tested; 6 of those products did not pass, according to the group

---

[52] *Supplementation of a High-Fat Diet with Chlorogenic Acid Is Associated with Insulin Resistance and Hepatic Lipid Accumulation in Mice*, 61 J. AGRIC. FOOD CHEM. 4371–4378 (2013).

[53] Michaeleen Doucleff, *Sorry, Dr. Oz, Green Coffee Can't Even Slim Down Chubby Mice*, NPR (Jun. 17, 2013 12:14 PM),  http://goo.gl/gXYpWC.

[54]  Becky Hand, *What They Don't Want You to Know About Raspberry Ketones,* HUFF. POST (Feb. 28, 2013), http://goo.gl/ehU5B6.

CLASS ACTION COMPLAINT

Consumerlab.com. Labrada Nutrition's SuperCitrimax® brand of Garcinia Cambogia, lot # 80310513, was reportedly among those that did not pass.

126.   Plaintiff is informed and believes that Defendants' SuperCitrimax ingredient and the Labrada Garcinia Product have contained varying levels of HCA throughout the class period and Defendants' claim that the products are made from "standardized HCA" is false and misleading.

## X. False Claim that Labrada Products contain Zero Binders, Zero Fillers and Zero Artificial Ingredients

127.   The Labrada Garcinia Cambogia Product contains one or more artificial ingredients. Specifically, the Supercitrimax® ingredient is processed and manufactured by artificial means that use chemical additives and solvents like ammonium chloride. Moreover, the Supercitrimax® ingredient does not contain naturally occurring hydroxycitric acid (HCA), but rather an artificial form of HCA that synthetically binds hydroxycitric acid with potassium and calcium minerals. In addition, the "other ingredients" in the Product are artificial, fillers, and/or binders.

128.   "Hypromellose" is often used a binder in supplement products. Hypromellose is a synthetic polymer that does not occur naturally. Furthermore, the Labrada Garcinia Cambogia Product contains "titanium dioxide," which is often used a colorant in supplement products. Titanium dioxide in supplement products is often an artificial form called "nano-particle titanium dioxide" that is known to cause adverse health effects.

129.   Each of the other products also contain artificial ingredients like "Svetol® Green Coffee Bean," "Raspberry Ketones," "Ursolic Acid," "maltodextrin," "Gelatin," "Silica," "Magnesium Stearate," and "Sodium Copper Chlorophyllin." Each of the ingredients are recognized as artificial ingredients. With respect to Sodium Copper Chlorophyllin, the Code of Federal Regulations state "the color additive sodium copper chlorophyllin is a green to black powder prepared from chlorophyll by saponification

CLASS ACTION COMPLAINT

and replacement of magnesium by copper. Chlorophyll is extracted from alfalfa (Medicago sativa ) using any one or a combination of the solvents acetone, ethanol, and hexane." 21 C.F.R. 73.125.

## XI.   Labrada Products Are Not "Made in the USA."

130.   The label of the Labrada Garcinia Cambogia Product deceptively claims that the Product is "Made in the USA" and makes this statement next to a picture of an american flag. However, most, if not all, of the ingredients in the Product are made in a foreign country and imported into the United States, including the Product's purported active ingredient SuperCitrimax®. Notably, Defendant Interhealth imports Supercitrimax® from Laila Nutraceuticals in India.

131.   Defendants deceptive "Made in the USA" statement also violates California Business and Professions Code § 17533.7, which requires products with labeling statements like "Made in the USA" to contain "not more than 5 percent of the final wholesale value of the manufactured product." The foreign ingredients in the Labrada Garcinia Cambogia Product far exceed 5 percent of the final wholesale value of the Product.

## JOINT LIABILITY

### I.   Joint Venture Enterprise Liability

132.   **The Labrada Joint Venture Enterprise:** Each and every Defendant named in this complaint have combined their property, skill, and knowledge to carry out a single business undertaking in that they produce, promote, and distribute weight-loss supplements with a community of interests in that they use a common marketing scheme that involves the promotions on *The Doctor Oz Show* to promote weight-loss products, including the Labrada Products.  Each and every Defendant has formed an agreement, either explicitly or implicitly by their conduct, to jointly share the control, profits, and losses of Joint Venture Enterprise and the Joint Venture Enterprise is a business undertaking in that it was formed to profit from the fraudulent sales of supplement products.

CLASS ACTION COMPLAINT

133.   Each of the joint ventures and each Defendant described below are members of the Fat Buster Joint Venture Enterprise:

a) **The Dr. Oz Joint Venture:** Defendants Dr. Mehmet C. Oz, Oz Media, Zoco Productions, Harpo Productions, and Sony Pictures Television (collectively the "Oz Defendants" or "The Oz Enterprise") have combined their property, skill, and knowledge to carry out a single business undertaking in that they produce, promote, and distribute *The Doctor Oz* television show and Dr. Oz related merchandise, products, and content. The Oz Defendants have formed an agreement to jointly share the control, profits, and losses of The Doctor Oz Joint Venture and The Doctor Oz Joint Venture is a business undertaking in that it was formed to profit from advertising revenue derived from its commercials and on-air endorsements like those featuring Products containing Supercitrimax® garcinia cambogia, Svetol® Green Coffee Extract, Raspberry Ketone, and the Labrada brand products.

b) **The Labrada Joint Venture:** Defendants Lee Labrada, Labrada Bodybuilding Nutrition, Inc., and Labrada Nutritional Systems, Inc. (collectively the "Labrada Defendants" or "The Labrada Joint Venture") have combined their property, skill, and knowledge to carry out a single business undertaking in that they develop, manufacture, promote, market, distribute, and/or sell the Labrada Products across the United States, including to hundreds of thousands of consumers in California. The Labrada Defendants have formed an agreement to jointly share the control, profits, and losses of the Labrada Joint Venture and the Labrada Venture is a business undertaking in that it was formed to profit from sales of the Labrada Products.

c) **Labrada-Interhealth Joint Venture:** The Labrada Defendants and Defendant Interhealth (collectively the "Labrada-Interhealth Joint Venture") have combined their property, skill, and knowledge to carry out a single business undertaking in that they develop, manufacture, promote, market, distribute,

- 59 -

CLASS ACTION COMPLAINT

and/or sell the Labrada Products across the United States, including to hundreds of thousands of consumers in California. Members of the Labrada-Interhealth Joint Venture have formed an agreement to jointly share the control, profits, and losses of the Labrada-Interhealth Joint Venture and the Labrada-Interhealth Joint Venture is a business undertaking in that it was formed to profit from sales of the Labrada Products

d) **Labrada-Naturex Joint Venture:** The Labrada Defendants and the Naturex Defendants (collectively the "Labrada-Naturex Joint Venture") have combined their property, skill, and knowledge to carry out a single business undertaking in that they develop, manufacture, promote, market, distribute, and/or sell the Labrada Products across the United States, including to hundreds of thousands of consumers in California. Members of the Labrada-Naturex Joint Venture have formed an agreement to jointly share the control, profits, and losses of the Labrada-Naturex Joint Venture and the Labrada-Naturex Joint Venture is a business undertaking in that it was formed to profit from sales of the Labrada Products.

## II.    Agency Allegations

134.   At all times herein mentioned, Defendants, and each of them, were an agent of each of the other Defendants, and in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

135.   At all times herein mentioned, each member of each joint ventures described above, were agents of the joint ventures and the other members of the joint ventures described above, and in doing the acts alleged herein, were acting within the ordinary course of business of the joint ventures or with the authority or ratification of

CLASS ACTION COMPLAINT

1    the joint ventures.

2        136.   During the relevant class periods, the Labrada Defendants were the

3    ostensible agents of Defendant Interhealth and Defendant Naturex. By authorizing or

4    ratifying either the Supercitrimax® logo or the Svetol® logo to appear on the Labrada

5    products Interhealth and Naturex intentionally or carelessly created the impression that

6    the Labrada Defendants were the agents of Interhealth and Naturex®. Plaintiff and the

7    class reasonably believed that the said ostensible agency relationships existed because

8    they read and relied on the statements made on the Product packaging and saw the

9    logos or trade dress of Supercitrimax® and Svetol®. Plaintiff and the class suffered

10   harm as a result of their reliance on these ostensible agency relationships in that they

11   believed the products were of a superior and effective quality because they were made

12   with Supercitrimax® and Svetol®.

13       **III.   Civil Conspiracy Allegations**

14       137.   During the relevant class periods, Plaintiff and the class members were

15   harmed by Defendants' unlawful business practices and fraudulent representations

16   described herein because each Defendant was part of a conspiracy to commit fraud or

17   and other deceptive and unlawful acts. Each Defendant intentionally entered into an

18   agreement in writing, orally, or through their conduct with at least one or more Co-

19   Defendants to commit wrongful violations of the law as described in Plaintiff's request

20   for relief section, *infra*. Each Defendant was aware of the fact that each co-conspirator

21   Defendant planned to commit fraud and other unlawful acts. Each Defendant intended

22   that the fraud and other unlawful acts be committed and each Defendant overtly acted

23   in furtherance of the goals of said civil conspiracies.

24       138.   Dr. Oz and the Dr. Oz Defendants knowingly entered into a single

25   agreement and/or multiple agreements to commit fraud and other unlawful acts with

26   Defendants Interhealth, Naturex, and/or the Labrada Defendants by agreeing to

27   promote ineffective weight-loss supplements on *The Dr. Oz Show* in a conspiracy to

28

CLASS ACTION COMPLAINT

defraud the members of the Class and the public.  Dr. Oz and the Dr. Oz Defendants knew that they were entering into a conspiracy because Dr. Oz and the Dr. Oz Show Defendants have specialized knowledge and were aware of the fact that there was no competent, reliable scientific studies to support the advertising claims about the Products. Dr. Oz and the Dr. Oz Show Defendants took overt acts in furtherance of the conspiracies by actually promoting the Products on *The Dr. Oz Show* with the intent to defraud consumers.

139.   The Labrada Defendants entered into a single agreement or multiple agreements with Defendants Interhealth and Naturex to commit fraud and other unlawful acts by knowingly agreeing to sell ineffective weight-loss supplements to consumers across the country. The Labrada Defendants, Interhealth and Naturex each made overt acts in furtherance of the civil conspiracies alleged herein by actively marketing and promoting the ineffective and fraudulent weight-loss supplements and by sponsoring and paying for so-called clinical studies they used to support the products.

## IV.   Aiding and Abetting Allegations

140.   During the relevant class periods, each and every Defendant knew that each and every other Defendant were engaged in the unlawful acts subject to this complaint. Each Defendant gave substantial assistance or encouragement to one or more co-Defendants, who committed the predicate unlawful acts, by supplying those Defendants with the means or instrumentalities to commit the unlawful acts, which were substantial factors in causing harm to Plaintiff and the Classes.

141.   During the relevant class periods, Interhealth, Naturex, and the Dr. Oz Defendants knew that the Labrada Defendants were falsely and fraudulently advertising and selling the Labrada Products. Interhealth and Naturex gave substantial assistance or encouragement to the Labrada Defendants by supplying those Defendants with the Supercitrimax® or Svetol® ingredients in the products, allowed Labrada to

- 62 -

CLASS ACTION COMPLAINT

use the Supercitrimax® and Svetol® logos on the products, and provided Labrada with fabricated and deceptive clinical studies as tools to falsely advertise the products and conceal the truth about the Products. Moreover, the Dr. Oz Defendants aided this scheme by agreeing to promote the products and their ingredients on a nationally televised show that reaches millions of consumers, which was an essential tool to carry out the fraudulent sales and marketing of the Labrada products. Each act of aiding and abetting described herein was a substantial factors in causing harm to Plaintiff and the class as Plaintiff and the Class would not have purchased the products had they know that the ingredients are not actually supported by reliable scientific studies.

## TOLLING THE STATUTE OF LIMITATIONS

142. **Delayed discovery.** Plaintiff and the Class are laypersons, lacked the knowledge and experience to understand how the Products' labels were deceptive or false, and information regarding the false or deceptive advertising was solely within Defendants' possession and control. Thus, the delayed discovery exception postpones accrual of the limitations period for all members of the putative classes.

143. **Fraudulent concealment.** Additionally, or in the alternative, Defendants were constructively and actually aware that the Products were ineffective for their advertised use. Nevertheless, Defendants continued to sell the Labrada Products. Therefore, at all relevant times Defendants had a duty to inform consumers that the Products were not effective at providing relief for the advertised symptoms, but Defendants knowingly concealed that fact from members of the putative classes herein. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

144. **Continuing violation.** Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for all members of the putative classes until Defendants' unlawful advertising and labeling is corrected.

CLASS ACTION COMPLAINT

**CLASS ACTION ALLEGATIONS**

145. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses), for the time period from when the Labrada Products first entered into the stream of commerce until the present ("Class Period"), as defined as follows:

**The Nationwide Class**

All persons in the United States who purchased the Labrada Products.

**The Labrada-Supercitrimax® Nationwide Subclass**

All persons in the United States who purchased Labrada Products that contain Supercitrimax®

**The California Subclass**

All persons in California who purchased the Labrada Products.

146. The Classes and Subclasses described in this complaint will jointly be referred to as the "Class" or the "Classes" unless othersise stated, and the the proposed members of the Classes and Subclasses will jointly be refered to as "Class Members."

147. Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclassses or limitation to particular issues as discovery and the orders of this Court warrant.

148. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

149. The proposed Classes are so numerous that individual joinder of all the

- 64 -

CLASS ACTION COMPLAINT

members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believe the total number of Class members is at least in the hundreds of thousands and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

150.   Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Classes as a whole.  In particular, Defendants have failed to disclose the true nature of the Products being marketed as described herein.

151.   There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

   a) Whether Defendants breached any express warranties made to Plaintiff and the Class;

   b) Whether Defendants breached an implied warranty of merchantability made to Plaintiff and the Class;

   c) Whether Defendants were unjustly enriched by their conduct;

   d) Whether Defendants engaged, and continue to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of Labrada Products;

   e) Whether Defendants violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes; and

   f) Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

CLASS ACTION COMPLAINT

152.   Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning the Products and purchased the Products based on those representations.

153.   Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation in general and scientific claims specifically, including for dietary supplements.   Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

154.   Plaintiff and the members of the Classes suffered, and will continue to suffer harm as a result of the Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.   Individual joinder of all members of the Classes is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

155.   Adjudication of individual Class members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the

- 66 -

CLASS ACTION COMPLAINT

ability of other class members to protect their interests.

## CLAIMS FOR RELIEF

## COUNT I

## CLAIM FOR FRAUD AND DECEIT

### CAL. CIV. CODE §§ 1709-1711 AND THE COMMON LAW OF ALL STATES

**By the Nationwide Class and All Subclasses**

156.   Plaintiff and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

157.   Plaintiff brings this Claim individually and on behalf of the members of the Class against all Defendants.

158.   There are no material differences in the laws of the fifty states with respect to claims for fraud and deceit as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state law exists, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws

159.   Plaintiff brings this claim under alternate legal theories sounding in both tort and contract, as to the extent allowable by Federal Rule of Civil Procedure 8(d)(2).

**\*\*False Statements of Material Facts\*\***

160.   Defendants made material representations to Plaintiff and the Class members that the Labrada Products are effective at providing weight loss benefits capable of "busting their body fat for good" and other representations described in this complaint.   However, the Products are not effective at providing the advertised weight loss results because the ingredients in the Products are ineffective, as established by numerous reliable and credible studies, and the ingredients cannot provide the advertised weight-loss benefits.

161.   Defendants made material misrepresentations to Plaintiff and the Class

- 67 -

CLASS ACTION COMPLAINT

members that Dr. Oz does not endorse specific brands of products when in fact he did endorse the Labrada brand, the Supercitrimax® brand, and/or the Svetol® brand of weight loss products.

162.   Defendants made material misrepresentations to Plaintiff and the Class members that certain Labrada Products labeled as "Made in the USA" are actually made in the USA, when in fact majority of the ingredients in the Products are not made in the USA and instead made in a foreign country like India.

163.   Defendants made material misrepresentations to Plaintiff and the Class members that certain Labrada Products contain "standardized" amounts of ingredients, when in fact laboratory tests, including the Labrada Products' own testing, show that ingredients like Supercitrimax® are not standardized.

**\*\*Material Statements of Fact and not Opinions\*\***

164.   Dr. Oz and the Dr. Oz Defendants claimed to have special knowledge about the weight loss supplements because Dr. Oz is renown doctor at the Columbia University School of Medicine. Defendants also claimed to have superior knowledge about the subject matter by hiring other doctors to disseminate false statements about the products.

165.   Plaintiff and the class members did not have the same superior knowledge about the products.

166.   Defendants made the representations described in this complaint as true representations, not casual expressions of belief, and did so in a way that declared the matter to be true.

167.   Defendants, through Dr. Oz's reputation as a renowned doctor at Columbia University School of Medicine, had reasons to expect that by disseminating undisclosed endorsements of weight loss products, including the Labrada Products, that Plaintiff and the Class would rely on their representations as material statements of facts and not opinions.

168.   Defendants' actions constitute "actual fraud" within the meaning of Cal.

CLASS ACTION COMPLAINT

Civ. Code § 1572 because Defendants did the following with the intent to deceive Plaintiff and Class member and to induce them to enter into their contracts:

        a. Suggested that the Products are effective as a weight-loss aid, even though Defendants knew that the Products are not;

        b. Positively asserted that the Products are made with no artificial ingredients, binders, and fillers, when in fact they are not;

        c. Suppressed the true nature of the Products from Plaintiff and Class members; and

        d. Promised they would supply the Products with "standardized" ingredients even though the products do not contain standardized ingredients.

169.   Defendants' actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Defendants willfully deceived Plaintiff and Class members with intent to induce them to alter their positions to their detriment by purchasing defective Products.

## **Fraud by Concealment and Omission of Material Facts**

170.   As set forth above, Defendants concealed material facts concerning the true nature of their Products, the endorsements of the products on *The Dr. Oz Show*, and the true nature of the clinical studies used in support of the weight-loss claims made on the product packaging and advertising. Defendants had a duty to make these disclosures based on their superior knowledge of the Products and the ingredients in the Products, as well as their affirmative disclosure of some facts and concealment of other material facts, thus making the partial disclosures deceptive.

171.   Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and members of the Classes to purchase the Products. Specifically, Defendants actively concealed the truth about the products by not disclosing all facts about the studies supposedly supporting the Products or by making such studies difficult or impossible to discover because many of the studies are only

- 69 -

CLASS ACTION COMPLAINT

accessible by means of a paid subscription to the "journal" or other publication that prints the full version of the studies.

172.   Plaintiff and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

173.   Plaintiff and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

174.   Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and the class members as they would not have purchased the products at all if all material facts were properly disclosed.

**Knowledge of Falsities**

175.   Defendants, at all times mentioned herein, had knowledge that that their representations concerning the Products are false and misleading because the Products are ineffective at providing the advertised weight-loss benefits. Defendants, at all times mentioned herein, had knowledge that the ingredients are ineffective because Defendant Interhealth and other ingredient suppliers essentially made up the science supporting the active ingredients in the Labrada Products through manipulation of "clinical studies."

176.   Dr. Oz, as a renown surgeon at Columbia University and a sophisticated party with superior knowledge about the fields of science and medicine, knew that the representations were false or recklessly disregarded to truth about the weight loss products he endorsed, including the Labrada Products.

177.   The Labrada Defendants are sophisticated parties with superior knowledge about science and supplement products knew that the representations were false or recklessly disregarded to truth about the weight loss products he endorsed, including the Labrada Products.

**Intent to Defraud and Intent to Induce Reliance**

178.   Defendants made the misrepresentations alleged herein with the intention

CLASS ACTION COMPLAINT

of inducing and persuading Plaintiff and the Class to purchase the Labrada Products because the Defendants sought to reap enormous profits from the sales of the falsely labeled Products and the fraudulent advertising and promotion of the Products was essential to Defendants' ability to profit from the sales of the Products.

179.   Defendants further withheld and omitted material information about the Products with the intention of inducing and persuading Plaintiff and the class to purchase the Labrada Products as a part of their unlawful scheme to make money from the sales of the Products.

### ***Intent to Defraud a Class of Persons and the Public***

180.   "*One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit.*" Cal. Civ. Code § 1711.

181.   Defendants are responsible for their material misrepresentations and omissions described above even if they did not intend any particular Plaintiff or any particular class member to rely on the misrepresentations because Defendants made the representations to groups of persons and the public at large, intending or reasonably expecting that it would be repeated to Plaintiff and the Class members who are consumers that were actually mislead into purchasing the products.

182.   Dr. Oz made the representations to the television audience with the intent that TV viewers and the news media would disseminate such information to the Class members who did not hear or perceive the misrepresentations directly from *The Dr. Oz Show*. Plaintiff and the Class members justifiably relied on all misrepresentations made on *The Dr. Oz Show*, however, because the representations were repeated to Plaintiff and the Class through the comprehensive marketing scheme described herein.

183.   Defendants    Interhealth    and    Naturex    also    made    material misrepresentations described in this complaint to groups of supplement manufacturers, distributers, including Labrada, and the public at large with the specific intent that the supplement    manufacturers    distributers,    sellers,    Labrada,    and    the    public    would

- 71 -

CLASS ACTION COMPLAINT

disseminate such information to Plaintiff's and the Class members by means of product labels, advertisements, online videos, and by word of mouth. Plaintiff and the Class members justifiably relied on all misrepresentations made by Interhealth and Naturex, however, because the representations were repeated to Plaintiff and the Class through the comprehensive marketing scheme described herein.

## ** Justifiable Reliance**

184.   Plaintiff and the Class, by purchasing the products, justifiably relied on Defendants' false and misleading statements and misrepresentations, and on the absence of the material information that Defendants omitted. If Plaintiff and the class would have known the truth concerning the false representations and omissions, they would not have purchased the Labrada products at all because the Labrada products are essentially "worthless" in that they have a fair market value of $0.00.

185.   Plaintiff justifiably relied on the statements made by Dr. Oz because he assured consumers that he does not endorse a specific brand and because he has specialized knowledge as a doctor at Columbia University School of Medicine.

186.   Plaintiff and the Class also justifiably relied on the the material misrepresentations made by all Defendants as described in this complaint because Defendants used paid doctors like Harry Preuss to further the notion that the products worked as advertised and touted the fact that the Products are supported by clinical studies and scientific references that appear on the packaging of the Products and in the advertising materials for the Products.

## **Injury and Actual Damages**

187. As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiff and the members of the Class were induced to pay for worthless products.

188. As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiff and the members of the Class detrimentally relied on Defendants' misrepresentations and deceptive omissions in that

CLASS ACTION COMPLAINT

they consumed worthless products that have no positive health benefits and in the fact that the products are potentially dangerous to their health.

189.   Plaintiff and the Class bring this claim for intentional misrepresentation based on alternate legal theories sounding in both tort and contract.

190.   Plaintiff and the Class were damaged through their purchase and use of the Products. Plaintiff and the Class suffered harm in that they suffered actual damages in the amount of what they paid for the Products subtracted by the fair market value of the products are actually worth.

191.   The Labrada Products are worthless in that they have a fair market value of zero. Therefore, Plaintiff and the Class have suffered actual damages in the amount of the purchase price paid for the products.

192.   Alternatively, Plaintiff and the class allege that the Labrada Products are priced at a premium in comparison to other weight-loss products and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint. This alternative premium-price measure of damages can be calculated on a uniform class-wide basis and Plaintiff and the classes out-of-pocket loss is the amount of the premium price that the Products command.

**\*\*Fraudulent Inducement\*\***

193.   For Plaintiff's alternate intentional misrepresentation claim sounding in contract, Plaintiff suffered harm in that she has actual economic damages for Defendants' breach of contract by way of fraud and Plaintiff alleges that the proper measure of damages would be a full refund of the class members' purchase price of the products because the sales contracts are voidable as a result of fraudulent inducement. Plaintiff were induced by fraud when entering into the contract and would not have purchased the products had they known the truth. Therefore, Plaintiff and the Class repudiate their purchase contracts and pray for legal or equitable restitution to the extent that defendants have been unjustly enriched by wrongfully obtaining Plaintiff and the class members' purchase money.

CLASS ACTION COMPLAINT

194.   For Plaintiff's alternative intentional misrepresentation claim based in tort, Plaintiff and the class suffered harm and seek the actual damages suffered because they detrimentally relied on Defendants' false statements of material facts by expending their time purchasing the products and they suffered a personal injury in that they consumed Products that are worthless and potentially dangerous. This chain of events is collateral to Plaintiff purchase of the Products and gives rise to a separate tort claim as it affects a separate primary right. Plaintiff and the class have all suffered the threshold amount of harm to state a claim for fraud, but in the event that the actual damages based on this tort theory cannot be determined on a class-wide basis, Plaintiff and the Class will then seek nominal damages for their alternative intentional misrepresentation claim based on tort in the amount of $1.00 for each purchase of the Labrada Products.

**\*\*Punitive Damages\*\***

195.   Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff's and Class members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT II

### CLAIM FOR NEGLIGENT MISREPRESENTATION

#### THE COMMON LAW OF ALL STATES AND CAL. CIV. CODE § 1710(2)

#### *By the Nationwide Class and all Subclasses*

196.   Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

197.   Plaintiff brings this Count in the alternative to Count I.

198.   Defendants had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendants

- 74 -

1  were in a superior position than Plaintiff and Class Members such that reliance by
2  Plaintiff and Class Members were justified., Defendants possessed the skills and
3  expertise to know the type of information that would influence a consumer's
4  purchasing decision.

5      199.   During the applicable Class period, Defendants negligently or carelessly
6  misrepresented, omitted, and concealed from consumers material facts regarding the
7  quality and characteristics of the Products, including the alleged weight-loss benefits.

8      200.   Defendants made such false and misleading statements and omissions
9  through a wide range of advertisement medium described herein, with the intent to
10  induce Plaintiff and Class Members to purchase the Products.

11      201.   Defendants were careless in ascertaining the truth of its representations in
12  that they knew or should have known that Plaintiff and Class Members would not
13  realize the alleged benefits represented by Defendants.

14      202.   Plaintiff and Class Members were unaware of the falsity in Defendants'
15  misrepresentations and omissions and, as a result, justifiably relied on them when
16  making the decision to purchase the Products.

17      203.   Plaintiff and Class Members would not have purchased the Products or
18  paid as much for the Products if the true facts had been known.

19                **COUNT III**
20      **CLAIM FOR QUASI-CONTRACT / UNJUST ENRICHMENT**
21        ***By the Nationwide Class and all Subclasses***

22      204.   Plaintiff and the Class members incorporate by reference and re-allege
23  each and every allegation set forth above as though fully set forth herein.

24      205.   Plaintiff and the Class members conferred a benefit on Defendants by
25  purchasing the Products.

26      206.   Defendants have been unjustly enriched in retaining the revenues derived
27  from Class members' purchases of the Products, which retention under these
28  circumstances is unjust and inequitable because Defendants misrepresented the facts

CLASS ACTION COMPLAINT

1    concerning the efficacy of the Products and caused Plaintiff and the Class to lose money

2    as a result thereof.

3        207.   Plaintiff and the Class members were injured as a direct and proximate

4    result of Defendants' breach because they would not have purchased the Products if

5    the true facts had been known. Because Defendants' retention of the non-gratuitous

6    benefit conferred on it by Plaintiff and Class members is unjust and inequitable,

7    Defendants must pay restitution to Plaintiff and Class members for their unjust

8    enrichment, as ordered by the Court.

9                              <u>**COUNT IV**</u>

10                    **CLAIM FOR UNFAIR COMPETITION**

11              **CAL. BUS. & PROF. CODE §§ 17200, *et seq*.**

12    ***By the Labrada-Supercitrimax® Nationwide Class and the California Subclass***

13        208.   Plaintiff and the Class incorporate by reference and re-allege each and

14    every allegation set forth above as though fully set forth herein.

15        209.   Plaintiff brings this claim on behalf of the Labrada-Supercitrimax®

16    nationwide class against Defendants. Plaintiff Woodard also brings this claim on behalf

17    of the California subclass against all Defendants.

18        210.   California's Unfair Competition Law, Business and Professions Code

19    §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading

20    advertising."   For the reasons discussed above, Defendants have engaged in unfair,

21    deceptive, untrue and misleading advertising, and continue to engage in such business

22    conduct, in violation of the UCL.

23        211.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

24    §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair

25    or fraudulent business act or practice and unfair, deceptive, untrue or misleading

26    advertising."

27                              **\*\*Unlawful\*\***

28        212.   Defendants have violated the UCL unlawful prong in at least the following

CLASS ACTION COMPLAINT

ways:

i.  By knowingly and intentionally concealing from Plaintiff and the other Class members that the Products cannot provide the advertised weight-loss benefits while obtaining money from Plaintiff;

ii.  By misrepresenting the nature of the Products and the Products' effectiveness at providing the weight-loss benefits;

iii.  By engaging in the conduct giving rise to the claims asserted in this complaint.

iv.  By representing the Products as being "Made in the USA" in violation of California Business and Professions Code § 17533.7, which requires products with labeling statements like "Made in the USA" to contain "not more than 5 percent of the final wholesale value of the manufactured product."

213.  Such conduct is ongoing and continues to this date.

214.  Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

**\*\*Unfair\*\***

215.  The UCL also prohibits any "unfair"… business act or practice."

216.  Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendants' business conduct as described herein violates relevant laws designed to protect consumers and business from unfair

- 77 -

CLASS ACTION COMPLAINT

1  competition in the marketplace.  Such conduct is ongoing and continues to date.

2      217.  Plaintiff also allege violations of consumer protection, unfair competition

3  and truth in advertising laws in California and other states resulting in harm to

4  consumers.  Plaintiff assert violation of the public policy of engaging in false and

5  misleading advertising, unfair competition and deceptive conduct towards consumers.

6  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is

7  ongoing and continues to this date.

8      218.  There were reasonably available alternatives to further Defendants'

9  legitimate business interests, other than the conduct described herein.

10                              **Fraudulent**

11      219.  The UCL also prohibits any "fraudulent business act or practice."

12      220.  Defendants' claims, nondisclosures (i.e., omissions) and misleading

13  statements, as more fully set forth above and specifically in Count I, were false,

14  misleading and/or likely to deceive a reasonable consumer within the meaning of the

15  UCL.  Such conduct is ongoing and continues to this date.

16      221.  Defendants' conduct caused and continues to cause substantial injury to

17  Plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result

18  of Defendants' unfair conduct.

19      222.  Defendants have thus engaged in unlawful, unfair and fraudulent business

20  acts and practices and false advertising, entitling Plaintiff and the Class to injunctive

21  relief against Defendants, as set forth in the Prayer for Relief.

22      223.  Pursuant to Business and Professions Code §17203, Plaintiff and the Class

23  seek an order requiring Defendants to immediately cease such acts of unlawful, unfair

24  and fraudulent business practices and requiring Defendants to engage in a corrective

25  advertising campaign.

26      224.  Plaintiff also seeks an order for the disgorgement and restitution of all

27  monies from the sale of the Products they purchased, which was unjustly acquired

28  through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and

CLASS ACTION COMPLAINT

1  costs.

2                                   **<u>COUNT V</u>**

3  **CLAIM FOR VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL**

4                          **REMEDIES ACT ("CLRA")**

5                      **CAL. CIV. CODE §§ 1750, *et seq.***

6  ***By the Labrada-Supercitrimax® Nationwide Class and the California Subclass***

7        225.   Plaintiff and the Class members incorporate by reference and re-allege

8  each and every allegation set forth above as though fully set forth herein.

9        226.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

10       227.   Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d).

11       228.   By making affirmative misrepresentations about the weightless benefits

12  of the products and by concealing material facts about the products and the studies

13  supporting the efficacy claims about the products, Defendants engaged in deceptive

14  business practices prohibited by the CLRA, Cal. Civ. Code § 1750, *et seq.*, including:

15     •   § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification

16         of goods or services by claiming that that the Products are "Made in the USA"

17         when in fact they are not.

18     •   § 1770(a)(3): Misrepresenting the affiliation, connection, or association with, or

19         certification by, another by claiming that Dr. Oz is not affiliated with the

20         Products and does not endorse the Products, when in fact he does. Alternatively,

21         Plaintiff brings this claim against the Labrada Defendants for misrepresenting

22         the affiliation, connection, or association of the Products by misleading

23         consumers into believing that the Products are affiliated with Dr. Oz when in

24         fact they are not.

25     •   § 1770(a)(4): Using deceptive representations or designations of geographic

26         origin in connection with goods by claiming the Products are Made in the USA

27         when in fact they are not.

28

                                      - 79 -

- 1770(a)(5): Representing that goods have characteristics, uses, or benefits which they do not have by claiming that the products are effective as weight-loss aids and "fat busters" when in fact they provide no such benefits.

- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another by claiming that the products contain "standardized" ingredients and have "zero fillers, zero binders, and zero artificial ingredients" when in fact such representations are not true.

- § 1770(a)(9): advertising goods with intent not to sell them as advertised because Defendants knew that the Products could not provide the advertised benefits, but they chose to advertise and sell the Products to consumers.

- § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not by using unstandardized ingredients that fluctuate in their quantity and quality.

229.   A reasonable consumer would not have purchased nor paid as much for the Products had Defendants disclosed the truth about the weight loss benefits of the products and the clinical studies supporting the products, as that information is material to a reasonable consumer.

230.   As a result of its violations of the CLRA detailed above, Defendants have caused and continues to cause harm to Plaintiff and members of the Class and, if not stopped, will continue to harm them. Had Plaintiff known the truth about the Products she would not have purchased the Products.

231.   In accordance with Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA. In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for damages. Plaintiff and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and

- 80 -

CLASS ACTION COMPLAINT

1    for such other relief, including attorneys' fees and costs, as provided in Civil Code §

2    1780 and the Prayer for Relief.

3         232.   Plaintiff Woodard has attached a "venue affidavit" to this complaint, to

4    the extent it is required in federal court, in accordance with California Civil Code

5    Section 1781(e) attesting that Defendants are "doing business" in this County and that

6    this County is the proper place for trial.

7                                    **COUNT VI**

8                          **CLAIM FOR FALSE ADVERTISING**

9                     **CAL. BUS. & PROF. CODE §§ 17500, *et seq*.**

10   ***By the Labrada-Supercitrimax® Nationwide Class and the California Subclass***

11        233.   Plaintiff and the Class members incorporate by reference and re-allege

12   each and every allegation set forth above as though fully set forth herein.

13        234.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury

14   in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the

15   filing of this action, Plaintiff purchased the Products in reliance upon Defendants'

16   marketing claims.  Plaintiff used the Products as directed, but the Products have not

17   worked as advertised, nor provided any of the promised benefits.

18        235.  Defendants' business practices as alleged herein constitute unfair,

19   deceptive, untrue, and misleading advertising pursuant to California Business and

20   Professions Code section 17500, *et seq*. because Defendants advertised the Products

21   Plaintiff purchased in a manner that is untrue and misleading, and that is known or

22   reasonably should have been known to Defendants to be untrue or misleading.

23        236.   Defendants' wrongful business practices have caused injury to Plaintiff

24   and the Class.

25        237.   Pursuant to section 17535 of the California Business and Professions

26   Code, Plaintiff and the Class seek an order of this court enjoining Defendants from

27   continuing to engage in deceptive business practices, false advertising, and any other

28   act prohibited by law, including those set forth in the complaint.

- 81 -

CLASS ACTION COMPLAINT

238.   Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Products which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

## COUNT VII

### CLAIM FOR BREACH OF EXPRESS WARRANTY

#### CAL. COMM. CODE § 2313

*By the Labrada-Supercitrimax® Nationwide Class and the California Subclass*

239.   Plaintiff and Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

240.   The Express Warranties as defined in this complaint are written warranties that appear on the product labels and packaging.

241.   Defendants, in their capacity as manufacturers of the Products, expressly warranted that the Products were fit for their intended purpose by making the Express Warranties.

242.   The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned alleged efficacy of the Products regarding the ability aid with weight loss and bust body fat.

243.   These representations had an influence on consumers' decisions in purchasing the Products.

244.   Defendants made the above representations to induce Plaintiff and the members of Class to purchase the Products. Plaintiff and the Class members relied on the representations when purchasing Defendants' products.

245.   In fact, the Products do not conform to the Express Warranties because each of the Express Warranties is false and misleading and the Products do not perform as warranted.

246.   Plaintiff and the Class members were injured and continued to be injured as a direct and proximate result of Defendants' breach because they would not have

CLASS ACTION COMPLAINT

1  purchased the Products or paid as much for the Products if the true facts had been
2  known.[55]

3  247.   Plaintiff and the Class bring this claim against Defendants in their
4  capacities as manufacturers of the Products with whom Plaintiff has not dealt with
5  directly. Therefore, Plaintiff and the Class were not required to notify Defendants of
6  their breaches of express warranties within a reasonable time. Plaintiff has notified
7  Defendants of their breaches via letters sent by certified mail, return receipt requested,
8  and are allowing Defendants reasonable time to take corrective actions. Should
9  Defendants fail to take corrective action, Plaintiff reserves her right to amend this
10  complaint and bring claims for breach of warranty based on Defendants' capacities as
11  sellers of the Products and to assert other warranty claims based on similar state laws
12  like the California Song-Beverley Consumer Warranty Act, similar laws of other states,
13  and the Federal Magnuson-Moss Warranty Act.

14  **COUNT VIII**
15  **CLAIM FOR BREACH OF IMPLIED WARRANTY OF**
16  **MERCHANTABILITY**
17  **CAL. COMM. CODE § 2314**
18  ***By the Labrada-Supercitrimax® Nationwide Class and the California Subclass***

19  248.   Plaintiff and the Class Members re-allege and incorporate by reference
20  each and every allegation set forth above, and further allege as follows:

21  249.   Defendants, in their capacity as manufacturers of the Products, impliedly
22  warranted that the Products were fit for their intended purpose in that the Products
23  would aid with weight-loss.

24  250.   Defendants did so with the intent to induce Plaintiff and Class Members
25  to purchase the Products.

26  251.   At the time of Plaintiff and the class members' purchase, Defendants, by

27
28  [55] Though, Plaintiff and the Class would still be interested in purchasing the Labrada
Products again if they were represented properly or truthfully.

CLASS ACTION COMPLAINT

1  their occupations as manufacturers of the goods, held themselves out as having special
2  knowledge or skill regarding the Products.

3      252.   Defendants breached the warranties implied in the contract for the sale of
4  the Products in that the Products:

5          a)  Were not of the quality as of other products generally acceptable
6              in the trade of weight-loss aids and/or supplement products;

7          b)  Were not fit for the ordinary purposes for which the Products
8              were intended because they provide no weight-loss benefits.

9          c)  Were not adequately labeled because the statements on the label
10             are false and misleading;

11         d)  Were not conformed to the promises or affirmations of fact made
12             on the container or label because the Products provide no weight-
13             loss benefits and are worthless products;

14     253.   Moreover, the Products could not pass without objection in the trade
15  under the contract description, the goods were not of fair or average quality within the
16  description, and the goods were unfit for their intended and ordinary purpose. As a
17  result, Plaintiff and the Class members did not receive the Products as impliedly
18  warranted by Defendants to be merchantable.

19     254.   Plaintiff and the Class bring this claim against Defendants in their
20  capacities as manufacturers of the Products with whom Plaintiff has not dealt with
21  directly. Therefore, Plaintiff and the Class were not required to notify Defendants of
22  their breaches of implied warranties within a reasonable time. Plaintiff has notified
23  Defendants of their breaches via letters sent by certified mail, return receipt requested,
24  and are allowing Defendants reasonable time to take corrective actions. Should
25  Defendants fail to take corrective action, Plaintiff reserves her right to amend this
26  complaint and bring claims for breach of implied warranties based on Defendants'
27  capacities as sellers of the Products and to assert other warranty claims based on similar
28  state laws like the California Song-Beverley Consumer Warranty Act,  similar laws of

- 84 -

CLASS ACTION COMPLAINT

other states, and the Federal Magnuson-Moss Warranty Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class Members request that the Court enter an order or judgment against Defendants including the following:

A.      An order certifying that this action is properly brought and may be maintained as a class action;

B.      An order appointing Plaintiff as class representatives of the Nationwide Class, as class representative of their respective Subclasses, and The Law Office of Ronald A. Marron as counsel for the Class;

C.      An order requiring Defendants to bear the costs of Class notice;

D.      Restitution in such amount that Plaintiff and Class Members paid to purchase Defendants' Products;

E.      Actual damages, compensatory damages, punitive, treble damages, nominal damages, and such other relief as provided by the statutes cited herein;

F.      Other appropriate injunctive relief;

G.      An order declaring Defendants' conduct as unlawful, and an order enjoining Defendants from unlawfully and misleadingly representing the Products in violation of state law;

H.      An order awarding Plaintiff their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest on such monetary relief;

I.      An order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendants received as a result of the misleading, fraudulent, and unlawful conduct alleged herein.

J.      Such other relief to which Plaintiff and Class Members may be entitled to at law or in equity.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: February 2, 2016

/s/ *Ronald A. Marron*
Ronald A. Marron

**THE LAW OFFICES OF
RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Skye Resendes
*skye@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Counsel for Plaintiff and the Proposed
Class***

- 86 -

CLASS ACTION COMPLAINT

1     I, Veda Woodard, declare as follows:

2     1.   I am a Plaintiff in this action. I make this affidavit pursuant to California Civil Code Section

3 1780(d).

4     2.   The Complaint in this action is filed in a proper place for the trial of this action because

5 Defendants are doing business in this county.

6

7     I declare under penalty of perjury under the laws of California and the United States that the

8 foregoing is true and correct.

9

10 Dated: ___1/4___, 2016

11                      VEDA WOODARD

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENUE AFFIDAVIT