**LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
ron@consumersadvocates.com
SKYE RESENDES (SBN 278511)
skye@consumersadvocates.com
MICHAEL T. HOUCHIN (SBN 305541)
mike@consumersadvocates.com
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
Attorneys for Plaintiff and the Proposed Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEDA WOODARD on behalf of herself, all others similarly situated, and the general public,<br><br>                              Plaintiff,<br><br>v.<br><br>LEE LABRADA; LABRADA BODYBUILDING NUTRITION, INC.; LABRADA NUTRITIONAL SYSTEMS, INC.; DR. MEHMET C. OZ, M.D.; ENTERTAINMENT MEDIA VENTURES, INC. d/b/a OZ MEDIA; ZOCO PRODUCTIONS, LLC; HARPO PRODUCTIONS, INC; SONY PICTURES TELEVISION, INC; NATUREX, INC.; and INTERHEALTH NUTRACEUTICALS, INC.,<br><br>                              Defendants. | Case No.:  2:16-cv-00717<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:     May 9, 2016<br>Time:                 9:00 a.m.<br>Judge:               Jesus Bernal<br>Department        1 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 3

II.  BACKGROUND ................................................................................................... 7

  A.  The Supplement Enterprise ............................................................................ 8

  B.  The "Dr. Oz Effect" ...................................................................................... 10

  C.  Plaintiff's Complaint Alleges that Dr. Oz Does "Sell the Stuff" and Is "Making Money" ............................................................................................................... 10

III.  LEGAL STANDARD ........................................................................................ 12

  Rule 12(b)(6) ........................................................................................................ 12

  Rule 9(b) ............................................................................................................... 13

  Matters Outside the Pleadings ............................................................................. 13

IV.  ARGUMENT ...................................................................................................... 16

  A.  The Court Should Not Consider Defendants' Impermissible Evidence that Introduces Matters Outside of the Pleadings— Especially Footnote Twelve ............... 16

  B.  Plaintiff's Class Action Claims Are Timely ................................................ 18

  C.  The Single Publication Rule Does Not Apply to Plaintiff's UCL, FAL, Quasi-Contract, and CLRA Claims Because They Are Not Causes of Action for Damages ... 19

  D.  The Single Publication Rule is an Affirmative Defense and Defendants Bear the Burden of Proving the Existence of a "Single Integrated Publication" .......................... 20

  E.  Plaintiff Has Adequately Plead Tolling of the Statute of Limitations .................... 21

  F.  Plaintiff Has Adequately Plead Violations of California's Consumer Fraud Laws 22

  G.  The Media Defendants Are Jointly Liable ................................................... 22

V.  CONCLUSION .................................................................................................... 23

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     <u>INTRODUCTION</u>

Plaintiff Veda Woodard's complaint seeks redress on behalf of consumers who have been harmed— and continue to suffer harm— as a result of a fraudulent marketing scheme known as "*The Doctor Oz Effect*." As alleged in Plaintiff's well-pleaded class action complaint, "Products mentioned by Dr. Mehmet Oz on *The Doctor Oz Show* have a habit

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

of being conspicuously absent from store shelves the following day. This phenomenon, termed the 'Oz Effect,' has taken retailers by storm– and by surprise–since store managers have no advance warning that a given product will be blasted into notoriety from a mention by the 'celebri-doc.'" (Plaintiff's Class Action Complaint ¶ 9, Feb. 2, 2016, ECF No. 1-1 [hereinafter "Compl."]).

After facing growing public criticism, what news outlets have called "a grilling" by a United States Senate Subcommittee, and now a class action lawsuit, Defendant Dr. Mehmet C. Oz ("Dr. Oz") and the producers of the *The Doctor Oz Show*[1] are attempting to use the First Amendment as a shield from liability to consumers.  However, the law is clear that "[T]here is no constitutional value in false statements of fact. *Neither* <u>*the intentional lie nor the careless error*</u> *materially advances society's interest in `uninhibited, robust, and wide-open' debate on public issues." See* <u>Kasky v. Nike, Inc.</u>, 45 P. 3d 243, 306 (Cal. 2002) (quoting <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (emphasis added). This is especially so when the speech at issue seeks to further nothing more than a commercial transaction.[2] As alleged in Plaintiff's complaint, several episodes of *The Doctor Oz Show* are not just commercial speech that has a tendency to deceive reasonable consumers and the public, but rather are nothing more than actual

---

[1] Defendants Zoco Productions ("Zoco"), Harpo Productions ("Harpo"), Sony Pictures Television ("Sony"), and Dr. Mehmet C. Oz ("Dr. Oz") are collectively referred to in this Opposition as "The Media Defendants."

[2] <u>See e.g.</u>, <u>Rubin v. Coors Brewing Co.</u>, 514 U.S. 476, 496 (1995) ("The evils of false commercial speech, which may have an immediate harmful impact on commercial transactions, together with the ability of purveyors of commercial speech to control falsehoods, explains why we tolerate more governmental regulation of this speech than of most other speech.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*television commercials*; they "concentrate on the type of weight-loss plans more commonly found on infomercials in the middle of the night."[3] (Compl. ¶ 88).

Faced with a well-pleaded complaint that states plausible claims for relief for millions of consumers, the Media Defendants' now blatantly attempt to avoid liability by skipping discovery and instead conducting their own "trial by surprise." Indeed, The Media Defendants' so-called "Motion to Dismiss" raises a host of issues that are better suited for a summary judgment motion after the parties have an opportunity to conduct discovery. This Court should not entertain Defendants' "trial by surprise" tactic.

**First**, Defendants have submitted a self-serving attorney declaration and eight exhibits in support of their motion that completely lack foundation. (See Declaration of William Haggerty, ("Haggerty Decl.") ECF No. 45 at 6). Plaintiff objects to the authenticity of Defendants' evidence and has filed her Evidentiary Objections concurrently herewith. This Court must not consider Defendants' evidence on a motion to dismiss, especially when there is a probability that the dates of the recordings, or the recordings themselves, may have been "doctored" so to say. Federal Rule of Evidence 901 requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Defendants have failed to meet this burden for several reasons discussed in Plaintiff's Evidentiary Objections.

**Second**, Defendants' primary argument is that Plaintiff's claims are somehow time-bared because the applicable statute of limitations has expired. But courts consistently hold that the statute of limitations is an affirmative defense that necessarily involves factual determinations in which the Defendant bears the burden of proof. Thus, the statute of limitations is better suited for a summary judgment motion. See, e.g., Seven Arts Filmed Entm't Ltd. v. Content Media Corp., PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (noting that

---

[3] (quoting Michael Specter, The Operator: Is America's Most Trusted Doctor Doing More Harm Than Good?, THE NEW YORKER (Feb. 4, 2013))

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

a statute of limitations defense may be raised in a motion to dismiss only if it "is apparent from the face of the complaint."); <u>Pippin v. Fox</u>, No. 13-cv-4552-EDL-PR (N.D. Cal. Jan. 13, 2015) ("The court may grant a motion to dismiss based on the running of the statute of limitations 'only if the assertions in the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'");  <u>BALDHOSKY v. Sanchez</u>, Case No. 1:14-cv-00166-MJS (PC) (E.D. Cal. Mar. 17, 2015) ("In fact, a complaint cannot be dismissed unless it appears ***beyond doubt that the plaintiff can prove no set of facts*** that would establish the timeliness of the claim.") (emphasis added).

**Third**, Defendants seem to be arguing, without much elaboration, that this Court should somehow be inclined to dismiss Plaintiff's complaint because it involves "core speech on a matter of public concern" and should be given the fullest protections of the first amendment instead of the "less robust deference accorded commercial speech." (Def.s' Mem.  Without ever fully developing this argument, Defendants fail to state how exactly this is relevant to their Rule 12(b)(6) Motion to Dismiss for *Failure to State a Claim in which Relief can be Granted*. Plaintiff is alleging claims for false advertising of dietary supplements. The First Amendment is ***not*** a defense to Plaintiff's claims, much less a reason to dismiss Plaintiff's well-pleaded complaint. <u>See</u> <u>Consumer Justice Center v. Trimedica International, Inc.</u>, 132 Cal. Rptr. 2d 191, 107 Cal. App. 4th 595 (Ct. App. 2003) (Finding no first amendment protection when a supplement company argued that "herbal dietary supplements and other forms of complementary medicine are the subject of public interest" because the "speech is not about herbal supplements in general [and was] commercial speech about the specific properties and efficacy of a particular product.").

**Finally**, the Media Defendants have informed Plaintiff that they intend to file a "Special Motion to Strike" brought under California's Anti-SLAPP law. This intended motion is yet another attempt to conduct a trial by surprise under the guise of First Amendment Protections. However, Plaintiff's counsel has informed counsel for the Media Defendants that the applicability of California's Anti-SLAPP law in federal court is

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

questionable in light of recent decisions from the Supreme Court and the Ninth Circuit. Although Plaintiff will address these arguments at the appropriate time, one thing should be clear from the face of Plaintiff's complaint: It is beyond plausible that the Media Defendants have deceived reasonable consumers through their promotion of bogus weight loss supplements. Plaintiff intends to produce voluminous exhibits in opposition to any Anti-SLAPP motion that is filed by Defendants. Plaintiff also intends to file a Motion to Allow Time for Discovery should Defendants continue with their "trial by surprise" tactic.

For purposes of this motion, however, Plaintiff is only referencing evidence that appears from within the four corners of her complaint, evidence that is incorporated by reference in her complaint, facts that can be judicially noticed by this Court, or evidence presented solely for purposes of challenging the authenticity of documents that Defendants rely on in support of their motion. Plaintiff believes that limiting her opposition to such evidence comports with the spirit of the Federal Rules and its "liberal pleading standard," which requires only a "short and plain statement" that Plaintiff and the class are entitled to relief. See Fed R. Civ. P. 8(a).

## II.    **BACKGROUND**

Plaintiff filed her complaint on February 2, 2016 on behalf of classes of consumers who purchased certain Labrada brand weight loss supplement products containing Raspberry Ketones, Svetol Green Coffee Bean Extract and Supercitrimax Garcinia Cambogia. (Plf.'s Compl., ¶ 3). Plaintiff purchased several Labrada brand supplements in reliance on the advertising claims made on the labels and in reliance on certain claims made on the Dr. Oz Show about the products. (Plf.'s Compl., ¶¶ 24-25). Plaintiff did not believe, and had no reason to believe, that Dr. Oz was connected to the supplement industry and likely has a financial interest in the products that are promoted on *The Doctor Oz Show*. (Plf.'s Compl., ¶ 143).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff is asserting claims against the Media Defendants for violations of California Civil Code Sections 1709-1711 *et seq.* (Counts I-II), quasi-contract with unjust enrichment as a remedy (Count III), the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law, Cal Bus. & Prof. Code §§ 17200 *et seq.* (Count IV), violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.* (Count V); and violations of California's False Advertising Law ("FAL").[4]

## A. The Supplement Enterprise

The Defendants in this case play a huge part in the global multi-billion-dollar weight loss supplement industry. (Compl., ¶ 42).  Defendants Lee Labrada, Labrada Bodybuilding, and Labrada Nutrition ("Labrada") are the "boots on the ground" so to say. Labrada is one of many affiliated marketing companies that sells proprietary supplement ingredients that are manufactured by Defendants Interhealth Nutraceuticals, Inc. ("Interhealth") and Defendant Naturex, Inc. ("Naturex") (collectively the "Manufacturing Defendants"). Interhealth manufactures Supercitrimax® brand Garcinia Cambogia and Naturex manufactures Svetol® brand of Green Coffee Bean Extract. (Compl., ¶ 6).[5] The Supercitrimax logo appears on the Labrada Garcinia Cambogia label and the Svetol logo appears on the Labrada Green Coffee Bean Extract label. (Compl., ¶¶ 57, 64).

---

[4] The Media Defendants devote about a page of their brief to arguing that Plaintiff "fails to allege plausible breach of express or implied warranty claims" against the Media Defendants. (Def.s' Mem. p. 19). This is true. Plaintiff's complaint does not allege breach of warranty claims against any of the Media Defendants. The complaint states that the warranty claims are being brought against "Defendants, *in their capacity as manufacturers of the products.*" (Compl., ¶¶ 241; 249). Plaintiff does not allege that the media Defendants "manufacture" the products and instead are liable for their role in promoting and marketing "the products (and/or their proprietary active ingredients)." (Compl., ¶ 30 (Dr. Oz); ¶ 32 (Zoco); ¶ 33 (Harpo); ¶ 35 (Sony)).

[5] Plaintiff is unaware of the identity of the manufacturer of the Raspberry Ketones Product at this time.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Like a spider web, the Manufacturing Defendants are both intrinsically and intentionally entangled with the affiliated marketers and sellers of their proprietary ingredients. (Compl., ¶ 132).  This allows the Manufacturing Defendants to distance themselves from liability associated with the direct-to-consumer marketing and sales of the products and also allows them to engage in a marketing tactic, commonly deployed in the automotive industry known as "badge engineering."[6] (Compl., ¶ 132).  By selling the same supplement product under several distinct brands, the Manufacturing Defendants and their affiliated marketers tap into a broad consumer demographic, while at the same time spreading the overall costs of development and manufacturing of the products.  In exchange, the Manufacturing Defendants fund "clinically studies" that the affiliated marketers like Labrada can use to bolster the credibility of weight loss pills like the Labrada brand "DUAL ACTION FAT BUSTER." (Compl., ¶¶ 16, 19).  In fact, the Labrada packaging actually includes citations to these so called "studies," but conceals material facts about the studies such as the fact that the studies were actually funded by the Manufacturing Defendants and/or their agents. (Compl., ¶¶ 56, 63). Moreover, the Manufacturing Defendants employed another clever marketing strategy for the common benefit of the Joint Enterprise—"*The Doctor Oz Effec*t."

---

[6] "The truth is the global auto market is now full of identical or near-identical cars sold under different brand names and at different prices. The practice, known — with a touch of irony — as "badge engineering," enables car companies to source models from competitors, thereby rounding out their product lines without investing in the massive tooling needed to make each model in-house....Rebadged cars are identical in all respects, except perhaps for some tiny cosmetic distinctions such as the placing of the headlamps or the shape of the trunk. They not only come from the same factories but are in many cases made by the same workers on the same production lines. Yet their prices can vary significantly depending on which maker's badge is on the grill." *Same Car, Different Brand, Hugely Higher Price: Why Pay An Extra $30,000 For Fake Prestige?*, Forbes (Jul. 14, 2013)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*B. The "Dr. Oz Effect"*

Sometime in 2012, Defendants Interhealth, Naturex, and/or Labrada, either directly or through their agents, entered into agreements with the Media Defendants to have Dr. Oz promote the proprietary ingredients on *The Doctor Oz Show*. (Compl., ¶ 133). This arrangement was essential to the successful sales of supplement products like Labrada's DUAL-ACTION FAT BUSTER, as well as other identical supplement products sold under various brand names. (Id.) It was also specifically designed to financially benefit each of the Defendants, as well as other unnamed members of the joint enterprise. (Id.) In fact, these touted "miracle" ingredients were virtually unknown to ordinary consumers until they were endorsed by "America's Doctor" on *The Doctor Oz Show*. (Compl., ¶ 9 & n. 3).

To bolster the credibility of Dr. Oz— an already trusted doctor and Emmy award winning talk show host— Defendants mislead consumers and the public about the true nature of the "new studies" that supposedly supported the efficacy of these once unknown proprietary supplement ingredients.  One of these "new studies" was undoubtedly fabricated after an FTC investigation revealed that the authors falsified the underlying study data.  Dr. Oz- a renowned surgeon at Columbia University Medical Center- either knew that the studies supporting these proprietary ingredients were deceptive, or he acted with reckless disregard when representing to consumers that these studies supported the efficacy of the products. Plaintiff's complaint plausibly alleges that even if Dr. Oz did not act with knowledge or reckless disregard, then he and the Media Defendants are still liable under California law for disseminating advertisements about the products that have a tendency to deceive reasonable consumers and the general public.

*C. Plaintiff's Complaint Alleges that Dr. Oz Does "Sell the Stuff" and Is "Making Money"*

Plaintiff's Complaint plausibly alleges that Dr. Oz and the Media Defendants do have a financial interest in the sales of the products that are featured on the show. For example,

Plaintiff alleges that "One episode of *The Dr. Oz Show* featuring Garcinia Cambogia also touted the need for viewers to choose a garcinia supplement that contains HCA (hydroxy citric acid) with potassium" (Compl., ¶ 92) (quoting the *The Doctor Oz Show*: "Because it actually is absorbed better with mineral salts, like potassium or potassium and calcium, you want to make sure that that's included"). The complaint further alleges that "Dr. Oz fails to disclose that there *is only one brand* of Garcinia cambogia that contains potassium. Indeed, Defendant Interhealth's Supercitrimax® brand is the only brand that contains HCA bound to potassium because Interhealth owns patents allowing it to exclusively manufacture a form of HCA bound to potassium." (Compl., ¶ 93).

Moreover, each complaint alleges that various supposed competitors engaged in unfair competition by including statements like "Zero, Fillers, Zero Binders, And Zero Artificial Ingredients" on the label.  As Plaintiff's complaint alleges, the "Zero Fillers, Zero Binders, And Zero Artificial Ingredients" is an advertising slogan associated with products that are made by Interhealth, Naturex, and/or Labrada and these adverting slogans were disseminated by the Media Defendants on *The Doctor Oz Show*. (Plf.'s Compl., ¶ 92-93).[7]

Both the Labrada Garcinia Cambogia labels and Green Coffee labels do in fact say "ZERO FILLERS, ZERO BINDERS, AND ZERO ARTIFICIAL INGREDIENTS." (Plf.'s Compl. ¶¶ 58, 67).  Some of the Vitamins Online lawsuits also claim that the competing products are "*inferior to the product featured on the Dr. Oz Show*." Another section states

---

[7] Plaintiff's complaint alleges that Dr. Oz made the following statement on an episode featuring Garcinia Cambogia:

All right, so I've warned everybody that *I'm not going to mention specific brands*, but I do want to go through exactly what I would look for. You're going to look on that list of ingredients. **There should be ZERO FILLERS. There should be ZERO BINDER, ZERO ARTIFICIAL INGREDIENTS, all right?** Remember, you should never see my picture next to it, because *I never sell it.* You see my picture next to it, that means they're stealing from you. *I guarantee, as soon as the show airs, there are going to be thousands of fake ads out there. Don't go for those.* I don't want you to be confused, so I do want to answer your questions from the audience just to make sure you're all on the same page with me. (Compl. ¶ 92).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

that: "[Competitor's] Garcinia is materially *different from the product **actually** featured by DR. OZ*...").

Plaintiff's complaint further alleges that Dr. Oz consistently puts his business interests first (Plf.'s Compl., ¶ 95) and that a member of the *The Doctor Oz Show*'s medical advisory board— Mr. Chris Kiham— "conducts medicinal plant research for Naturex, one of the largest botanical extraction companies in the world." (Compl., ¶ 94). Plaintiff's complaint also alleges that "Dr. Oz has concealed his association with Defendant Interhealth. As of the date of filing this complaint, the Dr. Oz website still has an episode posted that promotes Meratrim® weight-loss supplements" and notes that "Meritrim® is a trademarked proprietary ingredient that [is] marketed and sold by Defendant Interhealth." (Plf.'s Compl., ¶ 91).

### III.      LEGAL STANDARD

#### Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing the party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**Rule 9(b)**

"Rule 9(b) is not an insurmountable hurdle that bars the pleading of any fraud claim." Jacqueline Dean v. Colgate-Palmolive Co., 5:15-cv-00107-JGB-DTB, ECF No. 31 (C.D. Cal. June 17, 2015). "Averments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations omitted). Thus, a plaintiff will survive a challenge under Rule 9(b) if the complaint is specific enough to give defendants notice of the particular misconduct. Bly–Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).

**Matters Outside the Pleadings**

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." US v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  the material that is pertinent to the motion."). However, there are two narrow exceptions to

2  this general rule.

3       The first exception is the "incorporation by reference" doctrine.  "Under the

4  'incorporation by reference' doctrine in this Circuit, 'a court may look beyond the pleadings

5  without converting the Rule 12(b)(6) motion into one for summary judgment.'" <u>Davis v.</u>

6  <u>HSBC Bank Nevada, NA</u>, 691 F. 3d 1152, 1160 (9th Cir. 2012) (quoting <u>Van Buskirk v.</u>

7  <u>Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002). However, "[t]he

8  incorporation by reference doctrine 'is a narrow exception . . . It is not intended to grant

9  litigants license to ignore the distinction between motions to dismiss and motions for

10  summary judgment.'" <u>In re Immune Response Sec. Litig</u>., 375 F. Supp. 2d 983, 995 (S.D.

11  Cal. 2005) (internal quotation omitted). Furthermore, the incorporation by reference

12  doctrine is only applicable "if the complaint relies on the document and its authenticity is

13  unquestioned." <u>Swartz v. KPMG LLP</u>, 476 F. 3d 756, 763 (9th Cir. 2007).

14       The second exception is that court's may take judicial notice of "a fact that is not

15  subject to reasonable dispute" because it is either "generally known within the trial court's

16  territorial jurisdiction" or "can be accurately and readily determined from sources whose

17  accuracy cannot reasonably be questioned." <u>See</u> Fed. R. Evid. 201 (also stating that a court

18  may take judicial notice at "any stage of the proceeding."); <u>see also</u> <u>Rosati v. Igbinoso</u>, 791

19  F. 3d 1037, 1039 n. 3 (9th Cir. 2015) ("When reviewing a motion to dismiss, we consider

20  only allegations contained in the pleadings, exhibits attached to the complaint, and matters

21  properly subject to judicial notice.") (citing <u>Akhtar v. Mesa</u>, 698 F. 3d 1202, 1212 (9th Cir.

22  2012)).

23  **<u>Consumer Fraud Claims</u>**

24       Claims for violations of the CLRA, FAL, and UCL are "governed by the 'reasonable

25  consumer' test." <u>See</u> <u>Williams v. Gerber Products Co.</u>, 552 F.3d 934, 938 (9th Cir. 2008)

26  (quoting <u>Freeman v. Time, Inc.</u>, 68 F.3d 285, 289 (9th Cir. 1995)). "A reasonable consumer

27  is 'the ordinary consumer acting reasonably under the circumstances.'" <u>Davis v. HSBC</u>

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting Colgan v. Leatherman

2  Tool Group, Inc., 135 Cal.App.4th 663, 682 (Cal. Ct. App. 2006)). In applying that

3  standard, a plaintiff "must 'show that members of the public are likely to be deceived'" by

4  the defendant's advertisement. Id. (quoting Freeman, 68 F.3d at 289). Thus the CLRA,

5  FAL, and UCL prohibit advertising that is false as well as advertising that is true but "is

6  either actually misleading . . . or has a capacity, likelihood or tendency to deceive or

7  confuse the public." Kasky, 27 Cal. 4th at 951. "[T]o state a claim under either the UCL or

8  [FAL], based on false advertising or promotional practices, 'it is necessary only to show

9  that members of the public are likely to be deceived.'" Plaintiffs "need not prove that each

10 member of the class relied on the allegedly fraudulent misrepresentation." Algarin v.

11 Maybelline, LLC, 300 F.R.D. 444, 453 (S.D. Cal. 2014).

12      Although reasonableness can, in appropriate circumstances, be decided as a question

13 of law, "California courts . . . have recognized that whether a business practice is deceptive

14 will usually be a question of fact not appropriate for decision on [a motion to dismiss]."

15 Williams, 552 F.3d at 938 (internal citation omitted).

16 **Actionable Omissions under California's Consumer Fraud Laws**

17      A plaintiff must plead that there was misleading advertising or an actionable

18 omission. To state a claim under the FAL one must plead either advertising is false or that

19 "although true, is either actually misleading or which has a capacity, likelihood or tendency

20 to deceive or confuse the public." Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002) (internal

21 quotation marks omitted). Any violation of the "false advertising law . . . necessarily

22 violates the UCL." Id. at 950. Under the fraudulent prong of the UCL, "[a] plaintiff alleging

23 that the defendant failed to disclose material facts must, however, establish that the

24 defendant had a duty to disclose those facts." In re Sony Grand Wega KDF-E A10/A20

25 Series Rear Projection HDTV Television Litig., 758 F.Supp.2d 1077, 1092 (S.D. Cal.

26 2010).

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

A duty to disclose arises "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." Collins v. eMachines, Inc., 202 Cal.App.4th 249, 255 (2011). However, actionable omissions need not be pleaded if the complaint adequately alleges that members of the public are likely to be deceived. See Schnall v. Hertz Corp., 78 Cal.App.4th 1144, 1167 (2000) ("Under the UCL's "fraudulent prong," "[a] violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Rather, it is only necessary to show that members of the public are likely to be deceived.").

## IV.    <u>ARGUMENT</u>

### A. *The Court Should Not Consider Defendants' Impermissible Evidence that Introduces Matters Outside of the Pleadings— Especially Footnote <u>Twelve</u>*

As an initial matter, the Media Defendants rely on matters outside the pleadings throughout their Memorandum of Points and Authorities in support of their Motion to Dismiss. (See, e.g., Def.s' Mem. 18-19, Apr. 4, 2016, ECF No. 45) ("though omitted from the Complaint, each episode of the show contained a disclaimer that '[t]his show is only intended to provide general information and not specific medial advice."). Defendants contend supposed disclaimers— which appear with the credits in small font for approximately three seconds at the end of the "recordings"— can somehow negate the overwhelming marketing message conveyed throughout the shows and that is alleged in Plaintiff's Complaint. (Compl. ¶¶ 8-9)[8] But whether or not the promotional statements at

---

[8] (quoting The Doctor Oz Show: ""Magic is make believe, but [a] little bean has scientists saying they found a ***magic weight-loss cure for every body type***. It's green coffee beans. When turned into a supplement this ***miracle pill can burn fat fast***;" Garcinia Cambogia

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

issue are likely to deceive a reasonable consumer is a question for the trier of fact to decide. Furthermore, this Court need not even decide that issue because Defendants' Evidence lacks foundation. (Plf.'s Objs.").

Defendants' counsel, Mr. William C. Haggerty, has submitted a declaration that appears at the very end of the Media Defendants' brief and claims that "All matters stated herein are true and correct and within my personal knowledge." (Haggerty Decl., ¶ 1). The declaration then goes on to describe nine exhibits that are purportedly "true and correct" copies or recordings. (Haggerty Decl., ¶¶ 5-13). The first exhibit is "a true and correct recording of the Dr. Oz television program concerning Garcinia Cambogia recorded on October 23, 2014, which is referenced in Plaintiff's complaint." (Haggerty Decl., ¶ 5). The second purports to be the Green Coffee recording on April 10, 2012 (Haggerty Decl., ¶ 6) and the third purports to be the raspberry ketone recording on January 17, 2012 (Haggerty Decl., ¶ 7). Exhibits four through six then purport to be transcripts of these "recordings" (Haggerty Decl., ¶¶ 8-10) and exhibits eleven through thirteen purport to be screenshots of a "disclaimer" that appeared at the end of each "recording." (Haggerty Decl., ¶¶ 11-13).

Although Plaintiff's Evidentiary Objections adequately question the authenticity of the documents, Plaintiff does note that Defendants' own brief states that "at the close of the April 10, 2012 Show, Dr. Oz said: 'In **_February_** we did a show on a weight-loss supplement called raspberry ketone....'" (Def.s' Mem. at p. 2 ll. 8-13) (emphasis added). But this statement is interesting when compared to Mr. Haggerty's own declaration stating that the raspberry ketone recording was on **_January_** 17, 2012. (Haggerty Decl., ¶ 7). Plaintiff recognizes that this may have been a mistake, or perhaps it is even technically true that the show was "recorded" in January of 2012. What matters, however, is when the show was _broadcast_ to the consumers who relied on Dr. Oz's statements. Mr. Haggerty's declaration

"could be the **_magic ingredient that lets you lose weight without diet or exercise_**;" "Now I've got the **_number one miracle in a bottle to burn your fat_**, it's raspberry ketone.").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

highlights exactly why Defendants' statute of limitations argument is best reserved for a summary judgment motion after the record has been more fully developed through the discovery process.

    **With respect to <u>footnote number twelve</u>**, Defendants cite to an article about Raspberry Ketones that appears on the website WebMD. (Def.s' Mem. at 7 n. 12).[9] Although some may consider WebMD to be an accurate source: <u>This Court should not</u>. According to an article in the *New York Times* about the health website "<u>Sharecare.com</u>," there is a clear connection between WebMD and the Media Defendants in this case. The article states the following:

> Sharecare was formed by a consortium that includes **Mr. [Jeff] Arnold, who founded <u>WebMD</u>** and later was chief executive of HowStuffWorks.com when it was sold to Discovery Communications; **<u>Dr. Oz</u>**, whose career as a health care arbiter was made by Oprah Winfrey; **Harpo Productions**, Ms. Winfrey's company; **Sony Pictures Television**, a unit of the Sony Corporation that co-owns "The Dr. Oz Show" with Ms. Winfrey; and Discovery, a partner with Ms. Winfrey in OWN: the Oprah Winfrey Network, a cable channel to be introduced in January.[10]

### B.    *Plaintiff's Class Action Claims Are Timely*

    Defendants correctly note that claims for violations of the UCL and FAL have a four-year statute of limitations period. (Def.'s Mem. at 8) (citing Cal. Bus. & Prof. Code § 17208). Plaintiff filed her complaint on February 2, 2016.  This means that the earliest date of accrual of the statute of limitations period would be on <u>February 2, 2012</u>.  Now, it appears rather obvious why dates matter in this case and why Defendants' statute of limitations defense is better suited for a summary judgment motion. If the statute of

---

[9] Plaintiff notes that the WebMD article also states that the Raspberry Ketone episode was in February of 2012.

[10] <u>https://www.sharecare.com/user/jeff-arnold.</u>

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

limitations period were to accrue on January 17, 2012— the day that Defendants claim that the shows were "recorded"— then Plaintiff's case might have been untimely as to the raspberry ketones product. However, Defendants own contradictory evidence notes that the show was more likely *broadcast* sometime in February of 2012. Thus, so long as the show was broadcast after February 2, 2012 (a fact Plaintiff intends to establish through discovery), then Plaintiff is within the four-year statute of limitations period for her FAL and UCL claims. The two other episodes regarding Garcinia Cambogia and Green Coffee Bean appear to have aired after February 2, 2012 and thus Plaintiff's claims are well within the statute of limitations period. This Court need not even consider tolling doctrines with respect to Plaintiff's FAL and UCL claims.

### C.   The Single Publication Rule Does Not Apply to Plaintiff's UCL, FAL, Quasi-Contract, and CLRA Claims Because They Are Not Causes of Action for Damages

The Single Publication Rule provides that "No person shall have more than one cause of action ___*for damages*___ for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture." See Cal. Civ. Code § 3425.3. Plaintiff is not bringing causes of action *for damages* with respect to California's consumer fraud law claims. Indeed, no damages of any kind are recoverable under the UCL and FAL. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144 (2003); Forty Niner Truck Plaza, Inc. v. Shank, No. Civ. S-11-860 FCD, 2011 WL 4386299, at *2 (E.D. Cal. Sept. 20, 2011) ("A claim under [the UCL] is 'equitable in nature; damages cannot be recovered . . . .'"). Plaintiff is also not seeking damages at this time for her claim under the CLRA. (Plf.'s Compl., ¶ 231).

Even if Plaintiff were seeking damages on behalf of the class for her statutory consumer fraud claims, the single publication rule only applies to "libel or slander or

invasion of privacy or any other tort founded upon any single publication or exhibition or utterance" See Cal. Civ. Code § 3425.3. The UCL, CLRA, and FAL are not common law tort claims that are subject to the three-year statute of limitations applicable to tort based claims. See Cal. Code Civ. P. § 338. Indeed, the California legislature specifically provided a statute of limitations period within the text of the statutes for the UCL, CLRA, and FAL. See Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783. Defendants cite to no authority whatsoever for the proposition that the single publication rule was intended to apply to violations of California's consumer protection statutes.

### D.    The Single Publication Rule is an Affirmative Defense and Defendants Bear the Burden of Proving the Existence of a "Single Integrated Publication"

Even if the single publication rule were to apply outside to Plaintiff's other causes of action, Defendant still bears the burden of proving that a "single integrated publication" exists. Christoff v. Nestle USA, Inc., 213 P.3d 132, 47 Cal. 4th 468, 482 (2009) ("Whether the single publication rule should be applied to the circumstances of this case had best be decided when we know what they were.' The parties did not have a reason or an opportunity to present such evidence.") (citation omitted). In other words, this is yet another issue better suited for summary judgment.

Defendants will, however, likely face significant challenges in meeting their burden of proving that a "single integrated publication" exists because Plaintiff's Complaint adequately pleads violations of California Civil Code § 1711. Section 1711 provides that "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." (Compl. ¶ 180). Every time the misleading statements are republished on a website, on a product label, or through word of mouth, their fraudulent statements are considered to be "republished." C.f. Hickey v. St. Martin's Press, Inc., 978 F. Supp. 230, 237 (D. Md. 1997) (noting that "liability may attach where a repetition of

defamatory material is a natural and probable consequence of defendants' actions," or if it was "reasonably foreseeable by the defendants"); <u>Shepard v. Nabb</u>, 581 A.2d 839, 845–46 (Md. Ct. Spec. App. 1990) (remanding the case for determination of whether alleged libelous remarks were the "natural and probable consequence" of an earlier publication, supporting a cause of action against the original publisher). Thus, even if the single publication rule does apply to common law deceit, Plaintiff has alleged that Defendants "intended to defraud the public or a class of persons" and therefore the fraudulent statements are being republished still to this day and is a continuing violation.[11]

### E.     *Plaintiff Has Adequately Plead Tolling of the Statute of Limitations*

Plaintiff's complaint also alleges that that the statute of limitations are tolled by either the delayed discovery (¶ 142), fraudulent concealment, (¶ 143) or the continuing violation doctrine (¶ 144).  Defendants engaged in a false and deceptive advertising scheme that actively concealed the truth from consumers.  (¶ 143)  Again, these allegations are sufficient to survive a 12(b)(6) motion to dismiss and are more properly addressed on a motion for summary judgment.

---

[11] "It is true that in order for a defendant to be liable for fraud, he or she must intend that a particular representation or concealment be relied upon by a specific person or persons. However, it is also established that a defendant cannot escape liability if he or she makes a representation to one person while intending or having reason to expect that it will be repeated to and acted upon by the plaintiff or someone in the class of persons of which plaintiff is a member….it is not necessary that the maker of the misrepresentation have the particular person in mind. It is enough that it is intended to be repeated to a particular class of persons." <u>Shapiro v. Sutherland</u> 64 Cal.App.4th 1534, 1548 (1998), internal citations omitted; <u>see also</u> <u>Geernaert v. Mitchell</u> (1995) 31 Cal.App.4th 601, 605—606 [37 Cal.Rptr.2d 483].)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### F.  Plaintiff Has Adequately Plead Violations of California's Consumer Fraud Laws

The FAL prohibits "any person, firm, corporation or association . . . from induc[ing] the public to enter into any obligation" by making "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The FAL is incredibly broad and undoubtedly applies to the media Defendants. Liability under the FAL attaches to false advertisements that appear "in any newspaper or other publication, *or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever*…" Cal. Bus. & Prof. § 17500.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Violations of other laws satisfy the "unlawful" prong and thus may be treated as unfair competition pursuant to the UCL. Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (Cal. 2002). Thus, "a violation of the CLRA or FAL is, by definition, also a violation of the UCL." Id. at 950.

Plaintiff's complaint plausibly alleges that Defendants knowingly and intentionally "concealed from Plaintiff and the other Class members that the Products cannot provide the advertised weight-loss benefits while obtaining money from Plaintiff; misrepresenting the nature of the Products and the Products' effectiveness at providing the weightloss benefits; By engaging in the conduct giving rise to the claims asserted in this complaint.

### G.    The Media Defendants Are Jointly Liable

As the California Supreme Court recently ruled in DKN Holdings LLC v. Faerber the general rule is that the liability of two or more persons who jointly engage in the commission of a tort is joint and several, and gives the same rights of action to the person injured as a joint and several contract; consequently, a judgment recovered against one of two joint tortfeasors, remaining unsatisfied, is no bar to an action against the other for the same tort.  Id., 61 Cal. 4th 813, 815; accord Asahi Kasei Parma Corp, (2013) 169

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Cal.Rptr.3d 686, 706, 222Cal.App.4th 945, 966 (All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered); Greystone Homes, Inc v. Midtec, Inc, 168 Cal.App.4th 1194, 1208 (2008)   ("Where multiple tortfeasors are responsible for an indivisible injury suffered by the plaintiff, each tortfeasor is jointly and severally liable to the plaintiff for those damages and thus may be held individually liable to the injured plaintiff for the entirety of such damages.")

This same legal premise with regard also applies to federal courts in California, see United Alloys, Inc. v. Baker, 797 F.Supp.2d 974, (C.D. Cal. 2011) (where two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm); accord Res-Care Inc. v. Roto-Rooter Service Co., 753 F.Supp.2d 970, 981 (N.D. Cal. 2010) ("Where multiple tortfeasors are responsible for an indivisible injury suffered by the plaintiff, each tortfeasor is jointly and severally liable to the plaintiff for those damages and thus may be held individually liable to the injured plaintiff for the entirety of such damages").

As described in Section above, each of the Media Defendants and Manufacturing Defendants colluded and conspired to manufacture, market and sell their weight loss Products through the direct promotional involvement of Dr. Oz.  As a result, they can each be held liable on the claims of Plaintiff and other members of the Class.

## V.  CONCLUSION

On the basis of the foregoing and the declaration of counsel and Plaintiff's Evidentiary Objections, this Court should deny Defendants' Motion to Dismiss. However, if the Court is inclined to grant all or part of the Motion, Plaintiff respectfully requests leave to amend.

Dated: April 18, 2016                                    Respectfully submitted,


                                                         /s/  Ronald A. Marron

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**THE LAW OFFICES OF
RONALD A. MARRON**

Ronald A. Marron
**ron@consumersadvocates.com**
Skye Resendes
**skye@consumersadvocates.com**
Michael T. Houchin
**mike@consumersadvocates.com**
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile:  (619) 564-6665

**Counsel for Plaintiff and the
Proposed Class**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

2:16-cv-00717