UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-00189-JGB (SPx)** | Date | May 12, 2016 |
| Title | *Veda Woodard v. Lee Labrada et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff: | Attorney(s) Present for Defendants |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING IN PART and DENYING IN PART Harpo Productions, Inc., Dr. Mehmet C. Oz, Zoco Productions, LLC, and Sony Pictures Television, Inc.'s Motion to Dismiss WITH LEAVE TO AMEND (Doc. No. 45); (2) DEFERRING CONSIDERATION of Harpo Productions, Inc., Dr. Mehmet C. Oz, Zoco Productions, LLC, and Sony Pictures Television, Inc.'s Motion to Strike (Doc. No. 49); and (3) GRANTING IN PART Plaintiff Veda Woodard's Motion to Defer Consideration of Defendants' Motions to Strike and Dismiss (Doc. No. 60) (IN CHAMBERS)

     Before the Court is: (1) a Motion to Dismiss filed by defendants Harpo Productions, Inc. ("Harpo"), Dr. Mehmet C. Oz ("Dr. Oz"), Zoco Productions, LLC ("Zoco"), and Sony Pictures Television, Inc. ("Sony") (collectively, the "Media Defendants") (Doc. No. 45); (2) a Motion to Strike filed by the Media Defendants (Doc. No. 49); and (3) a Motion to Defer Consideration of Defendants' Motions to Strike and Dismiss filed by Plaintiff Veda Woodard ("Plaintiff") (Doc. No. 60). The Court finds all three motions appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers timely filed in support of and in opposition to the motions, the Court: (1) GRANTS IN PART and DENIES IN PART the Media Defendants' Motion to Dismiss WITH LEAVE TO AMEND; (2) DEFERS CONSIDERATION of the Media Defendants' Motion to Strike; and (3) GRANTS IN PART Plaintiff's Motion to Defer Consideration of Defendants' Motions to Strike and Dismiss. The May 16, 2016 hearing set for these matters is VACATED.

## I. BACKGROUND

On February 2, 2016, Plaintiff filed a putative class action Complaint against Lee Labrada, Labrada Bodybuilding Nutrition, Inc., Labrada Nutritional Systems, Inc., Entertainment Media Ventures, Inc., Naturex, Inc., Interhealth Nutraceuticals Inc. (the "Manufacturing Defendants"), and the Media Defendants (collectively, "Defendants"). (Doc. No. 1.) The Complaint asserts eight claims arising from allegations that the Media Defendants have misrepresented the weight loss benefits of various weight loss supplement products manufactured by the Manufacturing Defendants. (Id.) In the Complaint, Plaintiff purports to represent a class of purchasers of these products. (Id.)

On April 4, 2016, the Media Defendants filed their Motion to Dismiss, a declaration by William C. Haggerty, and nine supporting exhibits. ("MTD," Doc. No. 45.) On April 18 and 19, 2016, Plaintiff filed an Opposition to the Media Defendants' Motion to Dismiss and objections to the evidence submitted by the Media Defendants ("Pl. Objections").[1] (Doc. No. 61, 62-1.) On April 25, 2016, the Media Defendants filed a Reply and a response to Plaintiff's evidentiary objections. (Doc. No. 72, 72-1.)

On April 11, 2016, the Media Defendants filed their Motion to Strike. ("MTS," Doc. No. 49.) On April 19, 2016, Plaintiff filed an Opposition to the Media Defendants' Motion to Strike. (Doc. No. 62.) On April 25, 2016, the Media Defendants filed a Reply.[2] (Doc. No. 73.)

On April 18, 2016, Plaintiff filed her Motion to Defer Consideration of Defendants' Motions to Strike and Dismiss. ("MTDC," Doc. No. 60, 60-1.) In support, Plaintiff filed a declaration by her counsel Michael T. Houchin and forty-one exhibits.[3] (Doc. No. 68.) On April 25, 2016, the Media Defendants filed an Opposition to Plaintiff's Motion and objections to the evidence submitted by Plaintiff. (Doc. No. 71, 73-1.) On May 2, 2016, Plaintiff filed a Reply, a supplemental declaration by Houchin, five supplemental exhibits, and objections to the Media Defendants' evidence. (Doc. No. 76.)

---

[1] On April 27, 2016, Plaintiff re-filed her Opposition to correct certain technical errors. (Doc. No. 74.)

[2] On May 3, 2016, the Media Defendants filed a declaration by Cathy Denise Beaudoin and nine accompanying exhibits in support of their Motions to Dismiss and Strike. (Doc. No. 77.) On May 4, 2016, Plaintiff filed objections to these documents. (Doc. No. 78.) The Court declines to consider these documents when assessing the Media Defendants' Motions because the documents were not timely filed in connection with their motion or reply papers, in violation of Local Rule 7-11.

[3] Plaintiff originally filed Houchin's declaration and forty-one exhibits on April 18, 2016, but refiled these documents on April 21, 2016 to correct several technical errors. (Doc. No. 68.)

## II. FACTUAL ALLEGATIONS AND CLAIMS IN THE COMPLAINT

The Complaint asserts claims relating to Defendants' misrepresentations concerning weight loss products produced by the Manufacturing Defendants. These products purportedly contain active ingredients that are derived from plant materials, fruit extracts, and other herbal ingredients. (Compl. ¶ 5.) These products include the "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER," the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER," the "Labrada Raspberry Ketones METABOLIC ENHANCER," and the "Labrada FAT BUSTER FAT LOSS AID" (collectively, the "Products"). (Id. ¶ 3.) Plaintiff claims to have purchased the Products on several occasions from June to December 2013 in several Vitamin Shoppe stores located in Murrieta, California and in Temecula, California. (Id. ¶ 24.)

The Complaint's claims against the Media Defendants arise from allegations Dr. Oz fraudulently promoted and marketed the weight loss benefits of the Products on his daytime television show "The Doctor Oz Show." Plaintiff alleges Dr. Oz was "paid by Defendants Labrada, Interhealth, and/or Naturex in exchange for promoting Green Coffee Bean Extract, Garcinia Cambogia, and Raspberry Ketones on The Dr. Oz Show." (Id. ¶ 90.) Plaintiff alleges Zoco, Harpo, and Sony produce The Doctor Oz Show and that Sony distributes the show. (Id. ¶¶ 32-34.) The Complaint claims Dr. Oz, Zoco, Harpo, and Sony are jointly liable for Dr. Oz's misrepresentations on The Doctor Oz Show because they have formed a joint venture and civil conspiracy to fraudulently promote the Products on the show and jointly profit from such promotions. (Id. ¶¶ 132-33, 137-38.) The Complaint also claims each of these defendants acted as each other's agents and aided and abetted one another during the course of their joint venture. (Id. ¶¶ 134-35, 140-141.) The Court summarizes the Complaint's allegations as to Dr. Oz's misrepresentations below.

The Complaint alleges at length that Dr. Oz has fraudulently promoted the Products on The Doctor Oz Show and that Dr. Oz has misrepresented his affiliation with products he endorses, but identifies only three specific misrepresentations by Dr. Oz on the show. First, the Complaint alleges Dr. Oz promoted the Green Coffee Bean Extract in an episode of his show "on at least one occasion in or around 2012." (Id. ¶ 97.) The Complaint quotes a portion of the show where Dr. Oz claimed a scientific study had found consumers of "green coffee extract" "lost an astounding amount of fat and weight." (Id.) The Complaint claims Dr. Oz's statements were false and misleading and that the scientific study referenced by Dr. Oz was retracted because its authors found the data on which it was based to have been falsified. (Id. ¶¶ 98-99.)

Second, the Complaint alleges Dr. Oz promoted the Garcinia Cambogia Extract in an episode of his show "on at least one occasion in or around 2012." (Id. ¶ 101.) The Complaint quotes a portion of the show where Dr. Oz repeatedly claimed new scientific research had shown garcinia cambogia is a "fat buster." (Id.) The Complaint claims Dr. Oz's statements were false and misleading. (Id. ¶¶ 101-102.)

Third, the Complaint alleges Dr. Oz promoted the Labrada Brand Raspberry Ketones in an episode of his show "on at least one occasion in or around 2012." (Id. ¶ 104.) The Complaint quotes a portion of the show where Dr. Oz repeatedly claimed "raspberry ketones" burned body

fat. (Id.) The Complaint claims Dr. Oz's statements were false and misleading. (Id. ¶¶ 105-106.)

The Complaint alleges there is no scientific evidence that the products endorsed by Dr. Oz have weight loss benefits. (Id. ¶¶ 116-24.) The Complaint claims Dr. Oz knew or should have known his endorsements of these products were patently false, misleading, or based on unsound scientific research, but nonetheless represented to consumers that he was providing an objective medical opinion about the products he endorsed.[4] (Id. ¶ 11.)

Based on the foregoing allegations, the Complaint asserts eight claims: (1) fraud and deceit; (2) negligent misrepresentation; (3) unjust enrichment; (4) violation of the California Unfair Competition Law ("UCL"); (5) violation of the California Legal Remedies Act ("CLRA"); (6) violation of the California False Advertising Law ("FAL"); (7) breach of express warranty; and (8) breach of the implied warranty of merchantability. (Id. ¶¶ 156-254.)

### III. DISCUSSION

**A.    The Media Defendants' Motion to Dismiss**

The Media Defendants argue Plaintiff's Complaint should be dismissed on three grounds. First, the Media Defendants argue Plaintiff's claims are untimely. (MTD at 7-10.) Second, the Media Defendants argue Plaintiff has not alleged sufficient facts showing Zoco, Harpo, and Sony are vicariously liable for Dr. Oz's conduct. (Id. at 20-24.) Third, the Media Defendants contend Plaintiff has not alleged sufficient facts in support of each of her claims. (Id. at 10-20.) The Court addresses each of these arguments below.

**1.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

---

[4] The Complaint at times also alleges Dr. Oz "has mislead [sic] the public about his sponsorships and affiliations with those in the supplement industry." (Compl. ¶ 90.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rule 9(b) presents heightened pleading requirements for plaintiffs alleging fraud or mistake. In alleging fraud or mistake, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Failure to satisfy this heightened pleading requirement can result in dismissal of the claim. Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In general, the plaintiff's allegations of fraud or mistake must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Id. at 1106. This heightened pleading standard requires the plaintiff to allege fraud or mistake by detailing "the who, what, when, where, and how" of the misconduct charged. Id. at 1106-07. In other words, the plaintiff must specify the time, place, and content of the alleged fraudulent or mistaken misconduct. See id.

Although the scope of review on a Rule 12(b)(6) motion to dismiss is limited to the contents of the complaint, the Court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). Under the incorporation by reference doctrine, the Court may consider documents not attached to the pleading if: (1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; and (2) if no party questions their authenticity. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

### 2. Timeliness of Plaintiff's Claims

The Media Defendants argue the Complaint's claims are untimely. (MTD at 7-10.) The Media Defendants note that under California law, claims for negligent misrepresentation, breach of express warranty, and breach of the implied warranty of merchantability are subject to a two-year statute of limitations. (Id.) In addition, the Media Defendants contend claims for fraud, unjust enrichment, and violations of the CLRA are subject to a three-year statute of limitations.

(Id.) Third, the Media Defendants note claims under the UCL and the FAL are subject to a four-year statute of limitations. (Id.) The Media Defendants note that the Complaint's claims against them are based on statements made by Dr. Oz in television broadcasts in 2012. (See id. at 7-8.) Because Plaintiff filed the Complaint on February 2, 2016, the Media Defendants contend Plaintiff's claims are untimely. (Id.)

The Media Defendants' arguments are meritless. The Ninth Circuit has held that "[a] claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (citations omitted). Here, it is not apparent from the face of the Complaint that Plaintiff's claims are untimely. The Complaint alleges the statements by Dr. Oz that give rise to its claims were made in television broadcasts "in or around 2012."[5] (Compl. ¶¶ 97, 101, 104.) The Complaint leaves it ambiguous as to when Dr. Oz actually made these statements and how close in time this date was to 2012. Consequently, construed in the light most favorable to Plaintiff, it is possible Dr. Oz made the alleged statements within the limitations period applicable to each of Plaintiff's claims. See Doe, 419 F.3d at 1062 (holding facts in a pleading must be construed in the light most favorable to the non-moving party on a motion to dismiss). Accordingly, the Court DENIES the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff's claims are untimely.

### 3. Sufficiency of Plaintiff's Allegations as to Vicarious Liability

#### a. The Media Defendants' Contentions

The Media Defendants contend Plaintiff has not alleged sufficient facts showing Zoco, Harpo, and Sony are vicariously liable for Dr. Oz's statements on his television show. (MTD at 20-24.) The Media Defendants note Plaintiff seeks to hold Zoco, Harpo, and Sony responsible for Dr. Oz's conduct through four theories of vicarious liability: (1) joint venture; (2) civil conspiracy; (3) an agency relationship; and (4) aiding and abetting liability. (Id.) The Media Defendants argue the Complaint alleges no facts supporting any of these theories of vicarious liability. (Id.)

#### b. Applicable Law

The elements of a civil conspiracy are: "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from an act done in furtherance of the common design."

---

[5] The Media Defendants submit purported transcripts of these broadcasts, dated October 23, 2012, April 10, 2012, and January 17, 2012. (See Haggerty Decl., Ex. 4, 5, 6.) However, as they constitute matters outside of the pleadings, the Court cannot consider them when assessing the Media Defendants' Motion to Dismiss. In particular, the Court cannot consider them as documents incorporated by reference in the Complaint because Plaintiff disputes their authenticity. (See Pl. Objections at 2-3.) See also Knievel, 393 F.3d at 1076 (holding that courts may only consider documents outside of the pleadings under incorporation by reference doctrine if no party contests their authenticity).

Thompson v. California Fair Plan Assn., 221 Cal. App. 3d 760, 767 (1990). Civil conspiracy is not a separate and distinct cause of action under California law. Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1228 (9th Cir. 1997). Instead, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994). Courts apply Rule 9(b)'s heightened pleading standard to claims of civil conspiracy where the object of the conspiracy is to commit fraud. See Wasco Prods., Inc., v. Southwall Techs., Inc., 435 F.3d 989, 990-91 (9th Cir. 2006).

Likewise, courts apply the joint venture doctrine to hold each joint venturer liable in tort and contract when three elements are satisfied: (1) the members must have joint control over the venture (even though they may delegate it); (2) the members must share the profits of the undertaking; and (3) the members must each have an ownership interest in the enterprise. Jeld–Wen. Inc. v. Superior Court, 131 Cal. App. 4th 853, 872 (2005).

An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 410-11 (2007). Once an agency relationship is established, the principal can be held liable for the acts of its agent. Von Beltz v. Stuntman, Inc., 207 Cal. App. 3d 1467, 1488 (1989).

Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. Saunders v. Superior Court, 27 Cal. App. 4th 832, 846 (1994).

      c.     Analysis

Plaintiff has not alleged sufficient facts showing Zoco, Harpo, and Sony engaged in a joint venture or civil conspiracy with Dr. Oz to fraudulently promote the Products. Moreover, Plaintiff has not alleged facts showing Zoco, Harpo, and Sony are liable for Dr. Oz's conduct through an agency relationship or through aiding and abetting Dr. Oz. Indeed, the Complaint's only factual allegations with respect to Zoco, Harpo, and Sony are that these defendants help produce or distribute Dr. Oz's show. (Compl. ¶¶ 32-34.) Plaintiff alleges no facts indicating Zoco, Harpo, and Sony participated in a joint venture or civil conspiracy with Dr. Oz or were in any way involved in furthering Dr. Oz's alleged misconduct.

Accordingly, the Court GRANTS the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff fails to plead sufficient facts supporting her claims against Zoco, Harpo, and Sony.

### 4. Sufficiency of Plaintiff's Allegations in Support of Her Claims

The Media Defendants contend Plaintiff has not presented sufficient allegations in support of each of her claims against Dr. Oz, under Rules 9 and 12(b)(6). (MTD at 10-20.) The Court addresses each of Plaintiff's claims below.

#### a. Fraud and Negligent Misrepresentation

To allege a claim for fraud, a plaintiff must allege: (1) a misrepresentation, (2) knowledge of its falsity, (3) intent to defraud or to induce reliance, (4) justifiable reliance, and (5) resulting damage. Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997). Claims for fraud are subject to Rule 9(b)'s heightened pleading requirements. See Fed. R. Civ. P. 9(b).

To allege a claim for negligent misrepresentation, a plaintiff must plead: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc., 196 Cal. App. 4th 1559, 1573 (2011). It is unclear whether negligent misrepresentation claims are subject to Rule 9(b)'s heightened pleading requirements. See Howard v. First Horizon Home Loan Corp., No. CV 12–05735-JST, 2013 WL 6174920, at *5 (N.D. Cal. Nov. 25, 2013) (noting that the Ninth Circuit "has not yet decided" whether Rule 9(b) applies to negligent misrepresentation claims and holding it does not).

Here, Plaintiff has pleaded sufficient facts in support of her fraud and negligent misrepresentation claims against the Media Defendants. Plaintiff has identified various statements by Dr. Oz promoting several weight loss supplements and claims both that these statements were false and that Dr. Oz either knew of their falsity or had no reasonable ground for believing their truth. (Compl. ¶¶ 97, 101, 104, 176.) Moreover, Plaintiff alleges Dr. Oz made these statements in order induce consumers to purchase the supplements and that Plaintiff relied on these statements when purchasing the supplements. (Id. ¶¶ 178, 182, 184.) As a result, Plaintiff claims she incurred damages by purchasing the supplements even though they were "worthless." (Id. ¶ 187.)

Accordingly, the Court DENIES the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff fails to plead sufficient facts supporting her fraud and negligent misrepresentation claims.

#### b. Unjust Enrichment and Quasi-Contract

California courts have not conclusively decided whether California law recognizes a cause of action for unjust enrichment. See Paskenta Band of Nomlaki Indians v. Crosby, No. 15-00538, 2015 WL 4879650, at *6 (E.D. Cal. Aug. 14, 2015) (recognizing split in California courts and applying Ninth Circuit's interpretation of California law); City of L.A. v. Bank of Am. Corp., No. 13-9046, 2014 WL 2770083, at *12 (C.D. Cal. June 12, 2014) (recognizing differing treatments of unjust enrichment claims). However, the Ninth Circuit in Astiana v. Hain Celestial Group, Inc., 783 F.3d 753 (9th Cir. 2015), recently interpreted California law and held that while

"there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution . . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." Id. at 762 (quotation marks and citations omitted). Hence, the Ninth Circuit permitted a plaintiff to assert a quasi-contract claim based on "the theory . . . that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" Id. (internal quotation marks and citation omitted)

Here, Plaintiff alleges she purchased weight loss supplements because she relied on Dr. Oz's misrepresentations as to their effectiveness. However, Plaintiff has not alleged any facts indicating Dr. Oz or any of the Media Defendants unjustly received a benefit for which they must make restitution to Plaintiff. Indeed, while Plaintiff alleges Dr. Oz's misrepresentations caused her to purchase the weight loss supplements, she alleges she purchased these supplements from the manufacturers of these products and not directly from Dr. Oz or any of the other Media Defendants.

Accordingly, the Court GRANTS the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff fails to plead sufficient facts supporting her unjust enrichment and quasi-contract claim.

### c. Violation of the CLRA

California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770. The term "transaction," as it appears in the CLRA, is defined by California Civil Code section 1761(e) ("Section 1761(e)") as an "agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." Cal. Civ. Code § 1761(e).

The Media Defendants argue Plaintiff has not stated a claim under the CLRA because Plaintiff does not allege any facts showing the Media Defendants were "engaged in transactions for the sale or lease of goods with consumers," for purposes of California Civil Code section 1770. (MTD at 17.) Plaintiff offers no response to this argument.

Plaintiff's CLRA claim is subject to dismissal. As the Media Defendants argue, the Complaint does not contain any allegations that the Media Defendants engaged in wrongful conduct during the course of a "transaction" with Plaintiff, as the term is defined in Section 1761(e). Rather, Plaintiff's claims against the Media Defendants are based wholly on representations made by Dr. Oz on his television show.

Accordingly, the Court GRANTS the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff fails to plead sufficient facts supporting her CLRA claim.

### d. Violation of the FAL and UCL

#### i. Applicable Law

California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]'" Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1023-24 (N.D. Cal. 2011) (internal citation omitted). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. . . . Consequently, even a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under this section." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (internal citations, quotations, and alterations omitted).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prongs. Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007)). The UCL "requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of economic injury." Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 323 (2011); see also Cal. Bus. & Prof. Code § 17204. Under the UCL, "[i]f a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." Kwikset Corp., 51 Cal.4th at 325.

To state a claim under the FAL and UCL, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer. See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); see also Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'").

"A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" Davis, 691 F.3d at 1161-62 (quoting Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663 (2006)). "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)).

### ii. The Media Defendants' Contentions

The Media Defendants argue Plaintiff's FAL and UCL claims should be dismissed on three grounds.[6] First, the Media Defendants argue Plaintiff has not stated a claim under the UCL because she has not alleged she suffered a cognizable "injury in fact." (MTD at 17.) Second, the Media Defendants argue Plaintiff has not stated a claim under the FAL and UCL because she does not identify any specific representations by the Media Defendants "that the Labrada Products had any characteristic that they do not have, or are of a standard of quality they are not." (Id.) Third, the Media Defendants argue reasonable consumers would understand the statements by Dr. Oz referenced in the Complaint as mere "opinion and hyperbole" and would not view them as statements of fact.[7] (Id. at 18-19.)

### iii. Analysis

All three of the Media Defendants' arguments fail. First, Plaintiff has alleged a cognizable "injury in fact" for purposes of the UCL because she has alleged Dr. Oz's misrepresentations induced her to buy "worthless" weight loss supplements. (Compl. ¶ 187.) Second, Plaintiff has identified specific statements by Dr. Oz explicitly endorsing the weight loss benefits of the Products and has alleged these statements had no scientific basis. (See id. ¶¶ 97, 101, 104, 116-24.) Third, the statements by Dr. Oz referenced in the Complaint did not merely constitute statements of opinion. Rather, the Complaint alleges Dr. Oz stated scientific studies had shown several of the Products eliminated body fat and that these statements were scientifically unfounded. (See id.)

---

[6] The Media Defendants also briefly suggest the statements by Dr. Oz referenced in the Complaint do not constitute "commercial speech" governed by California's consumer protection laws. (MTD at 18.) In support, the Media Defendants argue Dr. Oz did not propose a commercial transaction in any of his challenged statements and repeatedly told viewers of his television show that he did not promote or sell any of the Products. (Id.) This argument fails because the Complaint alleges Dr. Oz informed viewers of his show that specific brands of commercial weight loss products were effective. (See Compl. ¶¶ 97, 101, 104.) Moreover, the Complaint alleges Dr. Oz was "paid by Defendants Labrada, Interhealth, and/or Naturex in exchange for promoting Green Coffee Bean Extract, Garcinia Cambogia, and Raspberry Ketones on The Dr. Oz Show." (Id. ¶ 90.) Hence, the Complaint sufficiently alleges Dr. Oz's statements were "commercial speech" subject to regulation by California consumer protection laws. See Kasky v. Nike, Inc., 27 Cal. 4th 939, 960, as modified (2002) ("[C]ommercial speech generally or typically is directed to an audience of persons who may be influenced by that speech to engage in a commercial transaction with the speaker or the person on whose behalf the speaker is acting.").

[7] The Media Defendants also cite evidence outside of the pleadings indicating each episode of Dr. Oz's show contained a disclaimer that the show "is only intended to provide general information and is not specific medical advice." (MTD at 19 (citing Haggerty Decl., Ex. 7, 8, 9).) The Court cannot consider such evidence on a motion to dismiss under Rule 12(b)(6). See Ritchie, 342 F.3d at 907-08.

Accordingly, the Court DENIES the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff fails to plead sufficient facts supporting her UCL and FAL claims.

### e.   Breach of Express Warranty and the Implied Warranty of Merchantability

The Media Defendants argue Plaintiff's claims for breach of express warranty and the implied warranty of merchantability should be dismissed because the Complaint does not allege the Media Defendants sold Plaintiff a product containing a warranty.  (MTD at 19-20.)

"As a general rule, privity of contract is a required element of [a] . . . breach of warranty cause of action."  Fieldstone Co. v. Briggs Plumbing Products, Inc., 54 Cal. App. 4th 357, 369 (1997) (citing Burr v. Sherwin Williams Co., 42 Cal.2d 682, 695 (1954) ("The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale.")).  There are several exceptions to the privity requirement, including "cases involving foodstuffs" or in cases in which "the purchaser relied on representations made by the manufacturer in labels or advertising material."  Burr, 42 Cal.2d at 696.  Thus, to state a claim for breach of express or implied warranty, a plaintiff must allege privity or one of the recognized exceptions to the general rule.  Margarita Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575, 580 (N.D. Cal. 1999) (dismissing warranty claim based on plaintiff's failure to allege privity or a recognized exception).

Here, Plaintiff does not allege she purchased any product from or had privity of contract with any of the Media Defendants.  Accordingly, the Court GRANTS the Media Defendants' Motion to Dismiss insofar as it contends Plaintiff fails to plead sufficient facts supporting her breach of express warranty and implied warranty of merchantability claims.

### 5.   Leave to Amend

Federal Rule of Civil Procedure 15 provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court, however, may in its discretion deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (internal citation and quotation marks omitted).

Here, Plaintiff has not engaged in undue delay, manifested bad faith, or had any prior opportunities to amend her Complaint, nor would amendment cause undue prejudice to the defendants in this action.  Moreover, amendment of Plaintiff's claims to include further supporting factual allegations would not be futile.  Hence, the Court GRANTS Plaintiff leave to amend.

Accordingly, the Court GRANTS IN PART and DENIES IN PART the Media Defendants' Motion to Dismiss WITH LEAVE TO AMEND, as follows:

      a.      Plaintiff's claims against Zoco, Harpo, and Sony are DISMISSED;

      b.      Plaintiff's claims against Dr. Oz for unjust enrichment and quasi-contract, violation of the CLRA, breach of express warranty, and breach of the implied warranty of merchantability are DISMISSED; and

      c.      Plaintiff's claims against Dr. Oz for fraud and deceit, negligent misrepresentation, and violations of the UCL and FAL remain with the Court.

**B.    The Media Defendants' Motion to Strike and Plaintiff's Motion to Defer Consideration of Defendants' Motions to Strike and Dismiss**

In their Motion to Strike, the Media Defendants seek to strike the Complaint's claims pursuant to California's anti-SLAPP statute (i.e. California Civil Code section 425.16). (See MTS at 3-9.) In her Motion to Defer Consideration, Plaintiff requests that the Court defer ruling on the Media Defendants' Motion to Strike and grant Plaintiff additional time to conduct discovery, pursuant to Rule 56(d).[8] (MTDC at 3-4.) The Court assesses the parties' contentions below.

    **1.    California Civil Procedure Code section 425.16**

California Civil Procedure Code section 425.16 ("Section 425.16") permits a defendant to bring an anti-SLAPP motion in federal court against certain state law claims asserted by the plaintiff. This statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001). It mandates that courts consider first, "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity," and second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

With respect to the second requirement mandated by Section 425.16, the Ninth Circuit has held that in order to establish the probability of prevailing, "the plaintiff must show that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to

---

[8] In her Motion to Defer Consideration, Plaintiff also requests that the Court continue the hearing on the Media Defendants' Motion to Dismiss because it relies on matters outside of the pleadings and should be converted into a motion for summary judgment. (MTDC at 2-3.) As noted previously, the Court declines to consider the extrinsic evidence introduced by the Media Defendants in support of their Motion to Dismiss and rules on the Motion without addressing such evidence. Hence, the Court DENIES Plaintiff's Motion to Defer Consideration, to the extent it requests that the Motion to Dismiss be converted into a motion for summary judgment and that the hearing set for it be continued.

sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 648 (9th Cir. 2009).

Section 425.16(g) "provides that the filing of an anti-SLAPP motion automatically stays all further discovery until the court rules on the motion." Metabolife, 264 F.3d at 846. In short, the statute "create[s] a default rule that allows the defendant served with a complaint to immediately put the plaintiff to his or her proof before the plaintiff can conduct discovery." Id. (quoting Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 980 (C.D. Cal. 1999)). However, when an anti-SLAPP motion is filed in federal court, Rule 56 conflicts with the statute's provision limiting discovery.

### 2. Federal Rule of Civil Procedure 56(d)

Contrary to Section 425.16(g), Rule 56(d)(2) permits a plaintiff time to "obtain affidavits or declarations to take discovery." Thus, while Section 425.16 "was designed to allow a party defending a SLAPP action to resolve the matter as early as possible, before extensive discovery is permitted," Rule 56(d) "was designed to ensure that a nonmoving party will not be forced to defend a summary judgment motion without having an opportunity to marshal supporting evidence." Rogers, 57 F. Supp. 2d at 981.

In resolving the conflict between Section 425.16 and Rule 56(d), the Ninth Circuit has concluded that "[b]ecause the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court." Metabolife, 264 F.3d at 846. Thus, in the context of an anti-SLAPP motion filed in federal court, Rule 56(d) applies.

In reviewing Rule 56(d) requests, courts "have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion." California ex rel. California Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). A Rule 56(d) continuance "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773-74 (9th Cir. 2003). In order to prevail on a Rule 56(d) motion for discovery, the Ninth Circuit requires that the moving party show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008).

### 3. The Parties' Contentions

In their Motion to Strike, the Media Defendants argue Plaintiff's claims rest on Dr. Oz's statements on three television broadcasts of The Dr. Oz Show. (MTS at 3-4.) The Media Defendants contend these statements constitute protected activity and that Plaintiff's claims consequently arise from their exercise of their right of free speech. (Id. at 6-8.) Furthermore, the Media Defendants argue Plaintiff cannot establish a probability of prevailing on the merits of her

claims. (Id. at 8.) Hence, the Media Defendants argue Plaintiff's claims should be stricken pursuant to Section 425.16. (Id. at 9.)

As part of her Motion to Defer Consideration under Rule 56(d), Plaintiff presents a declaration by her counsel Michael T. Houchin, which requests that the Court defer ruling on the Media Defendants' Motion to Strike and instead allow her to conduct discovery as to the following issues: the "Media Defendants' sponsorship agreements with the Manufacturing Defendants, financial involvement of the Media Defendants with the Manufacturing Defendants, and discrepancies within the provided transcripts of the videos Defendants attempt to introduce in support of their position." (Houchin Decl. ¶ 62.) Plaintiff argues such information would allow her to prove that Dr. Oz's statements on his television show constitute misleading commercial speech that is not protected under Section 425.16(g). (MTS Opp. at 1-2, 22-24; MTDC at 3-4.)

The Media Defendants respond that Plaintiff is not entitled to discovery under Rule 56(d) because her claims are deficient as a matter of law. First, the Media Defendants re-assert each of the grounds for dismissal raised in their Motion to Dismiss. (MTDC Opp. at 10-11.) Second, the Media Defendants argue Plaintiff's UCL and FAL claims fail as a matter of law because Dr. Oz's statements on his show constitute noncommercial speech and that only commercial speech can support claims under the UCL and FAL. (Id. at 9-10.) In particular, the Media Defendants note "[t]he complained of speech attributed to The Dr. Oz Show (and by extension the Media Defendants) is not about their own product or a competitor's business operations, goods or services, nor does it suggest an exchange of money or suggest that a viewer purchase anything, let alone a specific product." (Id.)

### 4. Analysis

The Court concludes Plaintiff is entitled to discovery under Rule 56(d). Here, Plaintiff has presented an affidavit by Houchin identifying the information she needs to oppose judgment in the defendants' favor. See Family Home & Fin. Ctr., Inc., 525 F.3d at 827.

Moreover, the Court is unpersuaded by the Media Defendants' arguments that Plaintiffs' claims are deficient as a matter of law. First, as noted previously, the Court rejects the Media Defendants' arguments in their Motion to Dismiss as to Plaintiff's fraud, negligent misrepresentation, FAL, and UCL claims. Second, Defendants' contention at this stage of the proceedings that Dr. Oz's statements constitute noncommercial speech is not a proper ground for denying Plaintiff's request for discovery. Indeed, Plaintiff's counsel's declaration itself expressly states Plaintiff seeks discovery as to whether the Media Defendants have any sponsorship agreements with manufacturers of the weight loss supplements promoted on Dr. Oz's show. (Houchin Decl. ¶ 62.) In other words, Plaintiff seeks discovery as to the very issue of whether the Media Defendants have a financial interest with respect to the products endorsed on The Dr. Oz Show and whether Dr. Oz's promotions of the products can be considered commercial speech.

The Court recognizes that "the mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under [Rule 56(d)]." Neely v. St. Paul Fire & Marine

Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978). However, Plaintiff has identified relevant information that she seeks to discover. Moreover, Plaintiff requests discovery at an early juncture of the proceedings before any opportunity to conduct discovery and there is no showing she has not acted diligently. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (holding "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").

Accordingly, the Court GRANTS Plaintiff's Motion to Defer Consideration and DEFERS CONSIDERATION of the Media Defendants' Motion to Strike until after the close of discovery.[9]

### IV. CONCLUSION

For the foregoing reasons, the Court: (1) GRANTS IN PART and DENIES IN PART the Media Defendants' Motion to Dismiss WITH LEAVE TO AMEND; (2) DEFERS CONSIDERATION of the Media Defendants' Motion to Strike until after the close of discovery; and (3) GRANTS IN PART Plaintiff's Motion to Defer Consideration of Defendants' Motions to Strike and Dismiss. Plaintiff shall file an amended complaint, if any, within 21 days of this order.

The May 16, 2016 hearing is VACATED.

**IT IS SO ORDERED.**

---

[9] Plaintiff and the Media Defendants both request attorneys' fees pursuant to California's anti-SLAPP statute. (MTS at 8-9; MTS Opp. at 26.) Because the Court defers ruling on the Media Defendants' Motion to Strike, the Court does not address the parties' requests for attorneys' fees at this time.