**LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff*
*and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEDA WOODARD, TERESA RIZZO-MARINO, and DIANE MORRISON on behalf of themselves, all others similarly situated, and the general public, ) ) ) ) | Case No.: 5:16-cv-00189-JGB-SP |
| ) | **<u>CLASS ACTION</u>** |
| Plaintiffs, ) ) | **FIRST AMENDED COMPLAINT** |
| v. ) ) | **Demand for Jury Trial** |
| LEE LABRADA; LABRADA BODYBUILDING NUTRITION, INC.; LABRADA NUTRITIONAL SYSTEMS, INC.; DR. MEHMET C. OZ, M.D.; ENTERTAINMENT MEDIA VENTURES, INC. d/b/a OZ MEDIA; ZOCO PRODUCTIONS, LLC; HARPO PRODUCTIONS, INC; SONY PICTURES TELEVISION, INC; NATUREX, INC.; and INTERHEALTH NUTRACEUTICALS, INC.; ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

i
FIRST AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

JURISDICTION AND VENUE ................................................................- 1 -

NATURE OF THE ACTION ...................................................................- 1 -

THE PARTIES .........................................................................................- 12 -

A.   The Plaintiffs and Proposed Class Representatives .........................- 12 -

   i.   Plaintiff Veda Woodard...............................................................- 12 -

   ii.   Plaintiff Teresa Rizzo-Marino .....................................................- 13 -

   iii.  Plaintiff Diane Morrison...............................................................- 14 -

B.   The "Labrada Defendants" ..............................................................- 15 -

   iv.  Defendant Lee Labrada .................................................................- 15 -

   v.   Defendant Labrada Bodybuilding Nutrition, Inc........................- 16 -

   vi.  Defendant Labrada Nutritional Systems, Inc. .............................- 16 -

   vii. The Labrada Joint Enterprise........................................................- 17 -

C.   Media Defendants .............................................................................- 17 -

   viii. Defendant Dr. Mehmet C. Oz, M.D.............................................- 17 -

   ix.  Defendant Entertainment Media Ventures, Inc. d/b/a "Oz Media" ..............- 18 -

   x.   Defendant Zoco Productions, LLC...............................................- 20 -

   xi.  Defendant Harpo Productions, Inc. ..............................................- 21 -

   xii. Defendant Sony Pictures Television, Inc. ....................................- 21 -

      The Media Defendants Are General Partners................................- 22 -

D.   The Supplier Defendants...................................................................- 23 -

   xiii. Defendant Naturex .......................................................................- 23 -

   xiv. Defendant Interhealth Nutraceuticals, Inc....................................- 25 -

THE PRODUCTS ............................................................................- 26 -

THE DOCTOR OZ EFFECT ............................................................- 37 -

CLASS ACTION ALLEGATIONS ....................................................- 47 -

CLAIMS FOR RELIEF ...................................................................- 51 -

    CLAIM FOR FRAUD, DECEIT, AND SUPPRESSION OF FACTS............- 51 -

    CLAIM FOR NEGLIGENT MISREPRESENTATION ...............................- 63 -

    CLAIM FOR VIOLATIONS OF THE FALSE ADVERTISING LAW.........- 70 -

    CLAIM FOR BREACH OF EXPRESS WARRANTY (Cal. Comm. Code)..- 71 -

    CLAIM FOR BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY CALIFORNIA LAW (Cal. Comm. Code) ...............- 72 -

    CLAIM FOR BREACH OF EXPRESS WARRANTY (N.Y. Law)...............- 74 -

    CLAIM FOR BREACH OF IMPLIED WARRANTY N.Y. Law) .................- 74 -

    CLAIM FOR BREACH OF EXPRESS WARRANTIES TO
    INTENDED THIRD PARTY BENEFICIARIES ...........................................- 75 -

    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ...............- 77 -

    CLAIM FOR UNFAIR TRADE PRACTICES .........................................- 78 -

    CLAIM FOR FALSE ADVERTISING....................................................- 79 -

PRAYER FOR RELIEF ..................................................................- 80 -

JURY DEMAND ...........................................................................- 81 -

1. Plaintiffs Veda Woodard, Teresa Rizzo-Marino, and Diane Morrison ("Plaintiffs"), individually and on behalf of themselves, all others similarly situated and the general public, bring this action against Lee Labrada, Labrada Bodybuilding Nutrition, Inc., Labrada Nutritional Systems, Inc. (collectively "Labrada"), Dr. Mehmet C. Oz, M.D.  ("Dr. Oz"), Entertainment Media Ventures, Inc. ("EMV"), Zoco Productions, LLC ("Zoco"), Harpo Productions, Inc. ("Harpo"), Sony Pictures Television, Inc. ("Sony"), Naturex, Inc. ("Naturex"), and Interhealth Nutraceuticals Incorporated ("Interhealth") (collectively the "Defendants") demanding a trial by jury, and allege on information, belief, or by investigation of their counselformed after an inquiry reasonable under the circumstances as set forth in the preceding paragraphs.

## JURISDICTION AND VENUE

2. This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs are asserting claims under the Federal Magnuson-Moss Warranty Act,

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are doing business throughout this District, and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial district.

## NATURE OF THE ACTION

5. On June 17, 2014, the United States Senate Subcomitte on Consumer Protection, Product Safety, and Insurance held a hearing titled *Protecting Consumers*

First Amended Class Action Complaint

*from False and Deceptive Advertising of Weight-Loss Supplement Products*.[1] In her opening statement, committee chairwoman— Senator Claire McCaskill— stated that "With so many Americans desperate for anything that might make it easier to lose weight, it's no wonder scam artists and fraudsters have turned to the $60-billion weight-loss market to make a quick buck."

6.     False advertising of weight-loss products is truly an epidemic. Government regulators are overwhelmed because "One out of ten fraud claims submitted to the FTC are, in fact, for weight-loss products." Indeed, Senator McCaskill stated that "the problem is much larger than any enforcement agency could possibly tackle on its own. Private stakeholders, companies that sell weight-loss products, media outlets, and other advertising platforms, *as well as consumer watchdogs*, must all do their part to help address this problem."

7.     The 2014 Senate hearing featured testimony from Defendant Doctor Mehmet C. Oz— host of the daytime television series *The Doctor Oz Show*.  Dr. Oz was under scrutiny because of certain episodes of *The Doctor Oz Show* where he called Garcinia Cambogia and Green Coffee Bean Extract "***miracles in a bottle***" that will "***bust your body fat for good***." Senator McCaskill expressed her concern that Dr. Oz was "melding medical advice, news, and entertainment in a way that harms consumers."

**SENATOR McCASKILL:**

I can't figure this out Dr. Oz...I get that you do a lot of good on your show.  I understand that you give a lot of information that's great information about health, and you do it in a way that's

---

[1] Official transcript of *Protecting Consumers From False and Deceptive Advertising of Weight-Loss Products, Before the Subcommittee on Consumer Protection, Product Safety and Insurance of the United States Senate*, 113TH CONG. 2ND. SESS. (June 14, 2016) [*hereinafter* "Senate Hearing"], *available at* https://www.gpo.gov/fdsys/pkg/CHRG-113shrg92998/pdf/CHRG-113shrg92998.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

understandable.  You're very talented, you're obviously very bright. You've been trained in science-based medicine.

Now, here are three statements you've made on your show:

- 'You may think magic is make-believe, but this little bean has scientists saying they've found the magic weight-loss cure for every body type.  It's green coffee extract.'
- 'I've got the number one miracle in a bottle to burn your fat!  it's raspberry ketones.'
- 'Garcinia cambogia: it may be the simple solution you've been looking for to bust your body fat for good.'

I don't get why you need to say this stuff, because *you know it's not true!*  So why, when you have this amazing megaphone, and this amazing ability to communicate, why would you cheapen your show by saying things like that?"

**Dr. OZ.** Well, if I could disagree about whether they work or not, and I'll move on to the issue of the words that I used. And just with regard to whether they work or not, take the green coffee bean extract, as an example. I'm not going to argue that it would FDA-muster if it was a pharmaceutical drug seeking approval, but among the natural products that are out there, this is a product that has several clinical trials. There was one large one, a very good-quality one, that was done the year we talked about this, in 2012.

**Senator MCCASKILL**. No, what I want to know—I want to know about that clinical trial, because the only one I know is 16 people in India that was paid for by the company. In fact, at the point in time you initially talked about this being a miracle, the only study that was out there was the one with 16 people in India that was written up by somebody who was being paid by the company that was producing it.

8.    Despite this testimony, Dr. Oz never answered the simple question he was asked: *Why would he say that stuff*? This class action lawsuit seeks to pick up where the Senate hearing left off.

First Amended Class Action Complaint

**Senator HELLER.**

Do you believe there's a magic weight-loss cure out there?

**Dr. OZ.**
 [I]f you're selling something because it's magical, no. If you're arguing that it's going to be like magic, because if you stop eating carbohydrates, you're going to lose a lot of weight, that's a truthful statement. You may not agree with the flowery use of the word ''magic,'' but it is true that most people cutting out simple carbs will lose weight.

****
**Senator HELLER.**
OK. And it is true that you do not endorse any products or receive any money from any product sold?

**Dr. OZ.**
That is true.

9.     But is that *really* true? After all, Dr. Oz made the following admission during a television news interview: "I wish I'd never used the laudatory terms I used

FIRST AMENDED CLASS ACTION COMPLAINT

for weight loss supplements. That was the big mistake I think all of us acknowledge."[2] Dr. Oz— a renown surgeon at Columbia University Medical School— knew or should have known that the supplement products he promoted were ineffective at providing weight-loss benefits, much less the "magic" "fat busting" effects that he claimed were supported by clinical studies. *So why would he say those things*?

10.    Although Dr. Oz seems to have acknowledged his "big mistake," what he has not done is provide redress to consumers who were duped into paying for the worthless supplement products he promoted.



Video available here.

11.    Plaintiffs Veda Woodard, Teresa Rizzo-Marino, Diane Morrison, and the proposed Class members are all purchasers of Labrada brand weight-loss supplement products that contain Green Coffee Bean extract and Garcinia Cambogia. The specific

---

[2] http://www.huffingtonpost.com/2015/05/11/dr-oz-weight-loss-mistake_n_7256534.html

FIRST AMENDED CLASS ACTION COMPLAINT

products subject to this action are the "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER" with Supercitrimax® and the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER" with Svetol®. (collectively the "Labrada Products" or the "Products"). The Labrada Products are sold online and at popular supplement retailers like the VitaminShoppe.

12. The "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER" contains Svetol® Green Coffee Bean Extract that is manufactured by Defendant Naturex, Inc.— an affiliate of the "Naturex Group" led by its the French parent company Naturex Société Anonyme ("Naturex, S.A."). The Naturex Group "is the global leader in specialty plant-based natural ingredients" that "employs more than 1,700 people and benefits from 8 sourcing offices around the world and high-performance manufacturing operations across 15 sites in Europe, Morocco, the United States, Brazil, Australia, India and Chile." According to Defendant Naturex, "Svetol® is the most studied and proven green coffee bean extract for losing weight and increasing lean body mass." Moreover, "Svetol® is derived from 100% premium Robusta beans that have undergone a proprietary processing technology which extracts a high concentration of key chlorogenic acids."

13. The "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER" contains the proprietary active ingredient Supercitrimax®, which is supplied by Defendant Interhealth Nutraceuticals. Interhealth is headquartered in Benicia, California. Its "ingredients are sold worldwide to manufacturers of dietary supplements and functional foods & beverages" and "the company's success is earmarked by high-quality ingredients, thorough research program, outstanding customer service and powerful co-branding marketing strategy." Interhealth's Supercitrimax® is a weight-loss supplement ingredient containing an extract of the *Garcinia cambogia* fruit. According to the Interhealth, "Super CitriMax® is a patented, 60% hydroxycitric acid (HCA) water extract from *Garcinia cambogia*. It is uniquely bound to calcium and potassium for maximum stability, solubility, bioavailability, and efficacy."

First Amended Class Action Complaint

14.   The Labrada Products, by way of their proprietary active ingredients Svetol® and Supercitrimax®, claim to be effective "FAT BUSTERS" that contain "ZERO BINDERS, ZERO FILLERS, AND ZERO ARTIFICIAL INGREDIENTS." The Labrada Products purport to be clinically proven by citing to "references" on the product labels. These references are likely to mislead consumers about the efficacy of the Labrada products by stating or suggesting that the products are proven by "peer-reviewed, published studies." This deception is bolstered by the fact that the "references" appear in close proximity claims on the label that tout the weight-loss benefits of the products. For example, the Labrada green coffee bean extract states "**Helps Support Significant Fat Loss**" and then cites directly to a study by "Vinson J.A."



FIRST AMENDED CLASS ACTION COMPLAINT

15.     However, the studies cited on the Labrada labels do not support the marketing claims.  The study by "Vinson J.A." was actually retracted by the author, Dr. Joe Vinson, after an FTC investigation revealed that "the principal investigator repeatedly: (1) altered the weights and other key measurements of the subjects; (2) changed the length of the trial; and (3) confused which subjects took either the placebo or [Green Coffee Bean Extract] at various points during the trial."

16.     Below is how the *Vinson* study now appears online at the U.S. National Library of Medicine's website:[3]



---

[3] U.S. Nat. Lib. Of Med., Nat. Inst. Health, PMC I.D. No. PMC3267522, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3267522/.

First Amended Class Action Complaint

1

2      17.    The retracted *Vinson* study is the same study that Dr. Oz called a "good

3  quality" study during the Senate hearing. But that is not the only "big mistake" Dr. Oz

4  has made. That same year, in 2012, Dr. Oz featured a guest named "Doctor" Lindsay

5  Duncan who touted the weight-loss benefits of green coffee bean extract.  It turns out,

6  however, that "Doctor" Lindsay Duncan was no doctor at all. "According to [an] FTC

7  lawsuit, shortly after Duncan agreed to appear on *Dr. Oz* but before the show aired, he

8  began selling the extract and tailored a marketing campaign around his appearance on

9  the show to capitalize on the 'Oz effect' – a phenomenon in which discussion of a

10  product on the program causes an increase in consumer demand."

11      18.    Defendant Lee Labrada and his companies similarly sought to capitalize

12  off *'The Doctor Oz Effect.'*  But the "*Dr. Oz Effect*" is no random coincidence. The

13  Labrada Defendants and/or their proprietary ingredient suppliers— Naturex and

14  Interhealth— provided some form of compensation to Dr. Oz in exchange for

15  Defendants, including Dr. Oz, actively promoting the Labrada products or their

16  proprietary ingredients on television.

17      19.    These covert product placements on *The Doctor Oz Show* are part of a

18  rapidly expanding advertising scheme called "branded integration." In the era of digital

19  video recorders (DVRs) like TiVo, many viewers simply fast-forward through the

20  commercials. To make up for lost revenue, media companies have turned to "branded

21  integration" as an advertising alternative by simply making the advertisement a part of

22  the television show.

23      20.    *The Doctor Oz Show* is arguably the most successful television program

24  that has ever implemented branded integration strategies. Consumers perceive Dr. Oz

25  as a trusted and unbiased source of information. But Dr. Oz fails to disclose material

26  facts about his connections to the supplement industry, including Labrada, and his on-

27  air branded promotion deals. Moreover, Dr. Oz makes affirmative misrepresentations

28

First Amended Class Action Complaint

that he does not promote any "specific brands." But this statement is deceptive or false because, by using key language, Dr. Oz is promoting certain brands, as he is paid to do.

21.     Senator McCaskill's concern that Dr. Oz is "melding medical advice, news, and entertainment in a way that harms consumers" should be heeded. For example, a supplement industry publication called *Natural Products Insider* stated that "Oz tends to feature the base ingredient, not finished supplements or branded products, so ingredient suppliers offering a nutrient or specialty compound highlighted on the show will definitely feel the impact and need to brace for the increased demand and capitalize on the heightened awareness among potential new customers at retail." The article further notes that "Naturex has seen a noticeable uptick in awareness of green coffee extract and Naturex's Svetol® brand of this ingredient." Antoine Bily, PhD, director of research at Naturex, was quoted saying "'The show has also helped us to capture the interest of new consumers and we have seen an increase in the amount of Svetol® ordered with existing consumers,' he said, noting Naturex believes the Oz effect on this ingredient will be long term.'"

22.     But Dr. Oz's covert product placements are harming consumers. In fact, the United States Federal Trade Commission recently issued a policy guidance on **"Deceptively Formatted Advertisements**."

> The Commission has long held the view that advertising and promotional messages that are not identifiable as advertising to consumers are deceptive if they mislead consumers into believing they are independent, impartial, or not from the sponsoring advertiser itself. Knowing the source of an advertisement or promotional message typically affects the weight or credibility consumers give it. Such knowledge also may influence whether and to what extent consumers choose to interact with content containing a promotional message. Over the years, the Commission has challenged as deceptive a wide variety of advertising and other commercial message formats, including ''advertorials'' that appeared as news stories or feature articles, direct-mail ads disguised as book reviews, infomercials presented as regular television or radio

- 10 -
FIRST AMENDED CLASS ACTION COMPLAINT

programming, in-person sales practices that misled consumers as to their true nature and purpose, mortgage relief ads designed to look like solicitations from a government agency, emails with deceptive headers that appeared to originate from a consumer's bank or mortgage company, and paid endorsements offered as the independent opinions of impartial consumers or experts.[4]

23.   Dr. Oz— dubbed by Oprah Winfrey as "America's Doctor"— falls within the last category.

24.   Significantly, the Federal Trade Commission has stated, "Regardless of the medium in which an advertising or promotional message is disseminated, deception occurs when consumers acting reasonably under the circumstances are misled about its nature or source, and such misleading impression is likely to affect their decisions or conduct regarding the advertised product or the advertising."

25.   Plaintiffs bring this class action lawsuit alleging that the Media Defendants have violated state consumer protection laws that similarly prohibit deception of consumers who have been misled by weight-loss supplement endorsements on *The Doctor Oz Show*.

26.   Moreover, undisclosed product placements on *The Doctor Oz Show* constitute illegal "**Payola**." "Section 317 of the Communications Act of 1934, as amended, 47 U.S.C. § 317, requires broadcasters to disclose to their listeners or viewers if matter has been aired in exchange for money, services or other valuable consideration. The announcement must be aired when the subject matter is broadcast." Plaintiffs allege that Dr. Oz failed to comply with the FCC's payola disclosure requirements.

27.   There are three straightforward issues in this case: 1.) Are the Labrada Defendants liable for marketing and sales of the "Labrada Garcinia Cambogia DUAL

---

[4] *See* Enforcement Policy Statement on Deceptively Formatted Advertisements, Federal Trade Commission, *available at* https://www.ftc.gov/system/files/documents/public_statements/896923/151222deceptiveenforcement.pdf

FIRST AMENDED CLASS ACTION COMPLAINT

ACTION FAT BUSTER" with Supercitrimax® and the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER" with Svetol®?; 2.) Are the ingredient supplier Defendants— Interhealth and Naturex— liable for their role in distributing and marketing the proprietary ingredients in the products or their ingredients? and 3.) Should Dr. Oz and the other Media Defendants be held accountable for misrepresenting their promotions and financial interests in the weight-loss supplement products subject to this suit?

28.     Plaintiff Veda Woodard, a resident of California, alleges that Defendants have violated California's consumer protection laws and asserts claims for fraud, negligent misrepresentation, Violations of the Unfair Competition Law, Violations of the False Advertising Law, Violations of the Consumers Legal Remedies Act, and Violations of the Magnuson-Moss Warranty Act for breaches of express and implied warranties under California law.

29.     Plaintiffs Rizzo-Marino and Morrison, residents of New York, allege that the Labrada Defendants have violated New York's consumer laws and assert claims for fraud, negligent misrepresentation, violations of N.Y. General Business Laws §§ 349 and 350, and for Violations of the Magnuson-Moss Warranty Act for breaches of express and implied warranties under California law.

## THE PARTIES

### A. The Plaintiffs and Proposed Class Representatives

#### i.   Plaintiff Veda Woodard

30.     Plaintiff Veda Woodard, is a resident of Murrieta, California. Plaintiff Woodard purchased the "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER," the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER" on multiple occasions beginning on or around June of 2013 and continuing until approximately December of 2013 from Vitamin Shoppe stores located in Murrieta, California and in Temecula, California. Plaintiff Woodard paid approximately $14.99

FIRST AMENDED CLASS ACTION COMPLAINT

to $19.99 for each of the Products that she purchased.

31.    Plaintiff Woodard saw the Misrepresentations prior to and at the time of purchase and understood them as representations and warranties that the Products were safe and effective for weight loss and fat loss as advertised.  Ms. Woodard relied on the representations made on the Products' label in deciding to purchase the Products. Additionally, Plaintiff Woodard saw episodes of *The Doctor Oz Show* that promoted the products and relied on the representations made on *The Doctor Oz Show* in deciding to purchase the Products.  These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Products had she known the representations were false. She also understood that in making the sale, the retailer was acting with the knowledge and approval of and/or as the agents of Defendants. She also understood that the purchase involved a direct transaction between herself and the ingredient manufacturers because her purchase came with the ingredients manufacturers misrepresentations and warranties that the products were, in fact, safe and effective for weight loss and fat loss, among other things. Plaintiff Woodard would consider purchasing the Products again if the advertising statements made on the Product labels and in the Product advertisements were, in fact, truthful and represented in a manner as not to deceive consumers.

ii.  Plaintiff Teresa Rizzo-Marino

32.    Plaintiff Teresa Rizzo-Marino, is a resident of Brooklyn, New York. Plaintiff Rizzo-Marino purchased the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER" on approximately six to eight occassions beginning on or around January of 2014 from retail stores near her home in Brooklyn, New York. Plaintiff Rizzo-Marino believes that she purchased the Labrada Green Coffee Bean Extract from CVS, Rite Aide, and Wal-Mart. Plaintiff Rizzo-Marino paid approximately $14.99 for each of the Products that she purchased.

33.    Plaintiff Rizzo-Marino saw the Misrepresentations prior to and at the time

- 13 -

of purchase and understood them as representations and warranties that the Products were safe and effective for weight loss and fat loss as advertised.  Ms. Rizzo-Marino relied on the representations made on the Products' label in deciding to purchase the Products. These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Products had she known the representations were false. She also understood that the purchase involved a direct transaction between herself and the ingredient supplier, Naturex, because her purchase came with the Naturex's misrepresentations and warranties that the Green Coffee Bean Product was in fact, safe and effective for weight loss and fat loss, among other things. Plaintiff Rizzo-Marino would consider purchasing the Products again if the advertising statements made on the Product labels and in the Product advertisements were, in fact, truthful and represented in a manner as not to deceive consumers.

iii. <u>Plaintiff Diane Morrison</u>

34.    Plaintiff Diane Morrison, is a resident of Bolivar, New York. Plaintiff Morrison purchased the "Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER," and the "Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER" on multiple occasions beginning in the summer of 2012 and continuing until approximately late 2013 from various retail stores in upstate New York, including Walgreens. Plaintiff Morrison paid approximately $14.99 to $19.99 for each of the Products that she purchased.

35.    Plaintiff Morrison saw the Misrepresentations prior to and at the time of purchase and understood them as representations and warranties that the Products were safe and effective for weight loss and fat loss as advertised.  Plaintiff Morrison relied on the representations made on the Products' label in deciding to purchase the Products. Additionally, Plaintiff Morrison saw episodes of *The Doctor Oz Show* that aired in or around 2012 that promoted the products.   Plaintiff Morrison relied on the representations made on *The Doctor Oz Show* in deciding to purchase the Products,

FIRST AMENDED CLASS ACTION COMPLAINT

including representations about scientific evidence supporting the ingredients in the products. Plaintiff Morrison specifically recalls seeing an episode of The Doctor Oz Show in 2012 where Dr. Oz conducted an experiment on his audience members regarding the efficacy of green coffee bean extract. These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Products had she known the representations were false. She also understood that the purchase involved a direct transaction between herself and the ingredient manufacturers because her purchase came with the ingredients manufacturers misrepresentations and warranties that the products were, in fact, safe and effective for weight loss and fat loss, among other things. Plaintiff Morrison would consider purchasing the Products again if the advertising statements made on the Product labels and in the Product advertisements were, in fact, truthful and represented in a manner as not to deceive consumers.

### B. The "Labrada Defendants"

#### iv. Defendant Lee Labrada

36.     Defendant Lee Labrada is a resident of Tomball, Texas. Defendant Lee Labrada is the founder, president, and C.E.O. of both Defendant Labrada Body Building, Inc. and Defendant Labrada Nutritional Systems, Inc. Defendant Lee Labrada is a public figure who is recognized as a world-renowned bodybuilder.

37.     Defendant Lee Labrada develops, manufactures, promotes, markets, distributes, and/or sells the Labrada Products across the United States, including to hundreds of thousands of consumers in California. Lee Labrada has authorized and ratified the use of his name, image, and likeness to promote the Labrada Products and has reaped substantial profits thereby.

38.     Labrada Nutrition and Labrada Bodybuilding were founded by Defendant Lee Labrada, a former professional bodybuilder who has won 22 professional bodybuilding titles. Defendant Lee Labrada is also one of the few pro bodybuilders

FIRST AMENDED CLASS ACTION COMPLAINT

who has placed in the top four at the "Mr. Olympia" competition seven consecutive years in a row; a feat he shares with the likes of Arnold Schwarzenegger.

39.    In 1995, Defendant Lee Labrada founded Labrada Nutrition and launched the Labrada Product line that consists mostly of protein powders and other muscle building "stacks." Labrada is also well-known for its Lean Body® line of protein shakes that are sold at major retail stores like Walmart.

40.    According to *Bloomberg*, "Mr. Labrada guided Labrada Nutrition to become one of the fastest growing privately-held companies in the U.S.-earning Inc. 500 status-in only six years."[5]

v. <u>Defendant Labrada Bodybuilding Nutrition, Inc.</u>

41.    Defendant Labrada Bodybuilding Nutrition, Inc. is a corporation organized under the laws of the state of Texas that maintains its principal place of business at 333 North park Central Drive, Suite Z, Houston, Texas. Defendant Labrada Body Building, Inc. develops, manufactures, promotes, markets, distributes, and/or sells the Labrada Products across the United States, including to hundreds of thousands of consumers in California and New York. Defendant Lee Labrada is the Chief Executive Officer and Founder of Labrada Bodybuilding Nutrition, Inc. According to the United States Patent and Trademark Office, Defendant Labrada Bodybuilding Nutrition is the owner of the "Labrada Nutrition" trademark. The labels and packaging for the Labrada Products uniformly state that the Labrada Products are "Developed and Manufactured for Labrada Nutrition."

vi. <u>Defendant Labrada Nutritional Systems, Inc.</u>

42.    Defendant Labrada Nutritional Systems, Inc. is a corporation organized under the laws of the state of Texas that maintains its principal place of business at 333 North park Central Drive, Suite Z, Houston, Texas. Plaintiffs are informed and believe that Defendant Labrada Nutritional Systems, Inc. develops, manufactures, promotes,

---

[5] *See Executive Profile of Lee Labrada*, BLOOMBERG ONLINE, http://goo.gl/LS8pAb.

FIRST AMENDED CLASS ACTION COMPLAINT

1  markets, distributes, and/or sells the Labrada Products across the United States,
2  including to hundreds of thousands of consumers in California and New York.
3  Defendant Lee Labrada is the Chief Executive Officer and Founder of Labrada
4  Nutritional Systems, Inc.

5                  vii.   The Labrada Joint Enterprise

6        43.   Defendants Lee Labrada, Labrada Bodybuilding Nutrition, Inc., and
7  Labrada Nutritional Systems, Inc. (collectively the "Labrada Defendants" or "The
8  Labrada Joint Venture") have combined their property, skill, and knowledge to carry
9  out a single business undertaking in that they develop, manufacture, promote, market,
10  distribute, and/or sell the Labrada Products across the United States, including to
11  hundreds of thousands of consumers in California and New York. The Labrada
12  Defendants have joint control over the enterprise and Plaintiffs allege that the Labrada
13  Defendants delegate that control. The Labrada Defendants have formed either an
14  express agreement, or an implied agreement, to jointly share the control, profits, and
15  losses of the Labrada Joint Venture. The Labrada Venture is a business undertaking in
16  that it was formed to profit from sales of the Labrada Products.

17      **C.  _Media Defendants_**

18               viii.   Defendant Dr. Mehmet C. Oz, M.D.

19        44.   Defendant Dr. Mehmet C. Oz, M.D. ("Dr. Oz") is a resident of New Jersey
20  who maintains his principal place of business in the State of New York. Defendant Dr.
21  Mehmet C. Oz has been called "America's Doctor"[6] by Oprah Winfrey and was a
22  frequent guest on _The Oprah Winfrey_ television show. In 2009, Harpo Productions—
23  Oprah's production company— began producing _The Dr. Oz Show_ featuring Defendant
24  Dr. Mehment C. Oz. _The Dr. Oz Show_ is a three-time Emmy Award-winning broadcast
25  that aired its 1,000th episode in May of 2015. The show is broadcast in all U.S. markets
26  in 118 countries around the word.  Additionally, Dr. Oz has authored seven _New York_

27

28  [6] "AMERICA'S DOCTOR" is a registered trademark owned by Dr. Mehmet C. Oz.

FIRST AMENDED CLASS ACTION COMPLAINT

*Times* bestselling books. According to a *Bloomberg* biography, Dr. Oz is affiliated with several venture capital firms, hospitals, pharmaceutical manufacturers, and distributors.[7] Defendant Dr. Mehmet C. Oz promotes and markets the Labrada Products (and/or their active ingredients)  across the United States, including to hundreds of thousands of consumers in California and New York.

ix. <u>Defendant Entertainment Media Ventures, Inc. d/b/a "Oz Media"</u>

45.    Defendant Entertainment Media Ventures, Inc. ("EMV" or "Oz Media") is a California corporation that maintains its principal place of business at 5225 Wilshire Blvd. #777, Los Angeles, California 90036. EMV is registered to do business in California as entity number C2133554. Defendant EMV is an entertainment venture capital firm that is operated by Dr. Oz's Hollywood agent, Sanford R. Climan. Mr. Climan rose to success as an agent at the Creative Artists Agency ("CAA") and has represented actors by the likes of Robert De Niro, Robert Redford, Kevin Costner, Danny DeVito, and Michael Man. In 2013, "Mr. Climan partnered with Dr. Mehmet Oz to form Oz Media, which is dedicated to building companies committed to improving health and wellness across cultures and geographies."[8]

46.    Plaintiffs are informed and believe that Entertainment Media Ventures is doing business as "Oz Media" because the EMV website identifies the company as "Oz Media" on certain webpages. [9] Moreover, Plaintiffs allege that EMV and Oz Media are the alter egos of one another because they consist of the same two or three members working out of the same office and interchangeably refer to the operation as "Entertainment Media Ventures" or "Oz Media."

47.    Plaintiffs are informed and believe that Entertainment Media Ventures is

---

[7]Executive Profile of Dr. Oz, BLOOMBERG, http://goo.gl/YjH84n.
[8] http://emventures.com/who-we-are/.
[9] http://web.archive.org/web/20160323023620/http://emventures.com/what-we-do/oz-media/

FIRST AMENDED CLASS ACTION COMPLAINT

a business operation that brokers certain "strategic partnership" deals between Dr. Oz and weight-loss supplement ingredient suppliers. According to the LinkedIn page for Nelly Kim, Vice President, Strategy and Business Development at Entertainment Media Ventures, she provides "Business development and strategic partnerships for Dr. Oz. These partnerships include, but are not limited to, endorsements, collaborations, speaking engagements, equity deals, and potential investments."[10]

48.     Under the partnerships tab of the EMV website, it admits " products referenced by Dr. Oz consistently see significant boosts in sales; . . . Our goal is for Dr. Oz to forge a direct and authentic connection between you and your demographic.  This alliance will ensure brand integrity, large scale awareness, and continued financial growth." See  http://goo.gl/HOYXDT.

49.     Plaintiffs are informed and believe that further investigation and discovery will reveal that EMV manages, invests, and has possession of certain ill-gotten gains that Dr. Oz has received through his branded endorsement deals of weight-loss supplement products.

50.     Plaintiffs also allege that EMV has acted in concert with one or more of the other Media Defendants to further the unlawful supplement endorsement deals subject to this complaint. Specifically, EMV knows that the conduct of Dr. Oz in his endorsements and profits from fraudulent weight-loss supplement sales constitute a breach of duty owed to consumers. EMV gives substantial assistance and encouragement to Dr. Oz in an effort to facilitate his fraudulent endorsements of weight-loss supplements, like the Labrada supplements. On information and belief, Plaintiffs allege that EMV brokers Dr. Oz's endorsement deals and assists Dr. Oz or the other media defendants in concealing their ill-gotten gains through the use of various shell entities and investment vehicles.

51.     EMV's president Sanford Climan, has specialized knowledge and the

_____

[10] See LinkedIN, Nelly Kim, available at https://www.linkedin.com/in/nelly-kim-8715171b (last visited June 2, 2016).

- 19 -

capacity to assist Dr. Oz with the concealment of his ill-gotten gains. Specifically, "Mr. Climan is president of Entertainment Media Ventures, Inc., a company active in media investment and strategic advisory work that he founded in 1999. Since 2013, Mr. Climan has also served as chief executive officer of Oz Media, LLC, which was formed in 2013 in partnership with Dr. Mehmet Oz and is dedicated to building companies committed to improving health and wellness across cultures and geographies. In addition, Mr. Climan has served as an operating advisor for Pegasus Capital since May 1, 2014. From 2007 to 2010, Mr. Climan served as the first chief executive officer of 3ality Digital, LLC, a leading company in the development and commercialization of technologies that enable high quality digital 3D image capture, digital 3D broadcast and software that enables consumer applications of 3D entertainment. Mr. Climan also serves on several charitable boards, including The American Cinematheque, The Fulfillment Fund, and the UCLA School of Theater, Film and Television."[11]

x. Defendant Zoco Productions, LLC

52. Defendant Zoco Productions, LLC ("Zoco") is a Delaware limited liability company that maintains its principal place of business in New York City, New York. Zoco produces *The Doctor Oz Show* and operates the website for the *The Doctor Show*. Plaintiffs are informed and believe that after a reasonable opportunity for further investigation or discovery, that Defendant Zoco Productions, LLC or its agents and employees provided substantial assistance to Dr. Oz in carrying out the branded integration marketing strategy for Labrada products on *The Doctor Oz Show*. Plaintiffs further believe that Dr. Oz is an agent or employee for Defendant Zoco working within the scope of that agency relationship. During 2012, it is believed that Dr. Oz maintained

---

[11] *See* Proxy Statement of LIGHTING SCIENCE GROUP CORPORATION 8 (Aug. 1, 2014), *available at* http://www.sec.gov/Archives/edgar/data/866970/000119312514291650/d670646ddef14a.htm

FIRST AMENDED CLASS ACTION COMPLAINT

1  a business email address ending with the domain name "@Zoco."

2      53.    Defendant Zoco promotes and markets the Labrada Products (and/or their

3  proprietary active ingredients) across the United States, including to hundreds of

4  thousands of consumers in California.

5              xi. Defendant Harpo Productions, Inc.

6      54.    Defendant Harpo Productions, Inc. is an Illinois corporation that

7  maintains its principal place of business in Chicago, Illinois. According to its LinkedIn

8  web page, "Harpo Productions (also referred to as Harpo Studios) is a multimedia

9  production company founded by Oprah Winfrey and is based in Chicago, Illinois. It is

10 the most successful production company in daytime talk, producing The Oprah

11 Winfrey Show, The Dr. Oz Show, and The Nate Berkus Show, as well as having

12 developed Dr. Phil and Rachael Ray. Also, Harpo creates and produces original

13 television programming for broadcast, syndication, and cable." Harpo is Oprah spelled

14 backwards. Based on information and belief, Defendant Zoco is a wholly-owned

15 subsidiary of Defendant Harpo.   Defendant Harpo promotes and markets the Labrada

16 Products (and/or their proprietary active ingredients) across the United States,

17 including to hundreds of thousands of consumers in California.

18              xii.    Defendant Sony Pictures Television, Inc.

19     55.    Defendant Sony Pictures Television, Inc. ("Sony") is a Delaware

20 corporation that maintains its principal place of business at 10202 W Washington

21 Blvd., Spp #119 Culver City, California. Sony is registered to do business in California

22 as entity number C1619277. Sony is one of the world's largest content providers. An

23 article that appeared on the Oprah Winfrey website in 2009 stated the following:

24      Dr. Mehmet C. Oz, MD, better known to millions as Dr. Oz, the renowned and

25      popular surgeon, educator, and best-selling author who appears regularly on The

26      Oprah Winfrey Show, will debut in first-run syndication next year with a series

27      co-produced by Harpo Productions and Sony Pictures Television (SONY) and

28

FIRST AMENDED CLASS ACTION COMPLAINT

distributed by SONY, it was jointly announced today by Oprah Winfrey; Tim Bennett, president, Harpo Productions; and Steve Mosko, president, Sony Pictures Television.   The series, Dr. Oz (working title), will be available to stations across the country to launch in Fall 2009. Under the multi-year agreement, SONY will handle all distribution efforts for the show in the United States and Canada, advertiser sales and marketing, and co-produce the series with Harpo Productions.[12]

56.   Defendant Sony promotes and markets the Labrada Products (and/or their active ingredients) across the United States, including to hundreds of thousands of consumers in California and New York.

### a.   The Media Defendants Are General Partners

57.   Sony, Harpo, Zoco, and Dr. Oz are general partners in a general partnership that Plaintiffs believe is an unregistered business entity. Defendants Dr. Mehmet C. Oz, Zoco Productions, Harpo Productions, and Sony Pictures Television have combined their property, skill, and knowledge to carry out a single business undertaking in that they produce, promote, and distribute *The Doctor Oz* television show and other Doctor Oz related business operations.

58.   According to a Harpo Press Release, "Harpo Productions creates and develops original TV programming for primetime, syndication and cable television and operates Oprah.com, a premier lifestyle website. ZoCo Productions, LLC, an affiliate of Harpo Productions, Inc., and Sony Pictures Television co-produce *The Dr. Oz Show*.

59.   The Media Defendants have formed an agreement to jointly share the control, profits, and losses of the general partnership. The responsibilities of the parties have also been delegated pursuant to a partnership agreement: "Harpo to produce and retain copyright;" "SPT to have distribution rights in the US and Canada with a right

---

[12]*See* Press Release, *Harpo Productions and Sony Pictures Television to Launch Dr. Oz* (Jun. 13, 2009), http://www.oprah.com/pressroom/Harpo-Productions-and-Sony-Pictures-Will-Launch-Dr-Oz.

FIRST AMENDED CLASS ACTION COMPLAINT

of first negotiation / refusal on all other territories;" "SPT and Harpo to have mutual approval over production budget;" "SPT and Harpo to collaborate on a website and digital extensions;" "SPT to provide marketing, legal/business affairs, finance, and other back office services;" "Harpo will control any broader joint venture/web project with Dr. Oz but Harpo acknowledges Sony's strong interest in partnering on a Dr. Oz branded new media venture and will discuss with Sony in good faith meaningful opportunities to participate."[13] *See* Exhibit C.

### D. The Supplier Defendants

#### xiii.   Defendant Naturex

60.    Defendant Naturex, Inc. ("Naturex") is a Delaware corporation that maintains its principal place of business at 375 Huyler Street, South Hackensack, New Jersey. Defendant Naturex develops, manufactures, promotes, markets, distributes, and/or sells the Svetol® brand Green Coffee Bean Extract ingredient and the Labrada Green Coffee Bean Product with Svetol® throughout the United States, including in California. Defendant Naturex, Inc. is registered to do business in the state of California as entity number C1575823.

61.    According to the U.S. Patent and Trademark Office, the "Svetol" trademark is owned by Naturex, S.A, which is the French holding company for Naturex, Inc. The Naturex LinkedIn web page describes the company's business operations as follows:

> Naturex is the global leader in specialty plant-based natural ingredients. Through its dedicated business units, the Group addresses the specific needs of 3 strategic markets: Food & Beverage, Nutrition

---

[13] *See* "Partnership Proposal" dated April 29, 2008, *available at* https://wikileaks.org/sony/docs/07/junderwood/1 Biz Dev/Harpo/Overview_v18.ppt (last visited  May 31, 2016) [*Archived at* http://web.archive.org/web/20160414063523/https://wikileaks.org/sony/docs/07/junderwood/1 Biz Dev/Harpo/Overview_v18.ppt].

FIRST AMENDED CLASS ACTION COMPLAINT

& Health, and Personal Care. The company offers its customers a full array of high quality ingredients, responsibly sourced from nature for food, pharmaceutical, nutraceutical and cosmetic applications. Naturex's head office is in Avignon, France. The company employs more than 1,700 people and benefits from 8 sourcing offices around the world and high-performance manufacturing operations across 15 sites in Europe, Morocco, the United States, Brazil, Australia, India and Chile. It also has a global commercial presence through a dedicated network of 25 sales offices.[14]

62.   The "Naturex Group" maintains three offices and two "multifunction sites" in the United States. A Naturex sales office is located 3080 Bristol Street, Suite 540, Costa Mesa, California 92626.

63.   Naturex licenses the trademark to the brand "Svetol" to the Labrada Defendants for display on the Labrada Green Coffee product. Upon information and belief, the licensing agreement gives Naturex substantial control over the content of the labels that appear on the Labrada Green Coffee product. A Svetol license agreement that was entered into by Naturex and an unrelated entity shows that Naturex must provide prior written approval of the labeling and packaging materials before any product with its "Svetol" logo can be marketed and sold in commerce. *See* Exhibit A.[15] Moreover, Naturex takes affirmative steps to guarantee the "quality control" of products containing Svetol by actively testing the products to ensure compliance with its quality standards. *See* Ex. A.  Naturex also has legal control and audit rights over documents relating to sales of products containing Svetol. *See* Ex. A.  On information and belief, the Labrada Defendants and Naturex have entered into an agreement that is substantially similar to the one that is available on the SEC's website at the URL address referenced in the below footnote.[16]

---

[14] *See* LinkedIn: Naturex, https://www.linkedin.com/company/naturex.

[16] Exhibit A is a copy of a Svetol licensing agreement that is published online through

First Amended Class Action Complaint

### xiv.    Defendant Interhealth Nutraceuticals, Inc.

64.    Defendant Interhealth Nutraceuticals Incorporated ("Interhealth") is a California Corporation with its principal place of business at 5451 Industrial Way, Benicia, California 94510. Interhealth develops, manufactures, promotes, markets, distributes, and/or sells Supercitrimax® and the Labrada Garcinia Cambogia with Supercitrimax® product across the United States, including to hundreds of thousands of consumers in California.

65.    According to its website, "InterHealth Nutraceuticals specializes in researching, developing, marketing and distributing proprietary branded nutraceutical ingredients. InterHealth ingredients are sold worldwide to manufacturers of dietary supplements and functional foods & beverages." Interhealth is the owner of the "Supercitrimax" trademark.

66.    Interhealth's Supercitrimax® trademark and logo appear on the bottles of the Labrada Garcinia Cambogia. A copy of a standard Interhealth trademark licensing agreement is available online and attached hereto as Exhibit B.   The licensing agreement shows that Interhealth maintains a high degree of control over the content that appears on the labels and packaging of products containing its Supercitrimax ingredient. Interhealth must provide written approval of the packaging before any supplement containing Supercitrimax can be sold in commerce. Moreover, Interhealth takes an active role in marketing the products by providing marketing materials to the supplement companies that sell products containing Supercitrimax.   *See* Ex. B. Plaintiffs are informed and believe that the Labrada Defendants have entered into an agreement with Interhealth that is substantially similar to the one shown in Exhibit B.

---

the SEC's EDGAR search database, *available at* http://www.sec.gov/Archives/edgar/data/1527613/000129460614000146/exhibit103.htm

FIRST AMENDED CLASS ACTION COMPLAINT

## THE PRODUCTS

67.    Labrada began selling weight-loss supplements containing Garcinia Cambogia and Green Coffee Bean Extract sometime around 2012 under its "Wellness Line" brand of products. Each of the Labrada Products at issue in this complaint sell at a retail price of approximately $19.99.

68.    For purposes of this section, each statement that appears in quotation marks ("") below create affirmative representations about the Products and also create express and implied warranties that were relied on by Plaintiff and the Class members in deciding to purchase the products.

69.    These statements will from now on be referred to in this Complaint as the "Express Warranties" and they also form the basis of plaintiffs' consumer fraud and misrepresentation causes of action.

### A. The Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER.



First Amended Class Action Complaint

70.     The front label of the Labrada Green Coffee Bean Extract deceptively states that the product is a "Fat Loss Optimizer" that is "From the Makers of LEAN BODY." The front label further states that the product contains "Svetol®, 45% Chlorogenic Acid," and is "Stimulant Free."

71.     The side-label of the Product states "**Green Coffee Bean Extract** is a natural powder extract from unroasted coffee beans. Green Coffee Bean Extract is rich in natural compounds, such as chlorogenic acids, that are known to have health benefits and to influence glucose and fat metabolism."

FIRST AMENDED CLASS ACTION COMPLAINT

72.    The side-label further states that "Recent peer-reviewed published studies have found that Green Coffee Bean Extract" does the following:

- "Helps Support Significant Fat Loss." and
- "Contains Natural Anti-Oxidant Properties"

73.    Below these statements is a "**References**" section that is surrounded by a bright red rectangle that cites the following studies that purportedly support the product's weight-loss benefits:

a) "Vinson JA, et al. Diab. Metab. Snyder & Obes. Jan 2012"

b) "Farah A, et al. Jour of Nutr. Dec. 2008"

74.    The back label of the Labrada Green Coffee Bean Product states "Green Coffee Bean Extract: 400 mg," then below that statement reads "Svetol®** Standardized to 45-50% total Chlorogenic Acids."

75.    The back label then has a "Other Ingredients" section that reads "Gelatin, Maltodextrin, Magnesium Stearate, Silica, Sodium Copper Chlorophyllin, and titanium dioxide." In bold-face typed capital letters on the back label appear the statements:

- **"ZERO FILLERS"**
- **"ZERO BINDERS"**
- **"ZERO ARTIFICIAL INGREDIENTS."**

76.    Each of the above-quoted statements are false, misleading, deceptive, and unlawful for the reasons explained herein. Moreover, each of the above-quoted statements create express or implied warranties and Defendants have breached said warranties for the reasons described herein.

### B. The Labrada Garcinia Cambogia DUAL ACTION FAT BUSTER

77.    The front label of the Labrada Garcinia Cambogia states that the product is a "**Dual Action Fat Buster**" that:

i.   "Increases Fat Burning,"
ii.  "Curbs Appetite to Aid Weight Loss,"

78.    The front label further says that the Product is "From the Makers of LEAN

- 28 -

1  BODY" and is made with "Supercitrimax® 60% HCA."



FIRST AMENDED CLASS ACTION COMPLAINT

79.     The Labrada Garcinia Cambogia side label states that "Labrada Garcinia Cambogia with Super CitriMax® is a Dual Action Fat Buster" and "Studies suggest that HCA may inhibit body fat formation and suppress appetite." The label further states, "Use of 2800-3000 mg/day of HCA for 8 weeks has been shown to:"

- • "Reduce body weight"
- • "Curb appetite and food intake"
- • "Boost fat burning during exercise and enhances glycogen synthesis"

80.     The side label also contains a "References" section that cites to the following three publications:

- • "Preuss HG, Rao CV, Garis R., et al., *Journal of Medicine* 2004; 35 (1-6):33-48."
- • "Downs BW, Bagchi M. Subbaraju GV, et al. Mutation Research 2005; 579 (1-2): 149-162."
- • "Chen IS, Haung SW Lu HC, et al. British Journal of Nutrition. Apr. 2012; 107(7): 1048-1055."

81.     The side label further features the **"SuperCitrimax"** logo next to a statement saying that "Super CitriMax® is a registered trademark of Interhealth N.I."

82.     The back label of the Labrada Garcinia cambogia Product states "Garcinia Cambogia Extract: 1560mg," then below that statement reads "standardized minimum 60% (-)- Hydroxycitric acid (HCA) 936 mg."

83.     The back label then has a "Other Ingredients" section that reads "Hypromellose (capsules)," and "Titanium Dioxide."

84.     In bold-face typed capital letters on the back label appear the statements:
- • **"ZERO FILLERS"**
- • **"ZERO BINDERS"**
- • **"ZERO ARTIFICIAL INGREDIENTS."**

First Amended Class Action Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



85.   The back label further states that the Product is "Made in the USA" next

FIRST AMENDED CLASS ACTION COMPLAINT

1    to a picture of an American Flag.

2        86.     Each of the above-quoted statements are false, misleading, deceptive, and

3   unlawful for the reasons explained herein. Moreover, each of the above-quoted

4   statements create express or implied warranties and Defendants have breached said

5   warranties for the reasons alleged herein.

6            **THE DECEPTIVE LABELING OF THE LABRADA PRODUCTS**

7       ***A. Reasonable Consumers Would Be Deceived If They Knew the Truth
8           About Labrada's "References"***

9        87.     All competent and reliable scientific studies conclude that the active

10   ingredients in the Products do not provide the touted weight loss benefits. In an attempt

11   to conceal the truth about their supplements, Defendants have misled consumers by

12   stating or implying that Labrada Garcinia Cambogia is backed by clinical studies in the

13   "references" section of the label. But the only clinical studies supporting the Products

14   are either irrelevant, wholly unreliable, or conducted by Defendants themselves. If

15   Plaintiffs and the class knew that the studies supporting the products were conducted

16   by biased researchers or that the underlying data was manipulated or fraudulently

17   presented, they would not have purchased the Products. . Moreover, the two studies

18   Defendants rely on do not support the advertising claims Defendants made about the

19   products.

20       ***B. SuperCitrimax Garcinia Cambogia Is Not an Effective "Fat Buster"***

21        88.     A significant *Garcinia*/HCA weight loss study was published in 1998 by

22   a group of researchers at Columbia University's Obesity Research Center that was led

23   by Dr. Heymsfield and published in the *Journal of the American Medical Association*.[17]

24

25 [17] S.B. Heymsfield, *et al.,* "Garcinia Cambogia (Hydroxycitric Acid) As a Potential
    Antiobesity Agent: A Randomized Controlled Trial," *J. Amer. Med. Assoc.*
26     280(18):1596-600 (1998). *Full text available at*
27     http://jama.jamanetwork.com/article.aspx?articleid=188147. (Accessed October 14,
    2015).
28

FIRST AMENDED CLASS ACTION COMPLAINT

This study was, and remains, one of the longest duration (12 weeks) and largest (135 subjects divided equally into placebo and control groups) randomized double-blind clinical trials of *Garcinia cambogia.*

89.     The study found that a *Garcinia* extract failed to produce a significant loss of weight and fat mass beyond that observed with placebo.[18]

90.     *The Heymsfield* study has stood the test of time. In 2011, it was one of only 12 clinical trials deemed worthy of inclusion in a landmark meta-analyses of supplements like *Garcinia cambogia* and is assigned the highest Jadad score[19] of all included studies.[20,21]

91.     In 2004, Max Pittler and Edzard Ernst, complementary medicine researchers at the universities of Exeter and Plymouth, published a systematic review of prior meta-analyses[22] and clinical trials of a variety of over-the-counter weight loss aids in *The American Journal of Clinical Nutrition.*  The results indicated that none of the weight loss aids worked, including the *Garcinia cambogia* products reviewed.

---

[18]  In fact, the data suggests that the placebo group, on average, consistently lost <u>more</u> weight than the *Garcinia* treatment group across the entire time course of the study.

[19]  "Jadad score" is a benchmark measuring the likelihood of bias in clinical trials, with higher numbers indicating lower likelihoods of bias.  For a meta-analysis, Jadad scoring is carried out by a panel of scientists who are themselves blinded as to the authorship of articles.  A.R. Jadad, R.A. Moore, *et al.,* "Assessing the Quality of Reports of Randomized Clinical Trials: is Blinding Necessary?" *Controlled Clinical Trials* 17(1):1-12 (1996). http://goo.gl/rdsRW3 .

[20]  *See* Table 1 *in* I. Onakpoya, *et al.,* "*The Use of Garcinia Extract (Hydroxycitric Acid) as a Weight Loss Supplement: A Systematic Review and Meta-Analysis of Randomised Clinical Trials,"* J. OBESITY (2011), http://www.hindawi.com/journals/jobe/2011/509038/.

[21]  Heymsfield recently defended his results and stated that marketers of *Garcinia cambogia* are "weaving a story with obscure facts.  Maybe each fragment has some validity, but if you wind it together it makes no sense at all."  *See* "*The Claims Make this Supplement Tempting, But They're Untrue*," CONSUMER REPORTS (Aug. 10, 2015)

[22]  A meta-analysis contrasts and combines results from different studies in an attempt to identify   patterns among study results, sources of disagreement, and other relationships between the studies.

FIRST AMENDED CLASS ACTION COMPLAINT

Moreover, adverse events were reported in the *Garcinia* trials reviewed.  The report concluded that "none of the reviewed dietary supplements," which included Garcinia cambogia, "can be recommended for over-the-counter use."[23]

92.    Since hydroxycitric acid reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of hydroxycitric acid on appetitive variables. The active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change. This study does not support a satiety effect of hydroxycitric acid.[24]

93.    A study was conducted to assess the effects of acute hydroxycitric acid supplementation on substrate metabolism at rest and during exercise in humans. Hydroxycitric acid, even when provided in large quantities, does not increase total fat oxidation in vivo in endurance-trained humans.[25]

94.    Meta-analyses of research on *Garcinia cambogia* and/or HCA have evaluated all known published credible human scientific studies. The meta-analyses uniformly conclude that HCA-containing supplements, such as Labrada's Garcinia Cambogia Product, have little or no positive effect on weight loss in healthy individuals.

**C. Green Coffee Bean Extract Is Not an Effective Fat Loss Optimizer**

95.    A study in the *Journal of Agricultural and Food Chemistry* found that the main ingredient in Svetol®- chlorogenic acid- was not effective when given to mice over a 12-week period. In fact, taking the compound gave the mice early symptoms of

---

[23] M.H. Pittler & E. Ernst, "*Dietary Supplements for Body-Weight Reduction: A Systematic Review*," Amer. J. of Clin. Nutr. (May 2004).

[24] Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. *Physiol Behav* 2000, 71:87-94.

[25] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)- hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

First Amended Class Action Complaint

diabetes.[26] Moreover, "A meta-analysis a few years ago combined the results from three small, short-term trials. The authors found that green coffee extract was associated with losing about 5 pounds. But this slimming effect vanished when the authors analyzed the two studies that used the type of supplement recommended by Dr. Oz — green coffee extract enriched with chlorogenic acid."[27]

### D. Labrada Misrepresents the Quality of the Products

96.     In 2013, a consumer advocacy website that performs independent testing of consumer goods published a review of different Garcinia Cambogia supplements. Fourteen products were tested; of those products did not pass, according to the group Consumerlab.com. Labrada Nutrition's SuperCitrimax® brand of Garcinia Cambogia, lot # 80310513, was reportedly among those that did not pass.

97.     According to the consumerlabs.com report:

> Retesting of a dietary supplement reported in October to contain significantly less of a key ingredient than listed on its label corroborates the original findings from ConsumerLab.com. The product, Labrada Nutrition Garcinia Cambogia, was one of six Garcinia supplements found by ConsumerLab.com to contain significantly lower amounts of HCA, a key natural component of Garcinia, than expected from labels. Labrada Nutrition challenged ConsumerLab.com's results based on its own tests suggesting the product contained more HCA than reported by ConsumerLab. However, the retesting last week found just 49% of the listed amount of HCA, even less than the 60% found earlier by ConsumerLab.[28]

98.     Plaintiffs have also sought independent testing of the Labrada Garcinia

---

[26] *Supplementation of a High-Fat Diet with Chlorogenic Acid Is Associated with Insulin Resistance and Hepatic Lipid Accumulation in Mice*, 61 J. AGRIC. FOOD CHEM. 4371–4378 (2013).

[28] *Retesting Confirms Lack of Ingredient in Garcinia Cambogia Supplement* Consumerlab.com (June 2, 2016), *available at* https://www.consumerlab.com/news/Labrada_Garcinia_Retest/12_6_2013/

FIRST AMENDED CLASS ACTION COMPLAINT

Cambogia product from GAAS Analytical in Tucson, Arizona. A test was performed on Labrada Nutrition's Garcinia Cambogia Lot Number A105390815, Exp: 08/18 to measure the presence of HCA. The test results show that the product only contains 49.59% HCA.  The standard deviation of the test was 8.46%. *See* Exhibit C.

99.    Plaintiffs believe that after an opportunity for further investigation and discovery, the factual record will likely show that the SuperCitrimax ingredient and the Labrada Garcinia Product has contained varying levels of HCA throughout the class period and Defendants' claim that the products are made from "standardized HCA" is actually false and likely to mislead reasonable consumers.

100.   Plaintiffs also allege that after further investigation and discovery, Plaintiff will have evidence to show that the Labrada Green Coffee bean Product also contains less than the advertised amount of the active ingredients.

### E. False Claims that Labrada Products contain "Zero Binders, Zero Fillers and Zero Artificial Ingredients"

101.   The Labrada Garcinia Cambogia Product contains one or more artificial ingredients. Specifically, the Supercitrimax® ingredient is processed and manufactured by artificial means that use chemical additives and solvents like ammonium chloride. Moreover, the Supercitrimax® ingredient does not contain naturally occurring hydroxycitric acid (HCA), but rather an artificial form of HCA that synthetically binds hydroxycitric acid with potassium and calcium minerals. In addition, the "other ingredients" in the Product are artificial, fillers, and/or binders.

102.   "Hypromellose" is often used a binder in supplement products. Hypromellose is a synthetic polymer that does not occur naturally. Furthermore, the Labrada Garcinia Cambogia Product contains "titanium dioxide," which is often used a colorant in supplement products. Titanium dioxide in supplement products is often an artificial form called "nano-particle titanium dioxide" that is known to cause adverse health effects.

103.   Each of the other products also contain artificial ingredients like "Svetol®

Green Coffee Bean"Gelatin," "Silica," "Magnesium Stearate," and "Sodium Copper Chlorophyllin." Each of the ingredients are recognized as artificial ingredients. With respect to Sodium Copper Chlorophyllin, the Code of Federal Regulations state "the color additive sodium copper chlorophyllin is a green to black powder prepared from chlorophyll by saponification and replacement of magnesium by copper. Chlorophyll is extracted from alfalfa (Medicago sativa ) using any one or a combination of the solvents acetone, ethanol, and hexane." 21 C.F.R. 73.125.

### F. Labrada Garcinia Cambogia Is Not "Made in the USA."

104.   The label of the Labrada Garcinia Cambogia Product deceptively claims that the Product is "Made in the USA" and makes this statement next to a picture of an american flag. However, most, if not all, of the ingredients in the Product are made in a foreign country and imported into the United States, including the Product's purported active ingredient SuperCitrimax®. Notably, Defendant Interhealth imports Supercitrimax® from Laila Nutraceuticals in India.

105.   Defendants' deceptive "Made in the USA" statement also violates California Business and Professions Code § 17533.7, which requires products with labeling statements like "Made in the USA" to contain "not more than 5 percent of the final wholesale value of the manufactured product." The foreign ingredients in the Labrada Garcinia Cambogia Product far exceed 5 percent of the final wholesale value of the Product.

### THE DOCTOR OZ EFFECT

106.   "Oprah Winfrey was the first person to dub Oz — then a frequent guest on her program — 'America's doctor.' Today, the Emmy Award-winning 'Dr. Oz Show' is one of the top-rated daily TV programs in the country, and Oz has authored a series of books, all of it turning him into a medical-media franchise."[29]

_____

[29] *How 'The Dr. Oz Effect' Has Hooked American Consumers*, NBC News (Jun. 18, 2014), *available at*

FIRST AMENDED CLASS ACTION COMPLAINT

107.    Indeed, Dr. Oz's "medical-media franchise" is highly profitable and highly diversified.

108.    In 2009, Defendants Dr. Oz, Sony, Harpo, and Zoco formed a partnership to produce *The Doctor Oz Show*. One reason for developing the show was to capitalize off the growing nutritional and health industry. The media Defendants sought to use Doctor Oz's credibility as a renowned surgeon at Columbia University to create a perception of trust amongst the show's viewers. But the primary purpose of the Doctor Oz Show— if not the only purpose— is to profit from advertising. However, *The Doctor Oz Show* has taken advertising to a whole new level.

109.    Instead of relying on traditional television commercial to generate revenue, The Doctor Oz Show has instead successfully implemented a marketing strategy called "branded integration" whereby specific brands or products are promoted on the show in a manner that is non-obvious to consumers. Aside from omitting the fact that products are actually being endorsed on the *Doctor Oz Show*, Dr. Oz affirmatively misrepresents the true commercial nature of the show by making statements like: "Please listen carefully. I don't sell this stuff. I'm not making any money on this. I'm not going to mention any brands to you either. I don't want you conned."

110.    But Doctor Oz is the one conning consumers— not to mention congress.

111.    Dr. Oz has promoted the Labrada Products and/or their proprietary ingredients, Supercitrimax® and Svetol® by using key language. An episode of The Doctor Oz show believed to have aired on October 29, 2012 stated the following:

DR. MEHMET OZ:
From African mango to green coffee, it's the most talked about topic. Everybody wants to know, *what's the newest, fastest fat buster*? People have been stopping me on the street, e-mailing me. Even my family is asking the

---

*See How the Doctor Oz Effect has Hooked American Consumers*, NBC News (June 18, 2014), *available at* http://www.nbcnews.com/health/health-news/how-dr-oz-effect-has-hooked-american-consumers-n134801?cid=eml_onsite

FIRST AMENDED CLASS ACTION COMPLAINT

same question: How can I burn fat without spending every waking moment exercising and dieting? I just don't have any time to put in more effort. Well, I can tell you You're hearing thanks to brand-new scientific research, *about a revolutionary fat buster*.

(Begin video clip:)

DR. MEHMET OZ: It's called garcinia cambogia, a pumpkin-shaped fruit that grows in Southeast Asia and India, and it just might be the most exciting breakthrough in natural weight loss to date.

Revolutionary new research says it could be the magic ingredient that lets you lose weight without diet or exercise.

*Dr. Harry Preuss* is at the forefront of the research.

DR. HARRY PREUSS: The ideal weight loss program is one in which you lose fat and you retain your muscle or even build it. With garcinia, we can make that happen. I tell women, "Look at your dress size. If your figure is getting much smaller, that's exactly what you want."

DR. RICH SCHECKENBACH: Garcinia is an *exceptionally effective fat buster*. It inhibits the production of fat in the body, and when the body is not making fat, it's burning fat.

*****

DR. MEHMET OZ: All right. So listen, anytime I see a scientist excited about this, and I  looked through some of this research, called these  scientists myself, I get excited. That's why garcinia cambogia makes sense to me, fascinates me. But I'm   going to say something for everyone to hear. Please listen carefully. I don't sell this stuff. I'm not  making any money on this. I'm not going to mention any brands to you either. I don't want you conned. I'm  going to walk you through, over the course of today's show, with exactly how you'd find this. But I've got  to say, I am intrigued by how this stuff works.  Explain to me how it's different from all of the other weight loss supplements that I've    heard of in the past, the ones that most of our audience knows about.

DR. JULIE CHEN: Well, I think it's great because *it's like the **dual-action fat buster*** because it suppresses appetite.

FIRST AMENDED CLASS ACTION COMPLAINT

DR. MEHMET OZ: Uh-huh.

112.   Reference to the "Dual-Action Fat Buster" and other claims about Garcinia Cambogia products being fat busters are endorsements of the "Labrada garcinia cambogia DUAL ACTION FAT BUSTER with SuperCitrimax®." The connection does not end there though.

113.   Dr. Harry Pruess, who was featured on the garcinia show is a paid researcher for Defendant Interhealth. In fact, the Labrada Garcinia cambogia bottle cites to an article that was authored by Dr. Harry Preuss. That study was paid for by Interhealth. The co-author of the study, Dr. Bagchi, is a paid researcher for Interhealth. Finally, the test subjects in one of Pruess' studies cited in the article were "male and female Sprague-Dawley rats"

114.   Finally, the Garcinia episode states the following:

DR. JULIE CHEN: You're looking for a percentage of this HCA, which is that ingredient in the rind, of at least 50 percent.

DR. MEHMET OZ: Uh-huh.   DR. JULIE CHEN: And because it actually is *absorbed better with mineral salts like potassium or potassium and calcium*, you want to make sure that that's included.

DR. MEHMET OZ: All right. So you want to have it say "K" or say "potassium" next to it.

****

DR. MEHMET OZ:

All right, so I've warned everybody that I'm not going to mention specific brands, but I do want to go through exactly what I would look for. You're going to look on that list of ingredients. There should be **ZERO FILLERS**. There should be **ZERO BINDER**, **ZERO ARTIFICIAL INGREDIENTS**, all right? Remember, you should never see my picture next to it, because I never sell it. You see my picture next to it, that means they're stealing from you. I guarantee, as

- 40 -

soon as the show airs, there are going to be thousands of fake ads out there. Don't go for those.

115.   Defendants' show's discussion of calcium and potassium is a clear reference to the Supercitrimax® ingredient, which is a patented form of Garcinia Cambogia bound to calcium and potassium.[30]   Moreover, the ZERO FILLERS, ZERO BINDER, ZERO ARTIFICIAL INGREDIENTS is a marketing slogan that appears on the labels of the Labrada products.  Thus, these are key phrases that Dr. Oz was either paid to, or which he knew he had to, say.

116.   Put simply, Dr. Oz has concealed his association with Defendant Interhealth.  As of the date of filing this complaint, the Dr. Oz website still has an episode posted that promotes Meratrim® weight-loss supplements.[31] The caption to the video reads: "Dr. Oz has a brand-new fat loss program that works faster than ever! Learn how to block fat stores, burn fat after eating and activate calorie-burning mechanisms easier than ever before. Plus, everything you need to know about Meratrim® supplements." Meratrim®, however, is trademarked proprietary ingredient that marketed and sold by Defendant Interhealth.[32]

117.   Dr. Oz's promotion of Svetol® Green Coffee Bean Extract, which is the key component of the Labrada product, is even more convincing.  During a 2012 episode of The Doctor Oz Show, Dr. Oz stated:

> **DR. OZ:**   Magic is make-believe, but this little bean has scientists saying they found a magic weight-loss cure for every body type. It's green coffee beans. When turned into a supplement this miracle pill can ***burn fat fast***. For anyone who wants to lose weight this is very exciting, and it's breaking news.

---

[30] *See, e.g.,*  U.S. Patent Nos. 6,875,891; 7,943,186; 7,858,128.
*See* Website for The Dr. Oz Show, [31] http://www.doctoroz.com/episode/triple-your-fat-loss.
[32]*See* Interhealth website, Meritrim,  http://www.interhealthusa.com/our-brands/meratrim/

- 41 -

FIRST AMENDED CLASS ACTION COMPLAINT

Millions of you love coffee. Now, you're going to love it for a whole other reason. A staggering newly released study reveals that the coffee bean in its purest, raw form may hold the secret to weight loss that you've been waiting for. The study, presented at a meeting of the world's largest scientific society, triggered unprecedented excitement for a weight loss study. It showed women and men who took green coffee extract lost an astounding amount of fat and weight. 17 pounds in 22 weeks by doing absolutely nothing extra in their day. Could this be the magic weight loss bean to help you melt away unwanted pounds that you've been waiting for?

Next, private doctor and certified nutritionist Lindsey Duncan is here with the findings.

**DR. LINDSEY DUNCAN:** You know, I usually don't recommend weight loss supplements. This one has got me really really excited. In the medical community, the weight loss community is all buzzing about this. Here's why. The recent study that you were talking about earlier, the participants took the capsules and they did nothing else. They didn't exercise, they didn't change their diet, they actually consumed 2,400 calories a day. They burned only 400 calories. Now, that's weight gain, not weight loss. They lost over 10% of their total body weight.

\*\*\*\*\*\*\*\*

**DR. OZ:**   How does it work?

**DR. LINDSEY:**   Well, it's amazing. It's what we call a triple threat. It's the chlorogenic acid that causes the effect, and it works 3 ways. The first way is it goes in and it causes the body to burn glucose, or sugar, and burn fat, mainly in the liver. The second way, and the most important way, is it slows the release of sugar into the bloodstream. When you don't have sugar building up in the bloodstream, you don't have fat building up. Sugar turns to fat. Everybody must remember that. When the 2 are combined together, you get this synergistic effect that basically burns and blocks and stops fat, but it also is natural and safe.

First Amended Class Action Complaint



118.   The "study" that Dr. Oz touted on this episode was the *Vinson* study that was retracted by the authors after data was found to be falsified. Thus, Dr. Oz' statement was false and a reasonable doctor would know it to be false.  Dr. Oz also knew consumers were likely to rely on his statements, as a scientist and medical doctor, to their detriment.

119.   Moreover, "Doctor" Lindsay Duncan was not even a real doctor. A complaint that was filed by the Federal Trade Commission against Lindsay Duncan and his affiliated companies alleged the following:

> Through Duncan's appearances on "The Dr. Oz Show" and their experience selling dietary supplements and food products, Defendants were aware of the "Oz effect," a phenomenon where discussion of a product or product ingredient on "The Dr. Oz Show" causes a large increase in demand for the product or products containing the ingredient.

> ***

> A producer with "The Dr. Oz Show" first contacted Duncan about appearing as a guest to discuss GCBE in the morning of April 5, 2012. A Dr. Oz Show producer wrote: "We are working on a segment about the weight loss benefits

- 43 -

of green coffee bean and I was hoping that Lindsey Duncan might be available to be our expert. Has he studied green coffee bean at all? Would he be able to talk about how it works?"

At that time, Duncan had no familiarity with the purported weight-loss benefits of GCBE, nor did Defendants sell GCBE. Nevertheless, within a few hours, a senior member of the Defendants' public relations team replied: "Awesome! Thanks for reaching out, Dr. Lindsey does have knowledge of the Green Coffee Bean. He loves it!" Later that day, Defendants contacted a manufacturer of GCBE and, on or about the same day, submitted a wholesale order for GCBE raw material.

In the evening of April 5, 2012, a producer for "The Dr. Oz Show" emailed [Duncan]  a "very rough outline of the script" for the segment on GCBE shortly after a call between the producer and Duncan. The email stated that the script contained "some sample questions and [the producer's] sample answer s" based on the producer and Duncan's phone conversation. The draft also contained an introductory segment for Dr. Oz stating that "You may think magic is make believe – but this bean (hold coffee bean) has scientists saying . . . they found the magic weight loss cure for every body type. As a supplement, this miracle pill can burn fat fast! It's green coffee beans. For those with fat all over and anyone who wants to lose weight – this is very exciting – breaking news!"

[Duncan] edited the script by, among other things, adding language in which Duncan would advise viewers that they could find green coffee bean capsules online by typing the words  "Pure Green Coffee Bean Capsules" into their web browsers. The Defendants also added language in which Duncan would advise viewers to "take two 400 mg vegetarian capsules." Duncan rehearsed his delivery of the script during the days prior to taping the GCBE segment.[33]

120.   The FTC complaint also noted **evidence of Payola** on *the Doctor Oz Show*. "In multiple instances following Duncan's appearances on television programs, Defendants sent gift cards of more than $100 in value, or complimentary shipments of

---

[33] *See* Complaint, *Federal Trade Commission v. Genesis Today et al.*, Case 1:15-cv-00062 (W.D. Tex. Jan. 26, 2015), *available at* https://www.ftc.gov/system/files/documents/cases/150126lindduncmpt.pdf

FIRST AMENDED CLASS ACTION COMPLAINT

their products, to the producers and staffs of various television shows, including 'The Dr. Oz Show' and 'The View.' Defendants also sent gift cards, worth several hundred dollars each, to four individuals associated with 'The Dr. Oz Show' and 'The View' as holiday presents in December 2011. At least one person returned the gift."

121.    What the FTC action may have missed, however, is the fact that Lindsay Duncan and the Media Defendants were promoting not only "pure green coffee," but also the Svetol® branded ingredient in Labrada products.  An archived webpage of Doctoroz.com that was captured following Duncan's appearance on the show in April specifically states the following:

> When purchasing supplements, make sure you look at the list of ingredients. When looking for a green coffee bean supplement, it should contain the chlorogenic acid extract, which can be listed as any of the following:
>
> GCA® (green coffee antioxidant)
> Svetol®
>
> Also, look for a capsule that contains at least 45% chlorogenic acid. More than 45% is okay, but pills with less than this amount have not been tested in studies that demonstrate weight loss. If you are going to take green coffee bean, the recommended dosage is 400mg, three times a day – 30 minutes before each meal. [34]

122.    Following the April episode that featured Green Coffee Bean Extract, Doctor Oz did a second show about green coffee bean extract to defend against the criticism he received from the first show. During this second episode, he conducted his own study on 100 of his audience members. This "study" was modeled after the now-retracted *Vinson* study.

---

[34] *See* Fact Sheet: Green Coffee Bean that was posted to Doctoroz.com on April 26, 2012, https://web.archive.org/web/20120913043020/http://www.doctoroz.com/videos/fact-sheet-green-coffee-bean?

FIRST AMENDED CLASS ACTION COMPLAINT

123.   Even more notable is that it appears that Doctor Oz specifically promoted Svetol® on-air during this second broadcast. Another archived webpage from Doctoroz.com has a screen clip from the actual episode showing that the word "Svetol" appeared on screen.[35]

124.   So why would Dr. Oz promote brands like Labrada, Supercitrimax, and Svetol®? Maybe it is because a member of *The Doctor Oz Show* medical advisory board is also a paid spokesperson for Defendant Naturex.[36] That same spokesperson for Naturex is also Doctor Oz's business partner in a website venture called sharecare.com. Defendants Sony, Harpo, and Zoco also join Doctor Oz as co-owners of the Sharecare website.   And, on information and belief, Dr. Oz and the Media Defendants were compensated through sponsorship agreement(s) to promote these products through the use of key language that would drive consumers to purchase the sponsors' products.

125.   In the wake of Doctor Oz's Green Coffee fiasco, a statement submitted by a majority of the Commissioners opined that Dr. Lindsay's speech on the *Doctor Oz Show* constituted misleading commercial speech that has no first amendment protections.[37]

## **TOLLING THE STATUTE OF LIMITATIONS**

126.   **Delayed discovery.** Plaintiff and the Class are laypersons, lacked the knowledge and experience to understand how the Products' labels were deceptive or false, and information regarding the false or deceptive advertising was solely within Defendants' possession and control. Thus, the delayed discovery exception postpones accrual of the limitations period for all members of the putative classes.

---

[35]*See*
http://web.archive.org/web/20121105205629/http://www.doctoroz.com/episode/green-coffee-fat-burner-works?video=14493
[36] http://www.doctoroz.com/medadvisoryboard/chris-kilham
[37]*See*
https://www.ftc.gov/system/files/documents/public_statements/620651/150126linddunstmter-jb-tm.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

127. **Fraudulent concealment.** Additionally, or in the alternative, Defendants were constructively and actually aware that the Products were ineffective for their advertised use. Nevertheless, Defendants continued to sell the Labrada Products. Therefore, at all relevant times Defendants had a duty to inform consumers that the Products were not effective at providing the advertised weight-loss benefits, but Defendants knowingly concealed that fact from members of the putative classes herein. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

128. **Continuing violation.** Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for all members of the putative classes until Defendants' unlawful advertising and labeling is corrected.

## CLASS ACTION ALLEGATIONS

129. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek certification of the following Classes (or alternative Classes or Subclasses), for the time period from when the Labrada Products first entered into the stream of commerce until the present  ("Class Period"), as initially defined as follows:

**The Nationwide Garcinia Class**

All persons in the United States who purchased Labrada Garcinia Cambogia for personal and household use and not for resale during the Class Period.

**The Nationwide Green Coffee Class**

All persons in the United States who purchased Labrada Green Coffee Bean Extract for personal and household use and not for resale during the Class Period.

**The California Garcinia Class**

All persons in the United States who purchased Labrada Garcinia Cambogia for personal and household use and not for resale during the Class Period.

**The California Green Coffee Class**

First Amended Class Action Complaint

All persons in the United States who purchased Labrada Green Coffee Bean Extract for personal and household use and not for resale during the Class Period.

**The New York Garcinia Class**

All persons in New York and states with substantially similar laws who purchased Labrada Garcinia Cambogia for personal and household use and not for resale during the Class Period.

**The New York Green Coffee Class**

All persons in New York and states with substantially similar laws who purchased Labrada Green Coffee Bean  Extract for personal and household use and not for resale during the Class Period.

130.   The Classes and Subclasses described in this complaint will jointly be referred to as the "Class" or the "Classes" unless otherwise stated, and the the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

131.   Plaintiffs and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclassses or limitation to particular issues as discovery and the orders of this Court warrant.

132.   Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

133.   The proposed Classes are so numerous that individual joinder of all the members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiffs believe the total number of Class members is at least in the hundreds of thousands and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of

FIRST AMENDED CLASS ACTION COMPLAINT

the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

134.   Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Classes as a whole.  In particular, Defendants have failed to disclose the true nature of the Products being marketed as described herein.

135.   There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

      a.   Whether Defendants breached any express warranties made to Plaintiff and the Class;

      b.   Whether Defendants breached an implied warranty of merchantability made to Plaintiff and the Class;

      c.   Whether Defendants were unjustly enriched by their conduct;

      d.   Whether Defendants engaged, and continue to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of Labrada Products;

      e.   Whether Defendants violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes; and

      f.   Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

136.   Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning the Products and purchased the Products based on those representations.

First Amended Class Action Complaint

1    137.   Plaintiff will fairly and adequately represent and protect the interests of

2    the Classes.   Plaintiff has retained counsel with substantial experience in handling

3    complex class action litigation in general and scientific claims specifically, including

4    for dietary supplements.   Plaintiff and her counsel are committed to vigorously

5    prosecuting this action on behalf of the Classes and have the financial resources to do

6    so.

7    138.   Plaintiffs and the members of the Classes suffered, and will continue to

8    suffer harm as a result of the Defendants' unlawful and wrongful conduct.   A class

9    action is superior to other available methods for the fair and efficient adjudication of

10   the present controversy.   Individual joinder of all members of the Classes is

11   impracticable.  Even if individual Class members had the resources to pursue individual

12   litigation, it would be unduly burdensome to the courts in which the individual

13   litigation would proceed.  Individual litigation magnifies the delay and expense to all

14   parties in the court system of resolving the controversies engendered by Defendants'

15   common course of conduct.   The class action device allows a single court to provide

16   the benefits of unitary adjudication, judicial economy, and the fair and efficient

17   handling of all Class members' claims in a single forum.   The conduct of this action as

18   a class action conserves the resources of the parties and of the judicial system and

19   protects the rights of the class members.   Furthermore, for many, if not most, a class

20   action is the only feasible mechanism that allows an opportunity for legal redress and

21   justice.

22   139.   Adjudication of individual Class members' claims with respect to

23   Defendants would, as a practical matter, be dispositive of the interests of other

24   members not parties to the adjudication, and could substantially impair or impede the

25   ability of other class members to protect their interests.

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

## CLAIMS FOR RELIEF

## COUNT I

**CLAIM FOR FRAUD, DECEIT, AND SUPPRESSION OF FACTS**
**CAL. CIV. CODE §§ 1709-1711**
**AND THE COMMON LAW OF ALL STATES**
By All Named Plaintiffs
*-on behalf of-*
All Defined Classes
*-against-*
All Defendants

**Allegations Against The Labrada Defendants And Supplier Defendants**

140.   Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

141.   All Plaintiffs bring this Claim individually and on behalf of the members of all Classes against Defendants Lee Labrada, Labrada Bodybuilding Nutrition, Inc., and Labrada Nutritional Systems, Inc., Naturex, Inc., and Interhealth.

142.   All Defendants named in this Count have committed the requisite tortious actions giving rise to Plaintiffs' claims. Alternatively, Plaintiffs allege that the Labrada Defendants are primarily liable and that Naturex and Interhealth are liable by aiding and abetting the commissions of the Labrada Defendants' tortious conduct by providing them with substantial assistance and encouragement with knowledge of the Labrada Defendants' wrongful conduct.

143.   There are no material differences in the laws of the fifty states with respect to claims for fraud and deceit as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state law exists, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws

144.   Plaintiff brings this claim under alternate legal theories sounding in both

FIRST AMENDED CLASS ACTION COMPLAINT

tort and contract, as to the extent allowable by Federal Rule of Civil Procedure 8(d)(2).

*\*\*False Statements of Material Facts\*\**

145.   The Labrada Defendants made material representations to Plaintiff and the Class members that the Labrada Products are effective at providing weight loss benefits capable of "busting their body fat" and other representations described in this complaint.   However, the Products are not effective at providing the advertised weight loss results because the ingredients in the Products are ineffective, as established by numerous reliable and credible studies, and the ingredients cannot provide the advertised weight-loss benefits.

146.   Defendants made material representations to Plaintiffs and the Class members that the products contain "Zero Fillers, Zero Binders, and Zero Artificial Ingredients" when in fact the products do contain fillers, binders, and artificial ingredients.

147.   Defendants made material representations to Plaintiffs and the Class members that the products contained "Standardized" amounts of ingredients when in fact they do not.

148.   Defendants' actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 because Defendants did the following with the intent to deceive Plaintiff and Class member and to induce them to enter into their contracts:

a. Suggested that the Products are effective as a weight-loss aid, even though Defendants knew that the Products are not;

b. Positively asserted that the Products are made with no artificial ingredients, binders, and fillers, when in fact they are not;

c. Suppressed the true nature of the Products from Plaintiff and Class members; and

d. Promised they would supply the Products with "standardized" ingredients even though the products do not contain standardized ingredients.

FIRST AMENDED CLASS ACTION COMPLAINT

149.    Defendants' actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Defendants willfully deceived Plaintiff and Class members with intent to induce them to alter their positions to their detriment by purchasing defective Products.

*\*\*Fraud by Concealment and Omission of Material Facts\*\**

150.    Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Classes to purchase the Products. Specifically, Defendants actively concealed the truth about the products by not disclosing all facts about the studies supposedly supporting the Products or by making such studies difficult or impossible to discover because many of the studies are only accessible by means of a paid subscription to the "journal" or other publication that prints the full version of the studies.

151.    Plaintiffs and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

152.    Plaintiffs and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

153.    Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and the class members as they would not have purchased the products at all if all material facts were properly disclosed.

*\*\*Knowledge of Falsities\*\**

154.    Defendants, at all times mentioned herein, had knowledge that that their representations concerning the Products are false and misleading because the Products are ineffective at providing the advertised weight-loss benefits. Defendants, at all times mentioned herein, had knowledge that the ingredients are ineffective because Defendants Interhealth, Naturex,  and/or  other ingredient suppliers essentially made up the science supporting the active ingredients in the Labrada Products through manipulation of  "clinical studies" and the Labrada Defendants acted with reckless disregard with respect to discovering the truth about the studies.

- 53 -

FIRST AMENDED CLASS ACTION COMPLAINT

*\*\*Intent to Defraud and Intent to Induce Reliance\*\**

155.   Defendants made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiff and the Class to purchase the Labrada Products because the Defendants sought to reap enormous profits from the sales of the falsely labeled Products and the fraudulent advertising and promotion of the Products was essential to Defendants' ability to profit from the sales of the Products.

156.   Defendants further withheld and omitted material information about the Products with the intention of inducing and persuading Plaintiff and the class to purchase the Labrada Products as a part of their unlawful scheme.

*\*\*\*Intent to Defraud a Class of Persons and the Public\*\*\**

157.   "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711.

158.   Defendants are responsible for their material misrepresentations and omissions described above even if they did not intend any particular Plaintiffs or any particular class member to rely on the misrepresentations because Defendants made the representations to groups of persons and the public at large, intending or reasonably expecting that it would be repeated to Plaintiffs and the Class members who are consumers that were actually misled into purchasing the products.

*\*\* Justifiable Reliance\*\**

159.   Plaintiffs and the Class, by purchasing the products, justifiably relied on Defendants' false and misleading statements and misrepresentations, and on the absence of the material information that Defendants omitted. If Plaintiffs and the class would have known the truth concerning the false representations and omissions, they would not have purchased the Labrada products at all because the Labrada products are essentially "worthless" in that they have a fair market value of $0.00.

*\*\*Injury and Actual Damages\*\**

160.   As   a   direct   and   proximate   result   of   Defendants'   intentional

FIRST AMENDED CLASS ACTION COMPLAINT

misrepresentations and deceptive omissions, Plaintiff and the members of the Class were induced to pay for worthless products.

161.   As a direct and proximate result of Defendants' intentional misrepresentations and deceptive omissions, Plaintiff and the members of the Class detrimentally relied on Defendants' misrepresentations and deceptive omissions in that they consumed worthless products that have no positive health benefits and in the fact that the products are potentially dangerous to their health.

162.   Plaintiffs and the Class bring this claim for intentional misrepresentation based on alternate legal theories sounding in both tort and contract.

163.   Plaintiffs and the Class were damaged through their purchase and use of the Products. Plaintiff and the Class suffered harm in that they suffered actual damages in the amount of what they paid for the Products subtracted by the fair market value of the products are actually worth.

164.   The Labrada Products are worthless in that they have a fair market value of zero. Therefore, Plaintiffs and the Class have suffered actual damages in the amount of the purchase price paid for the products.

165.   Alternatively, Plaintiff and the class allege that the Labrada Products are priced at a premium in comparison to other weight-loss products and that the premium price is commanded in the marketplace as a direct result of the false and misleading advertising tactics described in this complaint. This alternative premium-price measure of damages can be calculated on a uniform class-wide basis and Plaintiff and the classes out-of-pocket loss is the amount of the premium price that the Products command.

*\*\*Fraudulent Inducement\*\**

166.   For Plaintiffs' alternate intentional misrepresentation claim sounding in contract, Plaintiff suffered harm in that she has actual economic damages for Defendants' breach of contract by way of fraud and Plaintiffs allege that the proper measure of damages would be a full refund of the class members' purchase price of the products because the sales contracts are voidable as a result of fraudulent inducement.

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs were induced by fraud when entering into the contract and would not have purchased the products had they known the truth. Therefore, Plaintiffs and the Class repudiate their purchase contracts and pray for legal or equitable restitution to the extent that defendants have been unjustly enriched by wrongfully obtaining Plaintiffs and the class members' purchase money.

167.   For Plaintiffs' alternative intentional misrepresentation claim based in tort, Plaintiffsand the class suffered harm and seek the actual damages suffered because they detrimentally relied on Defendants' false statements of material facts by expending their time purchasing the products and they suffered a personal injury in that they consumed Products that are worthless and potentially dangerous. This chain of events is collateral to Plaintiffs' purchase of the Products and gives rise to a separate tort claim as it affects a separate primary right.

168.   Plaintiffs and the class have all suffered the threshold amount of harm to state a claim for fraud, but in the event that the actual damages based on this tort theory cannot be determined on a class-wide basis, Plaintiffs and the Class will then seek nominal damages for their alternative intentional misrepresentation claim based on tort in a nominal amount, such $1.00,  for each purchase of the Labrada Products.

*\*\*Punitive Damages\*\**

169.   Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

FIRST AMENDED CLASS ACTION COMPLAINT

## ALLEGATIONS OF FRAUD, DECEIT, AND SUPPRESSION OF FACTS AGAINST THE MEDIA DEFENDANTS

170.   Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

171.   All Plaintiffs bring this Claim individually and on behalf of the members of all Classes against Defendants Dr. Oz, Sony, Harpo, Zoco, and EMV.

172.   There are no material differences in the laws of the fifty states with respect to claims for fraud and deceit as such claims arise from common law principles and duties. In the event the Court does find that a material difference in state law exists, then Plaintiff and the Class assert this Claim based on the laws of California and all states with substantially similar laws. Plaintiff and the Class reserve their right to amend the class definitions in this complaint to further define multistate classes consisting of persons in states that have substantially similar laws

173.   Plaintiff brings this claim under alternate legal theories sounding in both tort and contract, as to the extent allowable by Federal Rule of Civil Procedure 8(d)(2).

### **False Statements of Material Facts**

174.   Defendants made material representations to Plaintiff and the Class members that the Labrada Products are effective at providing weight loss benefits capable of "busting their body fat for good" and other representations described in this complaint.   However, the Products are not effective at providing the advertised weight loss results because the ingredients in the Products are ineffective, as established by numerous reliable and credible studies, and the ingredients cannot provide the advertised weight-loss benefits.

175.   Defendants made material misrepresentations to Plaintiff and the Class members that Dr. Oz does not endorse specific brands of products when in fact he did endorse the Labrada brand, the Supercitrimax® brand, and/or the Svetol® brand of weight loss products.

FIRST AMENDED CLASS ACTION COMPLAINT

*\*\*Material Statements of Fact and not Opinions\*\**

176.   Dr. Oz and the Dr. Oz Defendants claimed to have special knowledge about the weight loss supplements because Dr. Oz is renown doctor at the Columbia University School of Medicine. Defendants also claimed to have superior knowledge about the subject matter by hiring other doctors to disseminate false statements about the products.

177.   Plaintiff and the class members did not have the same superior knowledge about the products.

178.   Defendants made the representations described in this complaint as true representations, not casual expressions of belief, and did so in a way that declared the matter to be true.

179.   Defendants, through Dr. Oz's reputation as a renowned doctor at Columbia University School of Medicine, had reasons to expect that by disseminating undisclosed endorsements of weight loss products, including the Labrada Products, that Plaintiff and the Class would rely on their representations as material statements of facts and not opinions.

180.   Defendants' actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 because Defendants did the following with the intent to deceive Plaintiff and Class member and to induce them to enter into their contracts:

  a. Suggested that the Products are effective as a weight-loss aid, even though Defendants knew that the Products are not;

  b. Positively asserted that the Products are made with no artificial ingredients, binders, and fillers, when in fact they are not;

  c. Suppressed the true nature of the Products from Plaintiff and Class members; and

  d. Promised they would supply the Products with "standardized" ingredients even though the products do not contain standardized ingredients.

FIRST AMENDED CLASS ACTION COMPLAINT

181.   Defendants' actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Defendants willfully deceived Plaintiff and Class members with intent to induce them to alter their positions to their detriment by purchasing defective Products.

*\*Fraud by Concealment and Omission of Material Facts\*\**

182.   As set forth above, Defendants concealed material facts concerning the true nature of their Products, the endorsements of the products on *The Dr. Oz Show*, and the true nature of the clinical studies used in support of the weight-loss claims made on the product packaging and advertising. Defendants had a duty to make these disclosures based on their superior knowledge of the Products and the ingredients in the Products, as well as their affirmative disclosure of some facts and concealment of other material facts, thus making the partial disclosures deceptive.

183.   Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and members of the Classes to purchase the Products. Specifically, Defendants actively concealed the truth about the products by not disclosing all facts about the studies supposedly supporting the Products or by making such studies difficult or impossible to discover because many of the studies are only accessible by means of a paid subscription to the "journal" or other publication that prints the full version of the studies.

184.   Plaintiffs and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

185.   Plaintiffs and the Class suffered injuries that were proximately caused by Defendants' active concealments and omissions of material facts.

186.   Defendants' fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and the class members as they would not have purchased the products at all if all material facts were properly disclosed.

*\*\*Knowledge of Falsities\*\**

187.   Defendants, at all times mentioned herein, had knowledge that that their

- 59 -

representations concerning the Products are false and misleading because the Products are ineffective at providing the advertised weight-loss benefits. Defendants, at all times mentioned herein, had knowledge that the ingredients are ineffective because Defendants Interhealth, Naturex, and/or other ingredient suppliers essentially made up the science supporting the active ingredients in the Labrada Products through manipulation of "clinical studies" and the Media Defendants acted with reckless disregard with respect to discovering the truth about the studies.

188. Dr. Oz, as a renown surgeon at Columbia University and a sophisticated party with superior knowledge about the fields of science and medicine, knew that the representations were false or recklessly disregarded to truth about the weight loss products he endorsed, including the Labrada Products.

*\*Intent to Defraud and Intent to Induce Reliance\**

189. Defendants made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiff and the Class to purchase the Labrada Products because the Defendants sought to reap enormous profits from the sales of the falsely labeled Products and the fraudulent advertising and promotion of the Products was essential to Defendants' ability to profit from the sales of the Products.

190. Defendants further withheld and omitted material information about the Products with the intention of inducing and persuading Plaintiff and the class to purchase the Labrada Products as a part of their unlawful scheme to make money from the sales of the Products.

*\*\*Intent to Defraud a Class of Persons and the Public\*\**

191. "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711.

192. Defendants are responsible for their material misrepresentations and omissions described above even if they did not intend any particular Plaintiff or any particular class member to rely on the misrepresentations because Defendants made the

FIRST AMENDED CLASS ACTION COMPLAINT

1  representations to groups of persons and the public at large, intending or reasonably
2  expecting that it would be repeated to Plaintiff and the Class members who are
3  consumers that were actually mislead into purchasing the products.

4      193.   Dr. Oz made the representations to the television audience with the intent
5  that TV viewers and the news media would disseminate such information to the Class
6  members who did not hear or perceive the misrepresentations directly from *The Dr. Oz*
7  *Show*. Plaintiff and the Class members justifiably relied on all misrepresentations made
8  on *The Dr. Oz Show*, however, because the representations were repeated to Plaintiff
9  and the Class through the comprehensive marketing scheme described herein.

10              *** Justifiable Reliance***

11     194.   Plaintiffs and the Class, by purchasing the products, justifiably relied on
12  Defendants' false and misleading statements and misrepresentations, and on the
13  absence of the material information that Defendants omitted. If Plaintiff and the class
14  would have known the truth concerning the false representations and omissions, they
15  would not have purchased the Labrada products at all because the Labrada products are
16  essentially "worthless" in that they have a fair market value of $0.00.

17     195.   Plaintiffs justifiably relied on the statements made by Dr. Oz because he
18  assured consumers that he does not endorse a specific brand and because he has
19  specialized knowledge as a doctor at Columbia University School of Medicine.

20     196.   Plaintiffs and the Class also justifiably relied on the the material
21  misrepresentations made by all Defendants as described in this complaint because
22  Defendants used paid doctors like Harry Preuss to further the notion that the products
23  worked as advertised and touted the fact that the Products are supported by clinical
24  studies and scientific references that appear on the packaging of the Products and in
25  the advertising materials for the Products.

26              ***Injury and Actual Damages***

27     197.   As  a  direct  and  proximate  result  of  Defendants'  intentional
28  misrepresentations and deceptive omissions, Plaintiff and the members of the Class

FIRST AMENDED CLASS ACTION COMPLAINT

1    were induced to pay for worthless products.

2        198.   As   a   direct   and   proximate   result   of   Defendants'   intentional

3    misrepresentations and deceptive omissions, Plaintiffs and the members of the Class

4    detrimentally relied on Defendants' misrepresentations and deceptive omissions in that

5    they consumed worthless products that have no positive health benefits and in the fact

6    that the products are potentially dangerous to their health.

7        199.   Plaintiff and the Class bring this claim for intentional misrepresentation

8    based on alternate legal theories sounding in both tort and contract.

9        200.   Plaintiff and the Class were damaged through their purchase and use of

10   the Products. Plaintiff and the Class suffered harm in that they suffered actual damages

11   in the amount of what they paid for the Products subtracted by the fair market value of

12   the products are actually worth.

13       201.   The Labrada Products are worthless in that they have a fair market value

14   of zero. Therefore, Plaintiff and the Class have suffered actual damages in the amount

15   of the purchase price paid for the products.

16       202.   Alternatively, Plaintiff and the class allege that the Labrada Products are

17   priced at a premium in comparison to other weight-loss products and that the premium

18   price is commanded in the marketplace as a direct result of the false and misleading

19   advertising tactics described in this complaint. This alternative premium-price measure

20   of damages can be calculated on a uniform class-wide basis and Plaintiff and the classes

21   out-of-pocket loss is the amount of the premium price that the Products command.

22                          **Fraudulent Inducement**

23       203.   For Plaintiff's alternative intentional misrepresentation claim based in

24   tort, Plaintiff and the class suffered harm and seek the actual damages suffered because

25   they detrimentally relied on Defendants' false statements of material facts by

26   expending their time purchasing the products and they suffered a personal injury in that

27   they consumed Products that are worthless and potentially dangerous. This chain of

28   events is collateral to Plaintiff purchase of the Products and gives rise to a separate tort

First Amended Class Action Complaint

claim as it affects a separate primary right. Plaintiff and the class have all suffered the threshold amount of harm to state a claim for fraud, but in the event that the actual damages based on this tort theory cannot be determined on a class-wide basis, Plaintiff and the Class will then seek nominal damages for their alternative intentional misrepresentation claim based on tort in the amount of $1.00 for each purchase of the Labrada Products.

### **Punitive Damages**

204.   Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff's and Class members' rights and interests. Defendants' conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

### <u>COUNT III</u>

### CLAIM FOR NEGLIGENT MISREPRESENTATION

### THE COMMON LAW OF ALL STATES AND CAL. CIV. CODE § 1710(2)
By All Plaintiffs
-*on behalf of*-
All Classes
-*against*-
All Defendants

205.   Plaintiffs and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

206.   Defendants had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendants were in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members were justified., Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

FIRST AMENDED CLASS ACTION COMPLAINT

207.   During the applicable Class period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the alleged weight-loss benefits.

208.   Defendants made such false and misleading statements and omissions through a wide range of advertisement medium described herein, with the intent to induce Plaintiff and Class Members to purchase the Products.

209.   Defendants were careless in ascertaining the truth of its representations in that they knew or should have known that Plaintiff and Class Members would not realize the alleged benefits represented by Defendants.

210.   Plaintiffs and the Class Members were unaware of the falsity in Defendants' misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

211.   Plaintiffs and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

<u>**COUNT IV**</u>
**CLAIM FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*
By Plaintiff Veda Woodard
*-on behalf of-*
The Nationwide Classes and the California Classes
*-against-*
All Defendants

212.   Plaintiff Veda Woodard and the Nationwide and California Classes incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

213.   Plaintiff Woodard brings this claim on behalf of the Nationwide classes and California Classes against Defendants.

214.   California's Unfair Competition Law, Business and Professions Code §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."   For the reasons discussed above, Defendants have engaged in unfair,

FIRST AMENDED CLASS ACTION COMPLAINT

deceptive, untrue and misleading advertising, and continue to engage in such business conduct, in violation of the UCL.

215.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

**Unlawful**

216.   Defendants have violated the UCL unlawful prong in at least the following ways:

a.   By knowingly and intentionally concealing from Plaintiff and the other Class members that the Products cannot provide the advertised weight-loss benefits while obtaining money from Plaintiff and the Classes;

b.   By misrepresenting the nature of the Products and the Products' effectiveness at providing the weight-loss benefits;

c.   By misrepresenting the quality of the Products and that the Products have "Standardized" amounts of ingredients;

d.   By engaging in the conduct giving rise to the claims asserted in this complaint;

e.   By representing the Products as being "Made in the USA" in violation of California Business and Professions Code § 17533.7, which requires products with labeling statements like "Made in the USA" to contain "not more than 5 percent of the final wholesale value of the manufactured product."

f.   By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Labrada Products;

g.   By violating California Civil Code §§ 1709-1711 by suppressing material information about the Labrada Products;

- 65 -

FIRST AMENDED CLASS ACTION COMPLAINT

h.  By violating the CLRA, FAL, and the California Commercial Code for breaches of express and implied warranties.

i.  By violating the FCC's Payola rules.

217.  Such conduct is ongoing and continues to this date.

218.  Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

**\*\*Unfair\*\***

219.  The UCL also prohibits any "unfair"… business act or practice."

220.  Defendants' acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendants' business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace.  Such conduct is ongoing and continues to date.

221.  Plaintiff Woodard  also alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states resulting in harm to consumers.  Plaintiff assert violation of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of the UCL.  Such conduct is ongoing and continues to this date.

222.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

**\*\*Fraudulent\*\***

223.  The UCL also prohibits any "fraudulent business act or practice."

224.  Defendants' claims, nondisclosures (i.e., omissions) and misleading statements, as more fully set forth above, were false, misleading and/or likely to

FIRST AMENDED CLASS ACTION COMPLAINT

1   deceive a reasonable consumer within the meaning of the UCL.  Such conduct is

2   ongoing and continues to this date.

3      225.   Defendants' conduct caused and continues to cause substantial injury to

4   Plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result

5   of Defendants' unfair conduct.

6      226.   Defendants have thus engaged in unlawful, unfair and fraudulent business

7   acts and practices and false advertising, entitling Plaintiff and the Class to injunctive

8   relief against Defendants, as set forth in the Prayer for Relief.

9      227.   Pursuant to Business and Professions Code §17203, Plaintiff and the Class

10  seek an order requiring Defendants to immediately cease such acts of unlawful, unfair

11  and fraudulent business practices and requiring Defendants to engage in a corrective

12  advertising campaign.

13     228.   Plaintiff also seeks an order for the disgorgement and restitution of all

14  monies from the sale of the Products they purchased, which was unjustly acquired

15  through acts of unlawful, unfair, and/or fraudulent competition and attorneys' fees and

16  costs.

17
## COUNT V
## CLAIM FOR VIOLATIONS OF THE CLRA
### CAL. CIV. CODE §§ 1700, *et seq*.
By Plaintiff Veda Woodard
-*on behalf of*-
The Nationwide Classes and the California Classes
-*against*-
The Labrada Defendants and the Supplier Defendants

23     229.   Plaintiff Veda Woodard and the Nationwide and California Classes

24  incorporate by reference and re-allege each and every allegation set forth above as

25  though fully set forth herein.

26     230.   Plaintiff Woodard brings this claim on behalf of the Nationwide classes

27  and California Classes against the supplier defendants and the Labrada Defendants for

28  their violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§

- 67 -

FIRST AMENDED CLASS ACTION COMPLAINT

1750, *et seq.*

231.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

232.   Plaintiff is a "consumer," as defined by Cal. Civ. Code § 1761(d).

233.   By making affirmative misrepresentations about the weight-loss benefits of the products and by concealing material facts about the products and the studies supporting the efficacy claims about the products, Defendants engaged in deceptive business practices prohibited by the CLRA, Cal. Civ. Code § 1750, *et seq.*, including:

§ 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods or services by claiming that that the Products are "Made in the USA" when in fact they are not.

§ 1770(a)(4): Using deceptive representations or designations of geographic origin in connection with goods by claiming the Products are Made in the USA when in fact they are not.

1770(a)(5): Representing that goods have characteristics, uses, or benefits which they do not have by claiming that the products are effective as weight-loss aids and "fat busters" when in fact they provide no such benefits;

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another by claiming that the products contain "standardized" ingredients and have "zero fillers, zero binders, and zero artificial ingredients" when in fact such representations are not true.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised because Defendants knew that the Products could not provide the advertised benefits, but they chose to advertise and sell the Products to consumers.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not by using unstandardized ingredients that fluctuate in their quantity and quality.

234.   A reasonable consumer would not have purchased nor paid as much for the Products had Defendants disclosed the truth about the weight loss benefits of the

FIRST AMENDED CLASS ACTION COMPLAINT

products and the clinical studies supporting the products, as that information is material to a reasonable consumer.

235.    As a result of its violations of the CLRA detailed above, Defendants have caused and continues to cause harm to Plaintiff and members of the Class and, if not stopped, will continue to harm them. Had Plaintiff known the truth about the Products she would not have purchased the Products.

236.    In accordance with Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Defendants' violations of the CLRA.

237.    In addition, Plaintiff Woodard has mailed a notice and demand letter to Defendants more than 30 days prior to bringing this CLRA claim in this First Amended Complaint. Defendants have failed to take the corrective action requested in Plaintiff's demand letter and continue to falsely market and sell the Labrada Products.  Thus, Plaintiff Woodard seeks restitution, disgorgement of profits, actual damages, and punitive damages in accordance with the CLRA.

238.    A copy of Plaintiff Woodard's CLRA notice letter is attached to this complaint as Exhibit D.

239.    Plaintiff and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

240.    Plaintiff Woodard has attached a "venue affidavit" to this complaint, to the extent it is required in federal court, in accordance with California Civil Code Section 1781(e) attesting that Defendants are "doing business" in this County and that this County is the proper place for trial.

FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT VI**

**CLAIM FOR VIOLATIONS OF THE FALSE ADVERTISING LAW**

CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

By Plaintiff Veda Woodard

*-on behalf of-*

The Nationwide Classes and the California Classes

*-against-*

All Defendants

241.   Plaintiff Veda Woodard and the Nationwide and California Classes incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

242.   Plaintiff Woodard brings this claim on behalf of the Nationwide classes and California Classes against Defendants for their violations of California's False Advertising Law, Cal. Bus & Prof. Code §§ 17500, *et seq.*

243.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance upon Defendants' marketing claims.  Plaintiff used the Products as directed, but the Products have not worked as advertised, nor provided any of the promised benefits.

244.   Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq.* because Defendants advertised the Products Plaintiff purchased in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendants to be untrue or misleading.

245.   Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

246.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other

FIRST AMENDED CLASS ACTION COMPLAINT

1   act prohibited by law, including those set forth in the complaint.

2      247.   Plaintiff also seeks an order for the disgorgement and restitution of all

3   monies from the sale of the Products which were unjustly acquired through acts of

4   unlawful, unfair, and/or fraudulent competition and attorneys' fees and costs.

5   ### COUNT IV

6   ### CLAIM FOR BREACH OF EXPRESS WARRANTY

7   #### CAL. COMM. CODE § 2313

8   By Plaintiff Veda Woodard
    *-on behalf of-*
9   The Nationwide Classes and the California Classes
    *-against-*
10  The Labrada Defendants

11

12     248.   Plaintiff Veda Woodard and the California Classes incorporate by

13  reference and re-allege each and every allegation set forth above as though fully set

14  forth herein.

15     249.   Plaintiff Woodard brings this claim on behalf of the California Classes

16  against Defendants Lee Labrada, Labrada Bodybuilding Nutrition, Inc. and Labrada

17  Nutritional Systems, Inc. for their breaches of express warranties pursuant to California

18  Commercial Code § 2313.

19     250.   Defendants, in their capacity as manufacturers of the Products, expressly

20  warranted that the Products were fit for their intended purpose by making the Express

21  Warranties, as defined in this complaint.

22     251.   The foregoing representations were material and were a substantial factor

23  in causing the harm suffered by Plaintiff and the Class because they concerned alleged

24  efficacy of the Products regarding the ability aid with weight loss and bust body fat.

25     252.   These representations had an influence on consumers' decisions in

26  purchasing the Products.

27     253.   Defendants made the above representations to induce Plaintiff and the

28  members of Class to purchase the Products. Plaintiff and the Class members relied on

- 71 -

FIRST AMENDED CLASS ACTION COMPLAINT

1  the representations when purchasing Defendants' products.

2      254.   In fact, the Products do not conform to the Express Warranties because

3  each of the Express Warranties is false and misleading and the Products do not perform

4  as warranted.

5      255.   Plaintiff and the Class members were injured and continued to be injured

6  as a direct and proximate result of Defendants' breach because they would not have

7  purchased the Products or paid as much for the Products if the true facts had been

8  known.[38]

9      256.   Plaintiff and the Class bring this claim against Defendants in their

10  capacities as manufacturers of the Products with whom Plaintiff has not dealt with

11  directly. Therefore, Plaintiff and the Class were not required to notify Defendants of

12  their breaches of express warranties within a reasonable time. Plaintiff has notified

13  Defendants of their breaches via letters sent by certified mail, return receipt requested,

14  and allowed Defendants reasonable time to take corrective actions. Defendants failed

15  to take corrective action.

16                        **COUNT V**

17          **CLAIM FOR BREACH OF IMPLIED WARRANTY OF**

18                      **MERCHANTABILITY**

19                  **CAL. COMM. CODE § 2314**

20                  By Plaintiff Veda Woodard
                          *-on behalf of-*
21          The Nationwide Classes and the California Classes
                          *-against-*
22                  The Labrada Defendants

23      257.   Plaintiff Woodard and the California Classes incorporate by reference and

24  re-allege each and every allegation set forth above as though fully set forth herein.

25      258.   Plaintiff Woodard brings this claim on behalf of the California classes

26

27  ───────────────────
[38] Though, Plaintiff and the Class would still be interested in purchasing the Labrada
28  Products again if they were represented properly or truthfully.

                          - 72 -

1  against the Labrada Defendants.

2      259.   Defendants did so with the intent to induce Plaintiff and Class Members

3  to purchase the Products.

4      260.   At the time of Plaintiff and the class members' purchase, Defendants, by

5  their occupations as manufacturers of the goods, held themselves out as having special

6  knowledge or skill regarding the Products.

7      261.   Defendants breached the warranties implied in the contract for the sale of

8  the Products in that the Products:

9          a.  Were not of the quality as of other products generally acceptable in the

10            trade of weight-loss aids and/or supplement products;

11          b.  Were not fit for the ordinary purposes for which the Products were

12            intended because they provide no weight-loss benefits.

13          c.  Were not adequately labeled because the statements on the label are

14            false and misleading;

15          d.  Were not conformed to the promises or affirmations of fact made on

16            the container or label because the Products provide no weight-loss

17            benefits and are worthless products;

18      262.   Moreover, the Products could not pass without objection in the trade

19  under the contract description, the goods were not of fair or average quality within the

20  description, and the goods were unfit for their intended and ordinary purpose. As a

21  result, Plaintiff and the Class members did not receive the Products as impliedly

22  warranted by Defendants to be merchantable.

23      263.   Plaintiff and the Class bring this claim against Defendants in their

24  capacities as manufacturers of the Products with whom Plaintiff has not dealt with

25  directly. Therefore, Plaintiff and the Class were not required to notify Defendants of

26  their breaches of implied warranties within a reasonable time. Plaintiff has notified

27  Defendants of their breaches via letters sent by certified mail, return receipt requested,

28  and are allowing Defendants reasonable time to take corrective actions.

FIRST AMENDED CLASS ACTION COMPLAINT

1

## COUNT VI

2

## CLAIM FOR BREACH OF EXPRESS WARRANTY

3

### N.Y. U.C.C. § 2-313

4

By Plaintiffs Morrison and Rizzo-Marino
*-on behalf of-*

5

The New York Classes
*-against-*

6

The Labrada Defendants

7

264.   Plaintiffs and the Class Members re-allege and incorporate by reference

8

each and every allegation set forth above, and further allege as follows:

9

265.   Plaintiffs bring this Count individually and on behalf of the members of

10

the New York Classes against the Labrada Defendants.

11

266.   Defendants, as a manufacturer, marketer, distributor and/or seller,

12

expressly warranted that Labrada Products were fit for their intended purpose of

13

making the Express Warranties.

14

267.   In fact, Labrada Products are not fit for such purposes because each of the

15

Express Warranties is false and misleading.

16

268.   Defendants breached the warranty implied in the contract for the sale of

17

Labrada Products in that the Products could not pass without objection in the trade

18

under the contract description, the goods were not of fair or average quality within the

19

description, the goods were unfit for their intended and ordinary purpose for which the

20

Products are used, and the

21

## COUNT VIII

22

## CLAIM FOR BREACH OF IMPLIED WARRANTY

23

### N.Y. U.C.C. § 2-314

24

By Plaintiffs Morrison and Rizzo-Marino
*-on behalf of-*

25

The New York Classes
-against-

26

The Labrada Defendants

27

269.   Plaintiffs and the Class Members re-allege and incorporate by reference

28

- 74 -

1   each and every allegation set forth above, and further allege as follows:

2       270.   Plaintiffs bring this Count individually and on behalf of the members of

3   the Nationwide Class and New York Subclass against the Labrada Defendants.

4       271.   Defendants are and were at all relevant times, merchants under N.Y.

5   U.C.C. § 2- 314. Defendants, as the designer, manufacturer, marketer, distributor

6   and/or seller, impliedly warranted that Labrada Products were fit for their intended

7   purpose in that that the Products would (i) be effective weight-loss aids; (ii) contained

8   zero binders, zero fillers, zero artificial ingredients; (iii) work as effective "fat busters";

9   and (iv) be supported by credible references. Defendants did so with the intent to induce

10  Plaintiff and the New York Class Members to purchase Labrada Products.

11      272.   Defendants breached the warranty implied in the contract for the sale of

12  Labrada Products in that the Products could not pass without objection in the trade

13  under the contract description, the goods were not of fair or average quality within the

14  description, the goods were unfit for their intended and ordinary purpose for which the

15  Products are used.

16                              **<u>COUNT IX</u>**

17      **CLAIM FOR BREACH OF EXPRESS WARRANTIES TO INTENDED**

18                **THIRD PARTY BENEFICIARIES**
                      By all Plaintiffs
19                      *-on behalf of-*
                   All Defined Classes
20                       *-against-*
21                The Supplier Defendants

22      273.   Plaintiffs and the Classes incorporate by reference and re-allege each and

23  every allegation set forth above as though fully set forth herein.

24      274.   Plaintiff Woodard bring this claim on behalf of the Nationwide and

25  California classes against Defendants Interhealth and Naturex.

26      275.   Plaintiffs Morrison and Rizzo-Marino bring this claim on behalf of the

27  Nationwide and New York Classes against Defendants Interhealth and Naturex.

28
                              - 75 -

276.   Defendants, in their capacity as manufacturers of the Products, expressly warranted that the Products were fit for their intended purpose by making the Express Warranties.

277.   The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned alleged efficacy of the Products regarding the ability aid with weight loss and bust body fat.

278.   These representations had an influence on consumers' decisions in purchasing the Products.

279.   Defendants made the above representations to induce Plaintiff and the members of Class to purchase the Products. Plaintiff and the Class members relied on the representations when purchasing Defendants' products.

280.   In fact, the Products do not conform to the Express Warranties because each of the Express Warranties is false and misleading and the Products do not perform as warranted.

281.   Plaintiff and the Class members were injured and continued to be injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products or paid as much for the Products if the true facts had been known.[39]

282.   Plaintiff and the Class bring this claim against Defendants in their capacities as manufacturers of the Products with whom Plaintiff has not dealt with directly.

283.   Plaintiff and the Class also bring this claim against Defendant Interhealth as intended third-party beneficiaries to the contract between Interhealth and Labrada concerning the Labrada garcinia cambogia product.

284.   Plaintiff and the Class also bring this claim against Defendant Naturex as intended third-party beneficiaries to the contract between Naturex and Labrada

---

[39] Though, Plaintiff and the Class would still be interested in purchasing the Labrada Products again if they were represented properly or truthfully.

FIRST AMENDED CLASS ACTION COMPLAINT

1   concerning the Labrada green coffee product.

2   ## COUNT X

3   ### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
    ### 15 U.S.C. §§ 2301, *et seq.*

4

5   By All Plaintiffs
    *-on behalf of-*

6   All Defined Classes
    *-against-*

7   The Labrada Defendants and the Supplier Defendants

8   285.   Plaintiffs and Class members reallege and incorporate by reference each

9   allegation set forth above and further allege as follows.

10  286.   Plaintiffs bring this Count individually and on behalf of the members of

11  the Nationwide Class against the Labrada Defendants.   Alternatively, Plaintiff

12  Woodard brings this Count individually and on behalf of the California Classes and

13  Plaintiffs Morrison and Rizzo-Marino bring this Count individually and on behalf of

14  the New York Classes.

15  287.      The Labrada Products are consumer products as defined in 15

16  U.S.C. § 2301(1).

17  288.      The Labrada Products sell at retail for more than five dollars.

18  289.      Each Plaintiff purchased the Products on multiple occasions and

19  each paid twenty-five dollars or more for their total purchases.

20  290.      Defendants are suppliers and warrantors as defined in 15 U.S.C. §

21  2301 (4) and (5).

22  291.      In connection with the sale of the Labrada Products, the Labrada

23  Defendants issued written warranties as defined in 15 U.S.C. § 2301 (6), which

24  warranted that the Products are effective at providing weight-loss benefits.

25  292.      In connection with the sale of the Labrada Products, Defendants

26  impliedly warranted as defined in 15 U.S.C. §2301(7), that the products were of

27  merchantable quality, such that the products were of the same average grade, quality,

28

FIRST AMENDED CLASS ACTION COMPLAINT

1  and value as similar goods sold under similar circumstances.

2  293.   Defendants breached these warranties because the Products are not

3  effective for their intended use because the Products contain hyper-diluted ingredients

4  that are scientifically incapable of effectively causing sustained weight-loss.

5  294.   By reason of the Labrada Defendants' breach of the express written

6  warranties, Defendants violated the statutory rights owed to Plaintiffs and Class

7  members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*,

8  thereby damaging Plaintiffs and Class members.

9  295.   Plaintiffs and the Class members were injured as a direct and

10  proximate result of Defendants' breach because they would not have purchased the

11  Products if the true facts had been known.

12  296.   Prior to filing this action, Plaintiffs, by and through their counsel,

13  provided Defendants with written notice of their claims pursuant to 15 U.S.C. § 2310(e)

14  and also notified Defendants that they are acting on behalf of a Class defined as all

15  persons in the United States who purchased the Labrada Products. *See Ex.* C.

16  ## COUNT XI

17  ### CLAIM FOR UNFAIR TRADE PRACTICES
18  ### N.Y. Bus. Law § 349

19  By Plaintiffs Morrison and Rizzo-Marino
20  *-on behalf of-*
   The Nationwide and New York Classes
21  -against-
   All Defendants

22  297.   Plaintiffs and Class Members re-allege and incorporate by reference each

23  and every allegation set forth above, and further allege as follows:

24  298.   Plaintiffs Morrison and Rizzo-Marino bring this Count individually and

25  on behalf of members of the New York Classes.

26  299.   By the acts and conduct alleged herein, Defendants committed unfair or

27  deceptive acts and practices by making the Misrepresentations.

28

First Amended Class Action Complaint

300.   The foregoing deceptive acts and practices were directed at consumers, including Plaintiffs and members of the New York Sub-Class.

301.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and qualities of Labrada Products to induce consumers to purchase the Products.

302.   Plaintiffs and the New York Class Members were injured, and continue to be threatened by irreparable injuries.

**COUNT XII**

**CLAIM FOR FALSE ADVERTISING**

**N.Y. Bus. Law § 350**
By Plaintiffs Morrison and Rizzo-Marino
-*on behalf of*-
The Nationwide and New York Classes
-against-
All Defendants

303.   Plaintiffs and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

304.   Plaintiffs Morrison and Rizzo-Marino bring the Count individually and on behalf of members of the Nationwide Classes and New York Sub-Classes against Defendants.

305.   Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

306.   Defendants' false, misleading, and deceptive statements and representations of fact, including, but not limited to, the Misrepresentations, were and are directed to consumers, including Plaintiffs and members of the Classes.

307.   Defendants' false, misleading, and deceptive statements and representations of fact, including, but not limited to, the Misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

First Amended Class Action Complaint

308.   Defendants' false, misleading, and deceptive statements and representations of fact, including, but not limited to, the Misrepresentations, have resulted in consumer injury or harm to the public interest.

309.   As a result of Defendants' false, misleading, and deceptive statements and representations of fact, including, but not limited to, the Misrepresentations, Plaintiffs and Class Members have suffered and continue to suffer economic injury.

310.   Plaintiffs and the New York Sub-Class suffered an ascertainable loss caused by Defendants' Misrepresentations because they paid for Labrada Products, which they would not have purchased, or would not have paid as much for the Products, had they known the truth about the Products.

311.   Plaintiffs, on behalf of himself and other members of the New York Sub-Class, seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members request that the Court enter an order or judgment against Defendants including the following:

i.     An order certifying that this action is properly brought and may be maintained as a class action;

ii.    An order appointing Plaintiff as class representatives of the Nationwide Class, as class representative of their respective Subclasses, and The Law Office of Ronald A. Marron as counsel for the Class;

iii.   An order requiring Defendants to bear the costs of Class notice;

iv.    Restitution in such amount that Plaintiff and Class Members paid to purchase Defendants' Products;

v.     Actual damages, compensatory damages, punitive, treble damages, nominal damages, and such other relief as provided by the statutes cited herein;

FIRST AMENDED CLASS ACTION COMPLAINT

vi.   Other appropriate injunctive relief;

vii.  An order declaring Defendants' conduct as unlawful, and an order enjoining Defendants from unlawfully and misleadingly representing the Products in violation of state law;

viii. An order awarding Plaintiff their costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest on such monetary relief;

ix.   An order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendants received as a result of the misleading, fraudulent, and unlawful conduct alleged herein.

x.    Such other relief to which Plaintiff and Class Members may be entitled to at law or in equity.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all causes of action or issues so triable.

DATED: June 2, 2016

/s/ *Ronald A. Marron*
Ronald A. Marron

**THE LAW OFFICES OF**
**RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Skye Resendes
*skye@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Counsel for Plaintiffs and the***
***Proposed Class***

- 81 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First Amended Class Action Complaint