1  **LAW OFFICES OF   RONALD A. MARRON**
   RONALD A. MARRON (SBN 175650)
2  *ron@consumersadvocates.com*
   SKYE RESENDES (SBN 278511)
3  *skye@consumersadvocates.com*
   MICHAEL T. HOUCHIN (SBN 305541)
4  *mike@consumersadvocates.com*
   651 Arroyo Drive
5  San Diego, California 92103
   Telephone: (619) 696-9006
6  Facsimile: (619) 564-6665
   *Counsel for Plaintiffs and the Proposed Classes*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  VEDA WOODARD, TERESSA RIZZO-          ) Case No. 5:16-cv-00189-JGB-SP
    MARINO, and DIANE MORRISON, on        )
12  behalf of themselves, all others similarly ) <u>CLASS ACTION</u>
    situated, and the general public,         )
13                                            ) **PLAINTIFFS' RESPONSE IN**
                          Plaintiffs,         ) **OPPOSITION TO THE MOTION**
14                                            ) **TO DISMISS FILED BY**
              vs.                             ) **DEFENDANTS DR. MEHMET C.**
15                                            ) **OZ, M.D., ZOCO PRODUCTIONS,**
    LEE LABRADA; LABRADA                     ) **LLC, HARPO PRODUCTIONS,**
16  BODYBUILDING NUTRITION, INC.;            ) **INC., AND SONY PICTURES**
    LABRADA NUTRITIONAL SYSTEMS,            ) **TELEVISON, INC.**
17  INC.; DR. MEHMET C. OZ, M.D.;            )
    ENTERTAINMENT MEDIA                      ) **[ECF NO. 94]**
18  VENTURES, INC. D/B/A OZ MEDIA;           )
    ZOCO PRODUCTIONS, LLC; HARPO             )
19  PRODUCTIONS, INC; SONY                   ) Hearing Date:   August 15, 2016
    PICTURES TELEVISION, INC;                ) Time:           9:00 a.m.
20  NATUREX, INC.; AND                       ) Courtroom:      1
    INTERHEALTH NUTRACEUTICALS,             )
21  INC.,                                    )
                                             )
22                        Defendants.        )
                                             )
23  _____)

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ........................................................................................ 2

A.  The Media Defendants Tried to Suppress "Green Bean II" and the Dates when Each Episode was Published and Re-Published ..................................... 3

B.  The May 12th Order ................................................................................ 4

C.  Allegations in the FAC ........................................................................... 5

III. LEGAL STANDARD ................................................................................. 8

A.  The Federal Pleading Standard and Rule 12(b)(6) ............................... 8

B.  Choice of Law in Multi-State Class Actions ........................................ 9

C.  California's Consumer Protection Laws .............................................. 11

D.  New York's Consumer Protection Laws ............................................. 12

E.  Common Law Fraud and Deceit ......................................................... 13

IV. ARGUMENT ............................................................................................ 13

A.  Defendants' Statute of Limitations Defense Is Still Meritless ........... 13

1.  *Running of the Statute of Limitations Is Not Apparent on the Face of the Complaint* .......................................................................................... 13

2.  *The Statute of Limitations Is an Affirmative Defense that Defendants Must Plead and Prove* .................................................................................... 14

3.   *The Single Publication Rule Has No Applicability to Plaintiffs' Claims that are Grounded in Fraud* ................................................................. 14

4.   *Even if the Single Publication Rule Did Apply, Dismissal Would not be Warranted* ................................................................. 16

B.   The FAC Plausibly Alleges that Dr. Oz, Sony, Harpo, and Zoco Formed a General Partnership or Joint Venture ................................................................. 16

C.   Plaintiff Woodard Is Not Alleging an Independent Violation of the CLRA .... 18

V.   CONCLUSION ................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Ashcroft v. Iqbal,*

4
    556 U.S. 662 (2009) ...................................................................9

5

*Bailey v. Glover,*

6
    349, 22 L.Ed. 636 (1875)........................................................15

7

*Bell Atl. Corp. v. Twombly,*

8
    550 U.S. 544 (2007) ...................................................................8

9

*Black v. Sullivan,*

10
    48 Cal.App.3d 557  (1975) ........................................................2

11

*Conley v. Gibson,*

12
    355 U.S. 41 (1957) .....................................................................8

13

*Davison v. Santa Barbara High School District,*

14
    48 F.Supp.2d 1225 (C.D. Cal. 1998) ......................................9

15

*Ellsworth v. U.S. Bank, N.A.,*

16
    2014 WL 2734953 (N.D. Cal. June 13, 2014) ....................10

17

*Erie R. Co. v. Tompkins,*

18
    304 U.S. 64 (1938) ..................................................................10

19

*Famolare, Inc. v. Edison Bros. Stores, Inc.,*

20
    525 F.Supp. 940 (E.D. Cal. 1981) ...........................................9

21

*Forcellati v. Hyland's, Inc.,*

22
    876 F. Supp. 2d 1155 (C.D. Cal. 2012)................................10

23

*Gasperini v. Center for Humanities, Inc.,*

24
    518 U.S. 415 (1996) ................................................................10

25

*Goshen v. Mut. Life Ins. Co. of N.Y.,*

26
    98 N.Y.2d 314 (2002)..............................................................12

27

28

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ................................................................. 14

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................. 10

*In re Coca-Cola Products Mktg. & Sales Practices Litig. (II)*,
   2016 WL 2930964 (N.D. Cal. May 19, 2016) .................................................... 13

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ......................................................................... 12

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F.Supp.2d 1077 (S.D.Cal.2010) ........................................... 10

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ......................................................................................... 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................... 11, 19

*Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*,
   313 U.S. 487  (1941). ........................................................................................... 10

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................... 9

*Koch v. Acker, Merall & Condit Co.*,
   967 N.E.2d 635 (2012) ......................................................................................... 13

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d Cir.2000) ................................................................................. 12

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ............................................................................................. 15

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal.4th 979 (2004) .......................................................................................... 13

-iv-

*Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072 (C.D. Cal. 1994) ....................................................... 9

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ................................................................. 11

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) .............................................................................. 8

*Shively v. Bozanich*,
   31 Cal. 4th 1230 (2003) ...................................................................... 15

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
   782 F.3d 922  (7th Cir. 2015) ................................................................ 2

*Simmons v. Ware*,
   213 Cal.App.4th 1035 (2013) ............................................................. 17

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
   256 F.R.D. 284 (D. Conn. 2009). ....................................................... 13

*Tiwari v. NBC Universal, Inc.*
   2011 WL 5079505 (N.D. Cal. Oct. 25, 2011) .................................... 16

*Unruh-Haxton v. Regents of Univ. of California*,
   162 Cal. App. 4th 343 (2008) ............................................................. 17

*Van Kleeck v. Hammond*,
   811 N.Y.S.2d 452  (N.Y.App.Div.2006) ............................................ 13

*Volk v. D.A. Davidson & Co.*,
   816 F.2d 1406  (9th Cir. 1987) ........................................................... 15

*Weiner v. Fleischman*,
   54 Cal. 3d 476 (1991). ....................................................................... 17

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) .............................................................. 11

-v-

*Woodard v. Labrada*,

   2016 WL 3436434  (C.D. Cal. May 12, 2016)......................................................1

*Zinser v. Accufix Research Inst., Inc.*,

   253 F.3d 1180 9th Cir. 2001) ............................................................10

**STATUTES**

Cal. Bus. & Prof. 17200 ......................................................................20

Cal. Bus. & Prof. Code § 17500 .........................................................11

Cal. Civ. Code 1770..............................................................................19

Cal. Civ. Code 1770(3)..........................................................................19

N.Y. Gen. Bus. Law § 349 ....................................................................12

N.Y. Gen. Bus. Law § 350 ....................................................................12

**RULES**

Fed. R. Civ. P.  8(c)(1) ............................................................................2

Fed. R. Civ. P. 12(b) ...............................................................................9

Plaintiffs Veda Woodard, Teresa Rizzo-Marino, and Diane Morrison (collectively "Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, respectfully submit this Opposition in Response to the Motion to Dismiss that was filed by Defendants Dr. Mehmet C. OZ, M.D. ("Dr. Oz"), Zoco Productions, LLC ("Zoco"), Harpo Productions, Inc. ("Harpo"), and Sony Pictures Television, Inc. ("SPT") (collectively the "Media Defendants") on June 24, 2016 (ECF No. 94). For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the Media Defendants' Motion to Dismiss in its entirety.

## I.    INTRODUCTION

On May 12, 2016, this Court held that "the Media Defendants contend Plaintiff's claims are untimely… The Media Defendants' arguments are meritless." *See Woodard v. Labrada*, No. 16-cv-00189-JGB (SPx), 2016 WL 3436434, at *4 (C.D. Cal. May 12, 2016); ECF No. 85 [*hereinafter* the "May 12th Order"]. This Court reasoned that "[Plaintiff's] Complaint alleges the statements by Dr. Oz that give rise to its claims were made in television broadcasts 'in or around 2012.' The Complaint leaves it ambiguous as to when Dr. Oz actually made these statements and how close in time this date was to 2012. Consequently, construed in the light most favorable to Plaintiff, it is possible Dr. Oz made the alleged statements within the limitations period applicable to each of Plaintiff's claims." *Id*.

Now, the Media Defendants are yet again raising the exact same "meritless" arguments in their Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC").[1] The Media Defendants aver, without citation, that the FAC "now expressly pleads that the Complained of Broadcasts and the Complained of Post were all aired or published in 2012."[2] But that is a peculiar statement to make. *See* FAC ¶ 35 ("Plaintiff Morrison saw episodes of The Doctor Oz Show that aired ***in or around 2012*** that promoted the products.") (emphasis added). Nonetheless,

---

[1] The FAC appears at ECF No. 88.
[2] *See* Def.s' Br. at 4:7-8 (ECF No. 94 at 10).

Defendants bear the burden of pleading and proving the statute of limitations is an affirmative defense to Plaintiffs' claims. *See* Fed. R. Civ. P.   8(c)(1). That is precisely the reason why "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

Defendants' second contention is that "Plaintiff[s] allege no facts indicating Zoco, Harpo, and SPT participated in a joint venture or civil conspiracy with Dr. Oz or were in any way involved in furthering Dr. Oz's alleged misconduct." Def.s' Br. at 10:1-8.  But Defendants cannot deny that the FAC plausibly alleges that the Media Defendants are general partners. The FAC alleges that "Sony, Harpo, Zoco, and Dr. Oz are general partners in a general partnership." FAC ¶ 57. It is well-established that "[T]he partners of a partnership are jointly and severally liable for the conduct and torts injuring a third party committed by one of the partners." *See, e.g.*, *Black v. Sullivan,* 48 Cal.App.3d 557, 569 (1975). Plaintiffs' FAC even attaches a "Partnership Agreement" for the Doctor Oz Show that clearly says "By distributing Dr. Oz, SPT will be entering into a partnership with Harpo Productions." FAC at Ex. C (ECF No. 88-3).

As set forth more fully below, the Media Defendants' Motion to Dismiss should be denied in its entirety.

## II.   BACKGROUND

Plaintiff Veda Woodard filed the original complaint in this action on February 2, 2016 (ECF No. 1). In response to the original complaint, the Media Defendants first filed a Motion to Dismiss the Complaint that asserts similar arguments regarding the Single Publication Rule and the statute of limitations that are set forth in Defendants' present Motion to Dismiss the FAC. (ECF No. 45).

About one week after filing their Motion to Dismiss, the Media Defendants filed a Special Motion to Strike pursuant to California Civil Code Section 425.16

1   (the "Anti-SLAPP Motion") (ECF. No. 49). In response to both of the Media

2   Defendants' Motions, Plaintiff Woodard filed her own Motion pursuant to Federal

3   Rule of Civil Procedure 56(d) requesting that the Court defer ruling on the Media

4   Defendants' anti-SLAPP Motion and grant Plaintiff Leave to Conduct Discovery

5   into certain issues in order to prove facts essential to justify her opposition. (ECF

6   No. 60).

7       **A.   *The Media Defendants Tried to Suppress "Green Bean II" and the***

8            ***Dates when Each Episode was Published and Re-Published***

9       When the Media Defendants filed their Motion to Dismiss Plaintiff

10  Woodard's original complaint, they attempted to rely on matters outside the

11  pleadings by submitting a sworn declaration from their counsel attesting that counsel

12  had lodged a "true and correct recording of the Dr. Oz television program concerning

13  Garcinia Cambogia recorded on October 23, 2014."[3] *See* Declaration of William

14  Haggerty ("Haggerty Decl."), ¶ 5 (ECF No. 45 at 37). The Haggerty Declaration also

15  stated that another exhibit was lodged with the court constituting a "true and correct

16  recording of the Dr. Oz television program concerning Green Coffee Bean Extract

17  recorded on April 10, 2012." Haggerty Decl., ¶ 6.  The Media Defendants cited to

18  Mr. Haggerty's declaration when arguing that Plaintiff Woodard's claims were

19  barred under the Single Publication Rule.

20      In her opposition brief, Plaintiff Woodard pointed out that "Mr. Haggerty's

21  declaration highlights exactly why Defendants' statute of limitations argument is

22  best reserved for a summary judgment motion after the record has been more fully

23  developed through the discovery process." (ECF No. 61 at 17-18). Although the

24  episodes may have been recorded on the dates stated by Mr. Haggerty, what matters

25  is when the broadcasts were aired on television. (ECF No. 61).  To seemingly

26  overcome this defect, the Media Defendants filed yet another sworn declaration from

27  a Zoco attorney,  Cathy Denise Beudoin, stating that she "was involved in the

28  ───────────────

    [3]

Case 5:16-cv-00189-JGB-SP   Document 104   Filed 07/21/16   Page 11 of 27   Page ID #:2577

production of 'The Dr. Oz Show' during the time that the Dr. Oz television program concerning Garcinia Cambogia was recorded on October 23, <u>2014</u> and aired on October 29, <u>2012</u>."[4] *See* Declaration of Cathy Denise Beudoin ("Beudoin Decl."), ¶ 5 (ECF No. 77).  The Beudoin declaration further states that "the Dr. Oz television program concerning Green Coffee Bean Extract was recorded on April 10, 2012 and aired on April 26, 2012 **and** July 23, 2012." Beudoin Decl., ¶ 6. (emphasis added).

Ms. Beudoin does not state whether or not April 26, 2012 and July 23, 2012 were the *only* times that the Green Coffee Bean Extract episode aired, nor does she state that October 29, 2012 was the *only* time that the Garcinia episode aired. Beudoin Decl., ¶ 5.  In a supplemental declaration filed on May 2, 2016 in support of Plaintiff's Request for Leave to Take Discovery under Rule 56(d), Plaintiff's counsel stated that a disputed fact in this matter was "when the episodes at issue actually aired on television." (*See* ECF No. 76-1 at ¶ 6).  Plaintiff's counsel also stated that neither the Haggerty declaration nor the Beudoin declaration made any reference to a second green coffee bean episode where an "experimental study" was performed on members of Dr. Oz's audience. *See* ECF No. 76-1 at ¶ 7. The Declaration also points out that the second green coffee bean episode was referenced in the original complaint, although largely ignored by the Media Defendants.

B.    ***The May 12th Order***

In the Court's May 12th Order, the Court declined to consider the Beudoin Declaration and its supporting exhibits "because the documents were not timely filed in connection with their motion or reply papers, in violation of Local Rule 7-11."

[4] *See* Declaration of Cathy Denise Beudoin ("Beudoin Decl."), ¶ 5 (ECF No. 77). Plaintiffs assume that both Mr. Haggerty and Ms. Beudoin may have made a scrivener's error when referencing the year "2014," but will need to undertake further investigation and discovery to confirm that the references to "2014" were in fact erroneous. Until then, Plaintiffs can only assume that the facts stated in sworn declarations are true.

-4-

(ECF No. 85 at 2 n. 2). Similarly, the Court declined to consider the Haggerty Declaration and its attached exhibits "as they constitute matters outside of the pleadings, the Court cannot consider them when assessing the Media Defendants' Motion to Dismiss." (ECF No. 85 at 6). The Court granted in part and denied in part the Media Defendants' Motion to Dismiss and granted Plaintiff leave to file a First Amended Complaint. (ECF No. 85 at 7).

Although the declarations and supporting exhibits were not considered by the Court for purposes of Defendants' Motion to Dismiss, they were considered by the Court for purposes of Plaintiff Woodard's Rule 56(d) Motion for Leave to Conduct Discovery. Specifically, this Court stated:

> Plaintiff presents a declaration [by her counsel], "'which requests that the Court defer ruling on the Media Defendants' Motion to Strike and instead allow her to conduct discovery as to the following issues: the 'Media Defendants' sponsorship agreements with the Manufacturing Defendants, financial involvement of the Media Defendants with the Manufacturing Defendants, ***and discrepancies within the provided transcripts of the videos Defendants attempt to introduce in support of their position***.' Plaintiff argues such information would allow her to prove that Dr. Oz's statements on his television show constitute misleading commercial speech that is not protected under Section 425.16(g).

(ECF No. 85 at 16). (emphasis added).

The Court then concluded that "Plaintiff is entitled to discovery under Rule 56(d)" because "Plaintiff has presented an affidavit by Houchin identifying the information she needs to oppose judgment in the defendants' favor." ECF No. 85 at 15. The Court then deferred ruling on the anti-SLAPP Motion until "after the close of discovery." (ECF No. 85 at 16).

**C.   *Allegations in the FAC***

Perhaps the reason why there appears to be discrepancies with the transcripts and videos provided by the Media Defendants was because "Doctor Oz specifically promoted Svetol® on-air during [the] second broadcast" of the green coffee bean episode.  (FAC ¶ 123).[5] The FAC alleges that "The 'Labrada Green Coffee Bean Extract FAT LOSS OPTIMIZER' contains Svetol® Green Coffee Bean Extract that is manufactured by Defendant Naturex, Inc." (FAC ¶ 12). "Dr. Oz has promoted the Labrada Products and/or their proprietary ingredients, Supercitrimax® and Svetol® by using key language." (FAC ¶ 111). "Dr. Oz stated: 'Magic is make-believe, but this little bean has scientists saying they found a magic weight-loss cure for every body type. It's green coffee beans. When turned into a supplement this miracle pill can burn fat fast… A staggering newly released study reveals that the coffee bean in its purest, raw form may hold the secret to weight loss that you've been waiting for.'" (FAC ¶ 117).

However, the "staggering newly released study" was actually "retracted by the author, Dr. Joe Vinson, after an FTC investigation revealed that 'the principal investigator repeatedly: (1) altered the weights and other key measurements of the subjects; (2) changed the length of the trial; and (3) confused which subjects took either the placebo or [Green Coffee Bean Extract] at various points during the trial.'" (FAC ¶ 15). "Dr. Oz— a renown surgeon at Columbia University Medical School— knew or should have known that the supplement products he promoted were ineffective at providing weight-loss benefits, much less the 'magic' 'fat busting' effects that he claimed were supported by clinical studies." (FAC ¶ 9). "Moreover, Dr. Oz makes affirmative misrepresentations that he does not promote any 'specific

---

[5] Plaintiffs' FAC also incorporates by reference a copy of an archived webpage showing a screenshot of the Doctor Oz second green coffee bean episode where the screen behind Dr. Oz said "How to Buy Green Coffee Bean Extract: Svetol® or GCA," *available at* http://web.archive.org/web/20121105205629/http://www.doctoroz.com/episode/green-coffee-fat-burner-works?video=14493.

brands.' But this statement is deceptive or false because, by using key language, Dr. Oz is promoting certain brands, as he is paid to do." (FAC ¶ 20). That is because "Instead of relying on traditional television commercial to generate revenue, *The Doctor Oz Show* has instead successfully implemented a marketing strategy called 'branded integration' whereby specific brands or products are promoted on the show in a manner that is non-obvious to consumers." (FAC ¶ 109).

The United States Federal Trade Commission describes such practices as "Deceptively Formatted Advertisements" and "has 'long held the view that advertising and promotional messages that are not identifiable as advertising to consumers are deceptive if they mislead consumers into believing they are independent, impartial, or not from the sponsoring advertiser itself. Knowing the source of an advertisement or promotional message typically affects the weight or credibility consumers give it.'" (FAC ¶ 22). "Aside from omitting the fact that products are actually being endorsed on *The Doctor Oz Show*, Dr. Oz affirmatively misrepresents the true commercial nature of the show by making statements like: 'Please listen carefully. I don't sell this stuff. I'm not making any money on this. I'm not going to mention any brands to you either. I don't want you conned.'" (FAC ¶ 109). "But Doctor Oz is the one conning consumers— not to mention congress." (FAC ¶ 110).

During a Senate Subcommittee Hearing, "Senator Claire McCaskill expressed her concern that Dr. Oz was 'melding medical advice, news, and entertainment in a way that harms consumers.'" (FAC ¶ 7). Nonetheless, when asked point blank by Senator Heller--- "And it is true that you do not endorse any products or receive any money from any product sold?" --- Doctor Oz responded "That is true." (FAC ¶ 8).

Following the Senate hearing, Dr. Oz stated: "I wish I'd never used the laudatory terms I used for weight loss supplements. That was the big mistake I think all of us acknowledge." (FAC ¶ 9). But "[a]lthough Dr. Oz seems to have acknowledged his 'big mistake,' what he has not done is provide redress to

consumers who were duped into paying for the worthless supplement products he promoted." (FAC ¶ 10). Therefore, Plaintiff Veda Woodard of California and Plaintiffs Teresa Rizzo-Marino and Diane Morrison of New York bring this action on behalf of all others similarly situated because "A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed." (FAC ¶ 138).

## III.   LEGAL STANDARD

### A.   *The Federal Pleading Standard and Rule 12(b)(6)*

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *Accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(b) states that "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." FED. R. CIV. P. 12(b).  Rule 12 is read in conjunction with Rule 8(c) that says, "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including… estoppel… statute of limitations; and waiver." FED. R. CIV. P. 8(c).  Rule 12(b) does, however, provide seven defenses that a party may assert….by motion." *See* FED. R. CIV. P. 12(b).  Among the available defenses under

Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, when ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009).

The "liberal pleading standard" applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." FED. R. CIV. P. 8(e); *C.f. Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981) ("Due to the liberal pleading standards in the federal courts embodied in Federal Rule of Civil Procedure 8(e) and the availability of extensive discovery, the availability of a motion for a more definite statement has been substantially restricted"); *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School District*, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

## B.   *Choice of Law in Multi-State Class Actions*

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496 (1941). However, plaintiffs in a putative class action may assert claims based on the laws of various states through the use of multiple classes or subclasses. *See, e.g., Ellsworth v. U.S. Bank, N.A.*, No. C 12-

02506 LB, 2014 WL 2734953, at *21 (N.D. Cal. June 13, 2014) (holding that because the "laws of the various states are capable of being organized into groups with similar legal regimes, the court finds that common issues predominate in each subclass."). Although "In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleadings stage" (*See In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F.Supp.2d 1077, 1096 (S.D.Cal.2010)), it may be necessary to analyze the laws of various states to determine whether the plaintiffs have stated a claim for which relief can be granted. *See, e.g, In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) (analyzing a motion to dismiss under various state laws in a proceeding where there were "18 plaintiffs in [the] action, from 13 different states."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) (Analyzing the laws of different states for purposes of determining a Rule 12(b)(6) motion, but noting that "Courts rarely undertake choice-of-law analysis to strike class claims at this early stage in litigation.").

The Court's choice of law analysis with respect to procedural law remains the same in a multi-state class action; "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938). In *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, the U.S. Supreme Court held that if a Federal Rule of Civil Procedure "answers the same question" as a conflicting state law, then the federal rule will likely prevail. 559 U.S. 393, 437; 407 (2010) ("Applying that test, we have rejected every statutory challenge to a Federal Rule that has come before us."); *see also Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (holding that "the timing controls imposed by [California

Civil Code] Section 425.16(f) directly collide with the more permissive timeline Rule 56 provides for the filing of a motion for summary judgment.").[6]

## C. *California's Consumer Protection Laws*

Plaintiff Woodard is asserting claims on behalf of a Nationwide Class, or alternatively a California Class, against the Media Defendants for violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) and California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*). "The UCL prohibits unfair competition, which it broadly defines as including 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17200). "Each prong of the UCL is a separate and distinct theory of liability; thus, the 'unfair' practices prong offers an independent basis for relief." *Id.*

The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. and Prof. Code § 17500. "[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that "members of the public are likely to be 'deceived.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Both the UCL and FAL "are governed by the 'reasonable consumer' test." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The California Supreme Court has recognized 'that these laws prohibit 'not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (citing *Kasky*, 27 Cal. 4th at 951-53) (holding that the First Amendment is no defense to the UCL and FAL when the defendant is a commercial

---

[6] *C.f.* James W. Devine, *Rule 11's Big-Mouthed Little Brother: How A Federal Anti-SLAPP Statute Would Reproduce Rule 11's Growing Pains*, 9 AVE MARIA L. REV. 367, 387 (2011) ("Since Rule 11 and the anti-SLAPP statute both exist primarily to curb frivolous lawsuits, it is worthwhile to compare the two in terms of applicability and susceptibility to abuse.").

speaker because "[c]ommercial speech that is false or misleading is not entitled to First Amendment protection and 'may be prohibited entirely.'").

### D.  *New York's Consumer Protection Laws*

Plaintiffs Rizzo-Marino and Morrison are asserting claims under New York's consumer protection laws against the Media Defendants. New York General Business Law Section 349 provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349. "To establish a prima facie case under GBL Section 349, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000)). Like false advertising claims under California law, "Materiality under Section 349 of the GBL is an objective inquiry; a deceptive act is defined as one 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.*

New York General Business Law Section 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350. Courts have held that the same analysis under Section 349 applies to claims brought under Section 350 in false advertising cases. *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n. 1 (2002)). Unlike California's consumer protection laws, "neither Section 349 nor 350 require proof of reliance." *Id.*; *see also In re Coca-Cola Products Mktg. & Sales Practices Litig. (II)*, No. 14-MD-02555-JSW, 2016 WL 2930964, at *9 (N.D. Cal. May 19, 2016) ("A claim under Section 349 or Section 350 does not require proof of reliance.") (citing *Koch v. Acker, Merall & Condit Co.*, 18 N.Y.3d 940, 944, 967 N.E.2d 635 (2012)).

### E.   *Common Law Fraud and Deceit*

All Plaintiffs are alleging on behalf of a nationwide class that the Media Defendants have committed common law fraud and deceit. Significantly, "the fundamental elements of fraud are substantially similar from state to state." *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009). "Virtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, the defendant intended to induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." (*comparing Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004) ("The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.") *with Van Kleeck v. Hammond*, 811 N.Y.S.2d 452, 454 (N.Y.App.Div.2006) ("The elements of fraud include a misrepresentation, known by the defendant[s] to be false and made for the purpose of inducing the plaintiff to rely upon it, justifiable reliance and damages")). The *Spencer* Court found that "common legal issues predominate with respect to how states treat fraud claims" and the "Plaintiffs have adequately demonstrated that the elements of fraud are substantially similar from state to state." *Spencer*, 256 F.R.D. at 301.

## IV.   <u>ARGUMENT</u>

### A.   *Defendants' Statute of Limitations Defense Is Still Meritless*

#### 1.   <u>*Running of the Statute of Limitations Is Not Apparent on the Face of the Complaint*</u>

The FAC leaves the door open as to when the broadcasts may have aired. For example, Plaintiff Morrison alleges she "saw episodes of *The Doctor Oz Show* that aired ***in or around 2012*** that promoted the products." (FAC ¶ 35) (emphasis added).

-13-

1   Plaintiff Woodard purchased the Labrada products in 2013 and alleges she "saw
2   episodes of *The Doctor Oz Show* that promoted the products and relied on the
3   representations made on *The Doctor Oz Show* in deciding to purchase the Products."
4   (FAC ¶ 31).  Plaintiffs further allege generalizations like "An episode of The Doctor
5   Oz show **believed to have aired** on October 29, 2012" (FAC ¶ 111) (emphasis
6   added). These generalized allegations are consistent with the original complaint.
7   Moreover, the Court should not consider Defendants' statute of limitations defense
8   until after the close of discovery consistent with the May 12th Order allowing
9   Plaintiffs to take discovery regarding the "transcripts of the videos Defendants
10  attempt to introduce in support of their position.'" (*See* ECF No. 85 at 16).

        2.    *The Statute of Limitations Is an Affirmative Defense that*
                  *Defendants Must Plead and Prove*

13        The Media Defendants rely on *Hidalgo v. Johnson & Johnson Consumer*
14  *Companies, Inc.*, 148 F. Supp. 3d 285, 297 (S.D.N.Y. 2015) for the proposition that
15  N.Y. G.B.L. § 349 has a three-year statute of limitations. However, a closer read of
16  *Hidalgo* shows that Defendants must generally plead the defense within their answer
17  to the complaint: "Because timeliness is an affirmative defense, however, it
18  constitutes grounds for dismissal at the pleadings stage only where the defense is
19  clear from the face of the Complaint. Hidalgo's allegation that she purchased the
20  Bedtime Products 'within the past five years' does not clearly establish that the
21  relevant purchases occurred more than three years before the Complaint was filed.
22  Nor does the Complaint establish that equitable tolling of the statute of limitations
23  would be unavailable. Thus, although discovery may ultimately prove otherwise, it
24  is premature to dismiss the Section 349 claim as untimely." 148 F. Supp. at 297.
25  Similarly, it would also be premature to dismiss Plaintiffs' complaint as untimely
26  considering the Media Defendants have not even plead the statute of limitations in
27  an answer.

28          3.    *The Single Publication Rule Has No Applicability to Plaintiffs'*

-14-

*Claims that are Grounded in Fraud and Tolling Applies*

"As we have discussed, in general a cause of action in tort accrues at the time of injury, and a cause of action for *defamation* accrues at the time the defamatory statement is 'published'" *Shively v. Bozanich,* 31 Cal. 4th 1230, 1247 (2003). The *Shively* case (which Defendants rely on) shows that the Media Defendants have misapplied how the Single Publication Rule interacts with the general doctrine of accrual of claims. Plaintiffs are not alleging a cause of action for defamation and thus the "injury" will not accrue when a statement is "published." Plaintiffs are alleging claims that are grounded in fraud and "In the context of fraud, however, the injury and accrual of the cause of action may occur at a time distinct and separate from the commencement of the statute of limitations period." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir. 1987).

Indeed, the U.S. Supreme Court has "long ago recognized that something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded. Otherwise, 'the law which was designed to prevent fraud' could become 'the means by which it is made successful and secure.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 644-45 (2010) (quoting *Bailey v. Glover,* 21 Wall. 342, 349, 22 L.Ed. 636 (1875)). Thus, "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*." *Id.*

The allegations in the FAC make clear that Plaintiffs would not have been able to discover the true nature of the fraud in 2012. For example, the U.S. Senate Hearing where Dr. Oz testified did not happen until June of 2014. *See* FAC ¶ 5. Moreover, the FTC investigation involving green coffee bean extracts did not occur until around 2015. See FAC ¶ 119 & n. 33. Plaintiffs and the class would not have been able to discover the true nature of the alleged fraud until very recently, and thus

their claims would not have accrued until just recently. The exact dates of accrual can be obtained through the discovery process. Furthermore, Dr. Oz has actively concealed his fraud by making statements like "I don't sell this stuff. I'm not making any money on this. I'm not going to mention any brands to you either. I don't want you conned." *See* FAC ¶ 109. Thus, it is apparent from the face of the complaint that the tolling doctrines of delayed discovery, fraudulent concealment, and continuing violation will apply in this matter.

4.    *Even if the Single Publication Rule Did Apply, Dismissal Would not be Warranted*

Even if the single publication rule did apply (it does not), a disputed factual issue remains as to when the episodes were published or re-published. The case of *Tiwari* there was not just one broadcast; rather, there was one broadcast and then several rebroadcasts. *Tiwari v. NBC Universal, Inc.* is instructive on this issue. No. C-08-3988 EMC, 2011 WL 5079505, at *12 (N.D. Cal. Oct. 25, 2011). In *Tiwari*, the court noted it was "restricting its review at this juncture to that which applies under Rule 12(b)(6) rather than a summary judgment review under Rule 56." Id. However, "even if the Court were to entertain NBC's evidence, it would still reject the argument on the merits because the single publication rule is inapplicable here— i.e., the January 2010 broadcast and the October 2010 broadcast (as well as those in between) cannot be considered a single publication." *Id*. The Court reasoned that "there was not just one broadcast; rather, there was one broadcast and then several rebroadcasts." *Id*. at *12. Defendants themselves had made clear during the last round of briefing and in their declarations that the episodes aired on different dates and it is still a disputed factual issue as to when each episode was broadcast and whether there were "several rebroadcasts" as was the case in *Tiwari*. 2011 WL 5079505, at *12.

**B.**    **The FAC Plausibly Alleges that Dr. Oz, Sony, Harpo, and Zoco Formed a General Partnership or Joint Venture**

-16-

"The distinction between joint ventures and partnerships is not sharply drawn. A joint venture usually involves a single business transaction, whereas a partnership may involve 'a continuing business for an indefinite or fixed period of time.' Yet a joint venture may be of longer duration and greater complexity than a partnership. From a legal standpoint, both relationships are virtually the same. Accordingly, the courts freely apply partnership law to joint ventures when appropriate." *Weiner v. Fleischman,* 54 Cal. 3d 476, 482 (1991). To allege either a joint venture or general partnership, a plaintiff must show "an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." *Simmons v. Ware,* 213 Cal.App.4th 1035, 1053 (2013). Indeed, "There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise." *Unruh-Haxton v. Regents of Univ. of California*, 162 Cal. App. 4th 343, 370 (2008).  "Whether a joint venture actually exists depends on the intention of the parties" and "Where evidence is in dispute the existence or nonexistence of a joint venture is a question of fact to be determined by the jury." *Id.*

Plaintiffs allege that a general partnership exists between the Media Defendants and that "ZoCo Productions, LLC, an affiliate of Harpo Productions, Inc., and Sony Pictures Television co-produce *The Dr. Oz Show*." FAC ¶ 58. In support of this partnership theory, Plaintiffs have attached to the FAC a "Partnership Agreement" that says "By distributing Dr. Oz, SPT will be entering into a partnership with Harpo Productions." FAC at Ex. C.  The agreement then shows that the parties share profits and have and have delegated their rights of management and control: "Harpo to produce and retain copyright;" "SPT to have distribution rights in the US and Canada with a right of first negotiation / refusal on all other territories;" "SPT and Harpo to have mutual approval over production budget;" "SPT and Harpo

-17-

to collaborate on a website and digital extensions;" "SPT to provide marketing, legal/business affairs, finance, and other back office services;" "Harpo will control any broader joint venture/web project with Dr. Oz but Harpo acknowledges Sony's strong interest in partnering on a Dr. Oz branded new media venture and will discuss with Sony in good faith meaningful opportunities to participate." FAC ¶ 59 & Ex. C.

The only argument offered in response to these allegations is that Plaintiffs do not "allege that Dr. Oz's alleged improper activities are within the business of the partnership nor do they allege that the Media Defendants are conspiring with each other." Def.s' Br. at 10-11. However, Plaintiffs allege that Dr. Oz made the statements acting as a host of "The Doctor Oz" televisions show, which is the exact business undertaking subject to the partnership agreement. Thus, it is clear that Dr. Oz was acting in the scope of the partnership business, or alternatively, as an agent of the general partnership if it were to be found that Dr. Oz himself is not a general partner. These are all factual issues that a jury must decide and are not appropriate for resolution on a 12(b)(6) motion.

## C. Plaintiff Woodard Is Not Alleging an Independent Violation of the CLRA

Consistent with the Court's May 12th Order, Plaintiffs are not alleging a CLRA violation. To the extent that a reference to the CLRA is included in Plaintiff Woodard's UCL claim, Plaintiff notes that conduct that violates certain provisions of California Civil Code Section § 1770 may be actionable under the UCL's "unfair," "fraudulent," or even "unlawful" prongs even if the conduct, standing alone, would not be an independent violation of the CLRA. For example, Section 1770 states "The following *unfair* methods of competition and *unfair or deceptive acts* or practices undertaken by any person in a transaction intended to result or

-18-

1   which results in the sale or lease of goods or services to any consumer are unlawful.."

2   Cal. Civ. Code § 1770 (emphasis added).  This Court noted in its May 12th Order

3   that Plaintiff did not allege "a transaction intended to result or which results in the

4   sale or lease of goods or services to any consumer" with respect to the Media

5   defendants.  So although one of the enumerated "*unfair* methods of competition and

6   *unfair or deceptive acts* or practices" may not be "unlawful" under the CLRA unless

7   they are "undertaken in a transaction intended to result in the sale or lease of goods

8   or services to any consumer," it does not abrogate the fact that the acts or practices

9   described in Section 1770 are still nonetheless "*unfair* methods of competition and

10  *unfair or deceptive acts* or practices." Cal. Civ. Code § 1770.

11       Particularly relevant here is Section 1770(3), which states "Misrepresenting

12  the affiliation, connection, or association with, or certification by, another." Cal. Civ.

13  Code 1770(3).  Plaintiff's complaint alleges that Dr. Oz and the media defendants

14  have misrepresented their affiliation, connection, or association with Defendants

15  Naturex, Interhealth, and/or Labrada by endorsing the products on *The Doctor Oz*

16  *Show*. This is would be prima facie evidence of the "unfair" or "fraudulent" prongs

17  of the UCL, which prohibits persons from engaging in "any unlawful, unfair or

18  fraudulent business act or practice and unfair, deceptive, untrue or misleading

19  advertising…" Cal. Bus. & Prof. 17200. A violation of the unfair or fraudulent prong

20  would also be "unlawful" because "each prong of the UCL is a separate and distinct

21  theory of liability; thus, the 'unfair' practices prong offers an independent basis for

22  relief." *Kearns*, 567 F.3d at 1127. Therefore, if the Media Defendants engaged in the

23  "unfair or deceptive" acts described in Section 1770, such acts are still nonetheless

24  "unfair," "fraudulent" and "unlawful" under the UCL even though perhaps not

25  independently actionable under the CLRA statute.

26

27

28

1

## V.   <u>CONCLUSION</u>

2          For the foregoing reasons, the Media Defendants' Motion must be denied in

3  its entirety.

4

5  Dated:        July 21, 2016              /s/   *Ronald A. Marron*_____

6

7                                          **LAW OFFICES OF RONALD A. MARRON**

8                                          RONALD A. MARRON

9                                          651 Arroyo Drive

                                           San Diego, California 92103
10
                                           Telephone: (619) 696-9006
11                                         Facsimile: (619) 564-6665
12                                         ***Counsel for Plaintiffs and the Class***

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28