1  Matthew L. Marshall, Esq. SBN: 168013
   **MORRIS POLICH & PURDY LLP**
2  1055 West Seventh Street, 24th Floor
   Los Angeles, California 90017
3  Telephone:    (213) 891-9100
   Facsimile:    (213) 488-1178
4  mmarshall@mpplaw.com

5  Beth A. Goodman, Esq. SBN: 299155
   **MORRIS POLICH & PURDY LLP**
6  600 West Broadway, Suite 500
   San Diego, California 92101-3554
7  Telephone:    (213) 891-9100
   Facsimile:    (213) 488-1178
8  bgoodman@mpplaw.com

9  Attorney for Defendant
   INTERHEALTH NUTRACEUTICALS, INC.
10

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14                            EASTERN DIVISION

15

| | |
|---|---|
| 16  VEDA WOODARD, TERESA RIZZO-MARINO, and DIANE MORRISON on behalf of themselves, all others similarly situated, and the general public,<br><br>19           Plaintiff,<br><br>20    vs.<br><br>21  LEE LABRADA, LABRADA BODYBUILDING NUTRITION, INC.; LABRADA NUTRITIONAL SYSTEMS, INC.; DR. MEHMET C. OZ, M.D.; ENTERTAINMENT MEDIA VENTURES, INC., d/b/a OZ MEDIA; ZOCO PRODUCTIONS LLC; HARPO PRODUCTIONS, INC.; SONY PICTURES TELEVISION, INC.; NATUREX, INC.; and INTERHEALTH NUTRACEUTICALS, INC.,<br><br>           Defendants. | Case No. 5:16-cv-00189-JGB (SPx)<br><br>**REPLY IN SUPPORT OF INTERHEALTH NUTRACEUTICALS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:   October 17, 2016<br>Time:   9:00 a.m.<br>Crtrm:  1<br>Judge:  Hon. Jesus G. Bernal |

## TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. ARGUMENT | 2 |
|    A. The Opposition Fails To Identify A Single Specific Representation Made By InterHealth On Which The Plaintiffs Relied. | 2 |
|    B. The Claim for Aiding and Abetting Cannot be Sustained by the Existence of a Blank Form Agreement and Merely the Supply of Super Citrimax®. | 3 |
|    C. The Opposition Concedes That the FAC Does Not Include a Recitation of the Terms of any Alleged Agreements Between InterHealth and Labrada and/or Dr. Oz. | 5 |
|       1. The FAC Contains Insufficient Allegations as to an Alleged Agreement Between InterHealth and Labrada. | 5 |
|       2. The FAC Contains Insufficient Allegations of any Agreement with Dr. Oz. | 6 |
|    D. The FAC Contains No Express Warranty Made by InterHealth and Pleads No Terms of An Operative Agreement Under Which They Are Intended Third Party Beneficiaries. | 7 |
|    E. Plaintiffs Allegations Do Not Sufficiently Plead Any Claim Under Consumer Protection Statutes. | 8 |
|       1. Plaintiffs Fail to Allege an Actionable Transaction to Support Their CLRA Claim, or Specific and Actionable Misrepresentations by InterHealth to Support Their Claims under FAL, UCL and CLRA. | 9 |
|       2. InterHealth Does Not Manufacture or Sell a Consumer Product and Made No Express Warranties. | 9 |
|       3. InterHealth Does Not Engage in a Consumer-Oriented Action Under N.Y. Gen. Bus. Law §§ 349, 350. | 10 |
|    F. Group Pleading is Improper in This Case. | 11 |
| III. CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Anderson v. Angelone,*
    86 F.3d 932 (9th Cir.1996) .................................................................... 4

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) .............................................................. 10

*Klein v. Duchess Sandwich Co.,*
    14 Cal. 2d 272 (1939) ............................................................................ 8

*Luis v. Orcutt Town Water Co.,*
    204 Cal. App. 2d 433 (1962) ................................................................. 7

*Mahoney v. Endo Health Sols., Inc.,*
    No. 15CV9841(DLC), 2016 WL 3951185, at *3 (S.D.N.Y. July 20, 2016) ..... 11

*McKell v. Washington Mutual, Inc.,*
    142 Cal.App.4th 1457 (2006) ................................................................ 6

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989) ............................................................... 12

*Neilson v. Union Bank of California, N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................. 4

*Ray v. BlueHippo Funding, LLC,*
    No. C06-01807 JSW, 2008 WL 1995113, at *5 (N.D. Cal. May 6, 2008) ......... 9

*Schulz v. Neovi Data Corp.,*
    152 Cal.App.4th 86 (2007) .................................................................... 5

*Shurpin v. Elmhirst,*
    148 Cal. App. 3d 94 (1983) ................................................................... 7

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ............................................................... 11

### Statutes

15 U.S.C. § 2301(1) ..................................................................................... 10

15 U.S.C. § 2301(13) ................................................................................... 10

15 U.S.C. § 2301(4) ..................................................................................... 10

Cal. Civ. Code § 1761(d) .............................................................................. 9

Cal. Civ. Code § 1761(e) .............................................................................. 9

| | |
|---|---|
| Magnuson–Moss Warranty Act ("MMWA") | 9, 10 |
| N.Y. Gen. Bus. Law § 349 | 10, 11 |
| N.Y. Gen. Bus. Law § 350 | 10, 11 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 8 | 1 |
| Fed. R. Civ. P. 9(b) | 12 |

## I. INTRODUCTION

Plaintiffs Veda Woodard, Teresa Rizzo-Marino, and Diane Morrison's ("Plaintiffs") Opposition to InterHealth Nutraceuticals, Inc.'s ("InterHealth") Motion to Dismiss ("Motion") fails to rebut the substantive legal arguments raised in InterHealth's Motion. Indeed, the Opposition all but concedes that the First Amended Complaint ("FAC"), (1) fails to allege that InterHealth itself made any direct, specific misrepresentations on which Plaintiffs relied; and (2) fails to allege the time, persons, statements, or falsity of specific fraudulent statements that were allegedly made directly by InterHealth.

The Opposition also concedes that all of the statements and representations on which Plaintiffs' fraud claims are based were allegedly made either by Labrada on its product's label, or alternatively, by Dr. Oz on his television show, but not by InterHealth. While the FAC alleges that InterHealth is vicariously liable for these misrepresentations due to a purported (and unsigned) licensing agreement between Labrada and InterHealth (FAC at ¶66), or due to the existence of an implied but not actually identified "co-branding" agreement between Dr. Oz and InterHealth (FAC at ¶18), the Opposition fails to address the fact that the allegations regarding such purported agreements or their terms fail to meet the most minimal pleading requirements under federal and state law. Indeed, the Opposition even concedes that the contractual provisions alleged in the FAC are "boilerplate" rather than actual provisions of a contract actually entered into between InterHealth and Labrada. (Opp. at 3)[1] Such speculative allegations are

---

[1] The Plaintiffs' reliance on the unsigned Licensing Agreement is not only improper from the standpoint of an analysis under Rule 8, but also is confusing, if not misleading, in that the Exhibits referred to in the blank Licensing Agreement are not attached to Exhibit B to the First Amended Complaint, and the exhibits that are in fact attached to Exhibit B, pertain to a Naturex Licensing Agreement, not an InterHealth Licensing Agreement.

neither plausible nor do they allow the Court to draw a reasonable inference that InterHealth is liable.

While the FAC make conclusory attempts to cure these defects by alleging that InterHealth aided and abetted the Labrada Defendants, it nonetheless alleges no facts indicating that InterHealth made any decision to participate in any of the alleged wrongful conduct of the Labrada Defendants or the other defendants i.e. the packaging, labeling, marketing, advertising and sale of The Products, or that it actually packaged, labeled, marketed or advertised The Products.

Further, the Opposition fails to cite to any factual or legal grounds that InterHealth is a manufacturer, labeler, seller, supplier or warrantor of a consumer product ingested by the Plaintiffs, or that it otherwise engaged in a consumer-oriented act that is actionable under California and/or New York consumer-protection statutes, and the cases cited in the Opposition are either inapposite or distinguishable from the facts of this case. For these reasons and those set forth in the Motion, the Motion should be granted without further leave to amend.

## II. ARGUMENT

### A. The Opposition Fails To Identify A Single Specific Representation Made By InterHealth On Which The Plaintiffs Relied.

The Opposition argues that Plaintiffs have sufficiently alleged their fraud claims because "the FAC explains that InterHealth (the "who") made the "Dual Action Fat Buster" and related statements (the "what") on the packaging and in their advertising of the Labrada Product..." (Opp. at 8)

However, this is not what Plaintiffs actually pleaded in the FAC. What the FAC alleges is that "Defendants" (without any distinction made among them) made material representations that The Products contain "Zero Fillers, Zero Binders, and Zero Artificial Ingredients" and that The Products contain "Standardized" amounts of ingredients. (FAC ¶¶ 145-146) In fact, the FAC specifically alleges that "[t]he Labrada Defendants made material representations

2
REPLY IN SUPPORT OF INTERHEALTH NUTRACEUTICALS, INC.'S MOTION TO DISMISS

to Plaintiff and the Class members that the Labrada Products are effective at providing weight loss benefits capable of "busting their body fat" (FAC ¶ 145) but does not specifically allege that InterHealth made any such statement. The FAC further argues that "Defendants actively concealed material facts," (FAC ¶ 150) and "Defendants…had knowledge that their representations concerning the Products are false and misleading" (FAC ¶ 154) but never specifically alleges how InterHealth knowingly concealed such facts from the Plaintiffs.

Accordingly, the Opposition fails to identify a single specific representation made by InterHealth on which the Plaintiffs based their respective decisions to purchase The Products. The FAC pleads reliance only by reason of the purchase of The Products (FAC ¶ 159), the statements made by Dr. Oz (FAC ¶¶ 194-196), and representations made on the packaging of The Products. (FAC ¶¶ 70-86) As InterHealth argues in its Motion, these failures are fatal to all Plaintiffs' causes of action as the entire complaint is grounded in the alleged fraud.

**B. The Claim for Aiding and Abetting Cannot be Sustained by the Existence of a Blank Form Agreement and Merely the Supply of Super Citrimax®.**

Plaintiffs argue that InterHealth aided and abetted the alleged tortious conduct based on an unsigned boilerplate trademark licensing agreement between InterHealth and Labrada from 2002. (Opp. at 8-9) As detailed *infra,* the mere existence of this purported agreement (which by its terms governs Labrada's use of the Super Citrimax® trademark and use of licensed materials), does not subject InterHealth to liability for Labrada's packaging, marketing, or advertising of The Products, that is, even if a fully executed agreement was actually attached to the FAC or if its terms were recited. Plaintiffs then argue InterHealth aided and abetted the Labrada Defendants merely by providing Labrada with Super Citrimax®. (Opp. at 9)

///

**REPLY IN SUPPORT OF INTERHEALTH NUTRACEUTICALS, INC.'S MOTION TO DISMISS**

First, since there is no operative contract between InterHealth and Labrada before the court, and Plaintiffs have failed to plead the terms of any operative agreement, there is no agreement before the Court for the Court to consider. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996) (noting that a district court cannot rely on "materials outside the pleadings in support or opposition to [a] motion [to dismiss].")

However, even if the Court considers Plaintiffs' alleged agreement, the conduct Plaintiffs allege against InterHealth, i.e. entering into the licensing agreement with the Labrada Defendants and supplying an ingredient to the Labrada Defendants, does not rise to the level of substantial assistance in committing the specific primary violation as a matter of law. In *Neilson v. Union Bank of California, N.A.*, the plaintiffs sued four banks and an investor, Slatkin, for running a Ponzi scheme. Plaintiffs alleged the banks substantially assisted Slatkin's crime through their banking operations by "utiliz[ing] *atypical* banking procedures ... to accommodate" the Ponzi scheme. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1109, 1120 (C.D. Cal. 2003) (emphasis added). The court found that these alleged atypical acts comprised substantial assistance and were pleaded with the requisite specificity. *Id.* at 1121

This case is inapposite to *Neilson*. Here, other than conclusory allegations that InterHealth controlled the Products' labeling, Plaintiffs allege only that InterHealth entered into a licensing agreement with the Labrada Defendants and sold them an ingredient used in one of The Products. Plaintiffs do not plead any specific facts supporting their argument that InterHealth substantially assisted in the specific primary violation, i.e. the alleged fraudulent statements made on the labeling, packaging, marketing, and advertising of The Products by the Labrada Defendants. In *Schulz v. Neovi Data Corp.*, the plaintiff brought suit against EZ Expo, an Internet site alleged to operate as an illegal online lottery. *Schulz v. Neovi Data Corp.*, 152 Cal.App.4th 86, 89 (2007). Plaintiff alleged that two of

the other four defendants, who processed online payments, aided and abetted EZ Expo's operation of the illegal online lottery. The court held that the plaintiff's allegations that the two defendants' knew that EZ Expo's website was an illegal lottery but nonetheless still allowed EZ Expo to use their payment systems (and thus received profits), was insufficient to state a claim for aiding and abetting because those allegations of the otherwise benign actions did not sufficiently show "substantial assistance or encouragement" in the illegal lottery. *Schulz*, 152 Cal.App.4th at 97.

Like in *Schulz*, here, Plaintiffs have only alleged that InterHealth sold an ingredient used in one of The Products to the Labrada Defendants and entered into a licensing agreement with the Labrada Defendants. Plaintiffs do not allege facts showing that InterHealth actively participated or provided any assistance in the specific primary violation they allege. Plaintiffs' failure to do so is fatal to their aiding and abetting claim.

### C. The Opposition Concedes That the FAC Does Not Include a Recitation of the Terms of any Alleged Agreements Between InterHealth and Labrada and/or Dr. Oz.

#### *1. The FAC Contains Insufficient Allegations as to an Alleged Agreement Between InterHealth and Labrada.*

Plaintiffs base the arguments in their Opposition on an agreement they allege was entered into between InterHealth and Labrada that is "similar" to Exhibit B to the FAC. However, Plaintiffs fail to even meet the minimum pleading requirements for the existence of this contract. "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect. In order to plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489 (2006) (internal citations omitted).

Plaintiffs admit that the contract attached to the FAC as Exhibit B is "similar" to the contract they allege exists between InterHealth and Labrada but not the operative contract. (Opp. at 3) Further, Plaintiffs fail to allege any of the substance of the relevant terms of this "similar" agreement including whether this "similar" agreement gives InterHealth any actual control over the content that appears on the labels and packaging of products containing Super Citrimax®. Plaintiffs fail to allege anything about the "similar" agreement aside from the fact that it allegedly exists. Moreover, the blank, unsigned agreement is not between InterHealth and Labrada—in fact it is not between InterHealth and anyone. It is completely irrelevant. Accordingly, Plaintiffs have failed to allege facts that would establish liability for InterHealth based on this "similar" agreement.

      2.   *The FAC Contains Insufficient Allegations of any Agreement with Dr. Oz.*

Plaintiffs impliedly allege that there is some sort of "co-branding" agreement between InterHealth and Dr. Oz (FAC at ¶18), yet have utterly failed to allege any details regarding the terms of such an agreement, failing to meet the pleading requirements for a contract detailed in *McKell*. The Opposition merely presupposes that such an agreement exists, and then concludes that InterHealth must have had involvement or control over the content of the Dr. Oz episode in question. Indeed, the FAC does not allege that either the words "InterHealth," "Super Citrimax®" or "Labrada" were ever mentioned in the episode. Plaintiffs merely argue that because Dr. Oz allegedly called Garcinia Cambogia a "Dual Action Fat Buster" in an episode, InterHealth is then liable for any and all claims made in the program regarding the finished product. If, as Plaintiffs allege, InterHealth's "co-branding strategy" involves consumer identification of its brand names and logos, why would the episode not even mention its brand name or

///
///

show its logo? Plaintiffs have no facts to support their allegation of an agreement with Dr. Oz and have not adequately pleaded the existence of such an agreement[2].

### D. The FAC Contains No Express Warranty Made by InterHealth and Pleads No Terms of An Operative Agreement Under Which They Are Intended Third Party Beneficiaries.

Plaintiffs argue they are third party beneficiaries to the alleged licensing agreement between InterHealth and the Labrada Defendants and thus can allege warranty claims without showing direct contractual privity with InterHealth. (Opp. at 13) However, to enforce a claim as a third party beneficiary, Plaintiffs "must plead a contract which was made expressly for [their] benefit and one in which it clearly appears [they were] a beneficiary." *See Luis v. Orcutt Town Water Co.*, (1962) 204 Cal.App.2d 433, 441-442. As described *supra*, since there is no operative contract between InterHealth and Labrada before the Court, and Plaintiffs have failed to plead the terms of any operative agreement, there is no agreement for the Court to consider relating to Plaintiffs' third party beneficiary claims. Even if the Court were to consider the "similar" agreement Plaintiffs attach to the FAC as Exhibit B, this agreement is clearly not intended to benefit Plaintiffs', barring Plaintiffs recovery on their third party beneficiary theory. *See Shurpin v. Elmhirst*, (1983) 148 Cal.App.3d 94, 103 (holding that because the contract's intended purpose was not to benefit the appellant, she could not bring an action to enforce it as a third party beneficiary.)

Moreover, the cases Plaintiffs cite to support their arguments are dissimilar. In *Klein v. Duchess Sandwich Co.*, 14 Cal. 2d 272 (1939) the court found that consumers had the right to rely upon <u>implied</u> representations of the *manufacturer*

---

[2] As argued in the Motion, the episode of The Doctor Oz show Plaintiffs base their claims against InterHealth on aired on October 29, 2012, making Plaintiffs' claims based on these facts barred by the statute of limitations. Plaintiffs fail to even address this statute of limitations issue in their opposition.

of articles of food even if no privity existed between the manufacturer and Plaintiff. *Klein,* 14 Cal. 2d at 278. Because InterHealth does not manufacture The Products, it is not a "manufacturer" as described in *Klein.* The other cases Plaintiffs cite do not even address third party beneficiaries and all relate to manufacturers of goods, not ingredient suppliers like InterHealth. Under these facts, InterHealth cannot be liable for any breach of express warranty to Plaintiffs as intended third party beneficiaries[3].

Finally, Plaintiffs argue that the "similar" agreement gave InterHealth "unbridled control over the content of the Labrada Duel Action Fat Buster Product label" and thus, the express warranties on the label are really just InterHealth's own express warranties. (Opp. at 14) Again, since there is no operative contract between InterHealth and Labrada before the Court, and Plaintiffs have failed to plead the terms of any operative agreement, there is no agreement for the Court to consider relating to Plaintiffs' express warranty allegations. The allegation of "unbridled control" is merely conclusory and unsupported by specific facts.

### E. Plaintiffs Allegations Do Not Sufficiently Plead Any Claim Under Consumer Protection Statutes.

The Opposition fails to cite to any factual or legal grounds that InterHealth is a manufacturer, labeler, seller, supplier or warrantor of a consumer product ingested by the Plaintiffs, or that it otherwise engaged in a consumer-oriented act that is actionable under California and/or New York consumer-protection statutes.

///
///
///

---

[3] Plaintiffs argue that InterHealth is liable for breach of implied warranties. (Opp. at 14-17.) Plaintiffs did not plead causes of action for breach of implied warranty against InterHealth in the FAC. Therefore, InterHealth cannot be held liable for breach of implied warranties.

       *1.   Plaintiffs Fail to Allege an Actionable Transaction to Support Their CLRA Claim, or Specific and Actionable Misrepresentations by InterHealth to Support Their Claims under FAL, UCL and CLRA.*

Plaintiffs argue that "[t]he transactions between InterHealth and Labrada alleged in the FAC were intended to result in a future sale to a consumer," making InterHealth liable under the CLRA. (Opp. at 12) In the FAC, Plaintiff alleges that InterHealth provides Labrada with the ingredient Super Citrimax®. The Opposition fails to address the fact that the FAC does not allege any "transaction" between InterHealth and Labrada as it is defined in Cal. Civ. Code § 1761(e). In fact, no such "transaction" can exist because neither InterHealth nor Labrada are consumers as defined by Cal. Civ. Code § 1761(d).

Further, the Opposition still does not identify any specific misrepresentations made by InterHealth, or alternatively, any reliance by the Plaintiffs on any statements allegedly made by InterHealth to support their claims under the CLRA, FAL, or UCL. Plaintiffs argue that InterHealth is liable under the CLRA, FAL, and UCL based on their allegations of aiding and abetting. However, the case they cite to support their argument, *Ray v. BlueHippo Funding, LLC*, No. C06-01807 JSW, 2008 WL 1995113, at *5 (N.D. Cal. May 6, 2008) only relates to claims brought under the UCL, not the CLRA or FAL. Further, as stated *supra*, Plaintiffs fail to adequately plead InterHealth aided and abetted the Labrada Defendants in the commission of any specific tortious activity. Therefore Plaintiffs' claims under the CLRA, the FAL and UCL must be dismissed.

       *2.   InterHealth Does Not Manufacture or Sell a Consumer Product and Made No Express Warranties.*

First, Plaintiffs FAC does not support a claim a claim against InterHealth for violations of The Magnuson–Moss Warranty Act ("MMWA") because Plaintiffs have (1) failed to adequately plead a cause of action for breach of express

warranty and (2) failed to even plead a cause of action for breach of implied warranty against InterHealth. As Plaintiffs argue in the Opposition, claims under the MMWA "stand or fall" with "express and implied warranty claims under state law" and dismissal of a claim under the MMWA is appropriate when Plaintiffs' express and implied warranty claims are not adequately pled. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022, 1027 (9th Cir. 2008).

Further, Plaintiffs argue that InterHealth is a supplier within the meaning of the MMWA because it is engaged in the business of making a consumer product directly or indirectly available to consumers. InterHealth sells ingredients to manufacturers of dietary supplements and functional foods & beverages. (FAC ¶ 65.) InterHealth does not sell ingredients directly or indirectly to consumers. "Consumer products," are defined as any tangible personal property which is distributed in commerce and normally used for personal, family, or household purposes. 15 U.S.C. § 2301(1). "Distributed in commerce" means sold in commerce, introduced or delivered for introduction into commerce, or held for sale or distribution after introduction into commerce. 15 U.S.C. § 2301(13). InterHealth's ingredients are neither consumer products nor are they distributed in commerce. InterHealth is not a supplier as defined by 15 U.S.C. § 2301(4).

> 3. *InterHealth Does Not Engage in a Consumer-Oriented Action Under N.Y. Gen. Bus. Law §§ 349, 350.*

Plaintiffs argue that "sales of the Labrada Products are 'consumer oriented' under New York law and thus Plaintiff Morrison has stated a plausible claim for relief under § 349." (Opp. at 19) InterHealth does not sell the Labrada Products and thus, cannot be held liable based on sales of the Labrada Products. Further, InterHealth sells ingredients to manufacturers of dietary supplements and functional foods & beverages. (FAC ¶ 65) InterHealth does not sell these ingredients to consumers. Therefore, InterHealth has not engaged in any action directed at consumers. All of the alleged deceptive, false, or misleading conduct

10

REPLY IN SUPPORT OF INTERHEALTH NUTRACEUTICALS, INC.'S MOTION TO DISMISS

alleged in the FAC is based on the packaging, labeling, advertising, and marketing of The Products, all of which InterHealth had no involvement. Thus, any alleged deceptive act or misrepresentation of InterHealth is not a "consumer oriented" act actionable under N.Y. Gen. Bus. Law §§ 349, 350. Plaintiffs allegations in the FAC do not, and cannot, support a plausible claim for Unfair Trade Practices or False Advertising as to InterHealth.

### F. Group Pleading is Improper in This Case.

Finally, group pleading is not proper as Plaintiffs argue in the Opposition. The case Plaintiffs cite, *Mahoney v. Endo Health Sols., Inc.*, No. 15CV9841(DLC), 2016 WL 3951185, at *3 (S.D.N.Y. July 20, 2016), is distinguishable. In *Mahoney*, all defendants had previously signed a settlement agreement in which all defendants accepted responsibility for manufacturing fluoride tablets with less than the stated amount of fluoride ion on the tablets' label. *Mahoney*, 2016 WL 3951185, at *3. Under those facts the court found that Plaintiffs' group pleading did not warrant dismissal. Here, no such admission of responsibility has been made by any of the defendants. Plaintiff alleges that "each Defendant in this case played a role in the advertising of the false and deceptive Labrada weight loss products" and thus group pleading is permissible. (Opp. at 10) As stated *supra*, Plaintiffs cannot support their argument that InterHealth had any involvement in the packaging, marketing, or advertising of The Products by the Labrada Defendants or the Media Defendants.

Allegations of fraud must, at a minimum "identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (internal brackets omitted)). Here, group pleading is certainly improper and does not meet the heightened pleading requirements of Rule 9(b).

///

///

### III. CONCLUSION

Plaintiffs' Opposition, like the FAC, fails to allege that InterHealth itself made any direct, specific misrepresentations on which Plaintiffs relied and this shortcoming cannot be cured by Plaintiffs inadequate aiding and abetting allegations. The arguments in the Opposition are based on statements and representations allegedly made either by Labrada on its product's label, or alternatively, by Dr. Oz on his television show, but not by InterHealth. Plaintiffs unsuccessfully attempt to plead a claim for vicarious liability based on an unsigned form licensing agreement and an alleged (but not defined) co-branding agreement between Dr. Oz and InterHealth. However, there are no agreements for the Court to consider, as Plaintiffs do not attach operative agreements to the FAC or the Opposition and fail to plead the terms of the alleged agreements.

Further, the Opposition is deficient as to how InterHealth is a manufacturer, labeler, seller, supplier or warrantor of a consumer product or that it otherwise engaged in a consumer-oriented act that is actionable under California and/or New York consumer-protection statutes. For all the reasons stated above, and those detailed in InterHealth's Motion to Dismiss, this Court should grant InterHealth's Motion to Dismiss Plaintiffs' Complaint in its entirely, without leave to amend.

Dated: September 23, 2016    MORRIS POLICH & PURDY, LLP

By: /s/ Beth A. Goodman
　　Matthew L. Marshall
　　Beth A. Goodman
　　Attorneys for Defendant,
　　InterHealth Nutraceuticals, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2016, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, and will be served electronically to designated CM/ECF participant counsel through the Court's electronic filing system.

**MORRIS POLICH & PURDY LLP**

/s/ Beth A. Goodman
　　Attorney for Defendant,
　　InterHealth Nutraceuticals, Inc.