UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-189 JGB (SPx)** | Date | January 9, 2023 |
| Title | *Veda Woodard, et al. v. Lee Labrada, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Michael T. Houchin<br>Timothy Douglas Cohelan | Jaikaran Singh |

**Proceedings:** **Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 476); and (2) GRANTING Plaintiff's Motion for Costs and Incentive Award (Dkt. No. 475)**

Before the Court are Plaintiff's unopposed motion for final approval of class action settlement ("Motion for Final Approval," Dkt. No. 476) and motion for costs and incentive award ("Motion for Costs," Dkt. No. 475) (jointly, the "Motions"). After considering the papers filed in support of the Motions, as well as oral argument on January 9, 2023, the Court **GRANTS** the Motions.

## I.   BACKGROUND

On February 2, 2016, Plaintiff Veda Woodward ("Ms. Woodard" or "Plaintiff") filed a class action complaint against Defendants Lee Labrada; Labrada Bodybuilding Nutrition, Inc.; Labrada Nutritional Systems, Inc.; Dr. Mehmet C. Oz., M.D.; Entertainment Media Ventures, Inc.; Zoco Productions, LLC; Harpo Productions, Inc.; Sony Pictures Television, Inc.; Naturex, Inc.; and Interhealth Nutraceuticals Inc. (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) The Complaint alleged that Defendants violated consumer protection laws by misrepresenting the effectiveness of Labrada weight-loss supplement products, namely the Labrada Green Coffee Bean Extract and the Labrada Garcinia Combogia. (Id.)

On June 2, 2016, Ms. Woodard, along with former plaintiffs Teresa Rizzo-Marino and Diane Morrison, filed a first amended complaint asserting numerous causes of action: (1) fraud, deceit, and suppression of facts under Cal. Civ. Code §§ 1709–1711 and the common law of all states; (2) negligent misrepresentation under Cal. Civ. Code § 1710(2) and the common law of all

states; (3) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (4) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1700, et seq.; (5) violations of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; (6) breach of express warranty under Cal. Comm. Code § 2313; (7) breach of implied warranty of merchantability under Cal. Comm. Code § 2314; (8) breach of express warranty under N.Y. U.C.C. § 2-313; (9) breach of implied warranty under N.Y. U.C.C. § 2-314; (10) breach of express warranties to intended third-party beneficiaries; (11) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.; (12) unfair trade practices under N.Y. Bus. Law § 349; and (13) false advertising under N.Y. Bus. Law § 350.  ("FAC," Dkt. No. 88.)

Ms. Woodard is the sole remaining named plaintiff and class representative, and Labrada Bodybuilding Nutrition, Inc. ("Labrada") is the sole remaining defendant in this action.  (See Motion for Final Approval at 3.)  On August 31, 2021, the Court certified two classes:

> (1) "All persons in California who purchased the Labrada Green Coffee Bean Extract Product for personal and household use and not for resale from February 2, 2012 until the date class notice is disseminated"; and
>
> (2) "All persons in California who purchased the Labrada Garcinia Cambogia Product for personal and household use and not for resale from February 2, 2012 until the date notice is disseminated."

("Class Certification Order," Dkt. No. 444, at 57.)

On July 7, 2022, the Court preliminarily approved this class action settlement. ("Preliminary Approval Order," Dkt. No. 474.)  On November 3, 2022, Plaintiff filed the Motion for Costs, and on November 21, 2022, Plaintiff filed the Motion for Final Approval.  Both Motions are unopposed.

## II.  LEGAL STANDARD

**A.  Class Action Settlement**

A court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To determine whether a settlement meets that standard, courts consider the following non-exhaustive factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted).

Whether to approve a class action settlement is committed to the court's "sound discretion." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Although a strong judicial policy favors settlement of class actions, see id., the court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement—the agreement must "stand or fall in its entirety." Hanlon, 150 F.3d at 1026.

To approve a class action settlement, the court typically conducts a three-step inquiry. See, e.g., Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, if applicable, the court assesses whether the parties have met the notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. See id. Second, the court determines whether the parties have satisfied the notice requirements of Federal Rule of Civil Procedure 23(c)(2).[1] See id. Third, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

### B. Attorneys' Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). To calculate reasonable attorneys' fees in a common-fund case, the Court has discretion to utilize either (1) the lodestar method or (2) the percentage-of-the-fund method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Whether to use one method over the other is in the Court's discretion; however, the use of the percentage method in common-fund cases appears to be dominant. Id.

Under the percentage-of-recovery method, 25% of a common fund is the benchmark for attorneys' fees awards. In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Meanwhile, under the lodestar method, a "a lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id. at 941 (citing Staton, 327 F.3d at 965). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. Id. at 1050–51.

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

# III. SETTLEMENT AGREEMENT

The parties finalized and executed the settlement agreement on June 1, 2022. ("Agreement," Dkt No. 468-3.)

## A. Class Members

The Agreement defines "Settlement Classes" or "Class Members" as the following two certified classes:

(1) Green Coffee Bean Extract Class: "All persons in California who purchased the Labrada Green Coffee Bean Extract product for personal and household use and not for resale from February 2, 2012, until the date class notice is disseminated"; and

(2) Garcinia Cambogia Class: "All persons in California who purchased the Labrada Garcinia Cambogia product for personal and household use and not for resale from February 2, 2012, until the date notice is disseminated."

(Id. § 2.1(II).) The Labrada Coffee Bean Extract product and the Labrada Garcinia Cambogia product are jointly known as "Class Products." (Id. § 2.1(CC).)

## B. Monetary Relief

Under the Agreement, Labrada will pay $625,000 ("Settlement Amount") into a settlement fund ("Settlement Fund"). (Id. §§ 2.1(HH), (JJ).) The Settlement Fund will pay for, among other things, the following: authorized claims to Class Members, the costs of settlement administration and notice to Class Members, Class Counsel's fees and expenses, and an incentive award to Ms. Woodard. (Id. § 5.1(3)(b).)

Class Members who submit a claim with proof of purchase for one or more Class Products will receive $5 in cash from the Settlement Fund for each purchase reflected on the proofs of purchase—for up to ten products purchased during the class period. (Id. § 5.1(1)(a).) Class Members who submit a claim without proof of purchase will receive $5 in cash from the Settlement Fund for each product purchased during the class period—for up to four products during the class period. (Id. § 5.1(1)(b).) No Class Member shall receive more than $50 in cash from the Settlement Fund. (Id. § 5.1(1)(c).)

If the number of valid claims timely submitted by Class Members exceeds the amount allocated for cash payments to Class Members from the Settlement Fund, then cash payments to participating Class Members who submit timely and valid claims will be reduced pro rata until the funds allocated for Class Member cash payments remaining in the Settlement Fund are exhausted. (Id. § 5.1(1)(d).) If the payments allocated or made from the Settlement Fund are less than $625,000, then 50% of the difference will revert to Labrada and the remaining 50% of the

difference will be transmitted to Smile Train or, alternatively, Consumers Union, as a cy pres beneficiary. (Id. § 5.1(3)(c).)

### C. Injunctive Relief

Under the Agreement, Labrada ceased selling the Class Products on August 1, 2022. (Id. § 5.1(2)(a).)

### D. Attorneys' Fees and Costs

The Agreement provides that Class Counsel shall apply for attorneys' fees and expenses not to exceed 30% of the Settlement Fund or $187,500—whichever is less. (Id. § 7.1.)

### E. Class Representative

The Agreement also provides that Class Counsel shall apply for an incentive award of $5,000 to Ms. Woodard from the Settlement Fund. (Id. § 7.3.)

### F. Release

Class Members agree to release all Class Released Claims against the Released Parties, as defined in the Agreement. (Id. § 6.1.) The Class Released Claims include "any and all claims or allegations relating to the advertising, marketing, labeling or sale of the [Class] Products." (Id. § 2.1(DD).)

### G. Settlement Administrator

The Court appointed Classaura LLC ("Classaura") as the Notice and Settlement Administrator. (Preliminary Approval Order at 10.) Classaura provided Class Notice, processed claims, and administered the settlement. (Agreement § 2.1(H).) Classaura's overall costs total $98,856. ("Retnasaba Decl.," Dkt. No. 476-2, ¶ 21.)

### H. Class Notice

Pursuant to the Court's Preliminary Approval Order, Class Notice consisted of (1) a settlement website, email, and phone line; (2) direct email notice to Class Members who purchased Class Products from the Labrada website; (3) online notice via a Facebook advertising campaign; (4) print publication notice; and (5) a press release via PR Newswire. (See Motion for Final Approval at 6–8; Retnasaba Decl. ¶¶ 7–16.) The notice program was designed to provide Class Members with information on the settlement and their rights, including a description of the settlement's material terms and a date by which Class Members may opt-out or object to the Agreement. (See Motion for Final Approval at 6–8.)

//

I. **Claims, Opt-Outs, and Objections**

Classaura received 18,702 valid claim forms. (Retnasaba Decl. ¶ 19.) Class Members claimed a total of 73,710 Class Product purchases, an average of 3.9 products per valid claim form. (Id.) After deducting Classaura's costs, Class Counsel's costs, and an incentive award for Ms. Woodard from the Settlement Fund, there will be $333,644 available for distribution to settlement class members. Since Class Members claimed a total of 73,710 products purchased, each settlement class member will receive approximately $4.52 per product claimed. (Motion for Final Approval at 11–12.) Since the average number of products purchased was 3.9, settlement class members will receive an average payout of $17.62. (Id. at 12.)

To date, three Class Members have timely requested to opt-out of the Agreement. (Retnasaba Decl. ¶ 20.) No Class Members have objected to the settlement.

## IV.  DISCUSSION

### A. Class Certification

The Court previously certified the Settlement Classes pursuant to Rule 23. (See Class Certification Order at 57; Preliminary Approval Order at 10.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . ."). Nothing has been put forth to challenge or otherwise undermine the Court's certification. See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, at *4 (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23 . . . and hereby reconfirms its order certifying a class."). Accordingly, the Court reconfirms its order certifying the Classes for the purpose of final settlement approval.

### B. Final Settlement Approval

#### 1. CAFA Notice Requirements

A court cannot grant final approval of a class action settlement until each defendant complies with the notice requirements under CAFA. See 28 U.S.C. § 1715(d). Specifically, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve" notice of the proposed settlement "upon the appropriate State official of each State in which a class member resides and the appropriate Federal official . . . ." Id. § 1715(b).

Here, in compliance with CAFA, Classaura compiled a notice packet containing a CD-ROM with the required case documents and a cover letter. (Retnasaba Decl. ¶¶ 3–4; Ex. A.) On June 27, 2022, the notice packet was mailed to the U.S. Attorney General and the California Attorney General via the United States Postal Service. (Id. ¶ 5.) More than 90 days have passed since the date of the CAFA notice, and no objections have been received by the U.S. Attorney

General or the California Attorney General. (Motion for Final Approval at 8.) Accordingly, the Court finds that Labrada complied with CAFA's notice requirements.

### 2. CLRA Notice Requirements

The Court also finds that Labrada complied with the CLRA's notice requirements. See Cal. Civ. Code § 1781(d). On July 29, August 5, August 12, and August 19, 2022, Classaura published notice in the Press Enterprise, a newspaper of general circulation in the county where the case is pending. (Retnasaba Decl. ¶ 7; Ex. B.)

### 3. Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3), like this one, must satisfy the notice provisions of Rule 23(c)(2) and, upon class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23 (c)(2)(B).

As discussed above, the Court-approved Class Notice was disseminated to Class Members in July and August 2022. Class Notice consisted of (1) a settlement website, email, and phone line; (2) direct email notice to Class Members who purchased Class Products from the Labrada website; (3) online notice via a Facebook advertising campaign; (4) print publication notice; and (5) a press release via PR Newswire. (See Motion for Final Approval at 6–8; Retnasaba Decl. ¶¶ 7–16.) Notably, the settlement website, which "includes a summary of the case, a list of important dates, answers to frequently asked questions, key case filings, and contact information," has been visited more than 162,377 times. (Motion for Final Approval at 8; Retnasaba Decl. ¶ 15.) Classaura emailed notice to 256 unique purchaser email addresses, of which 235 emails were successfully delivered. (Retnasaba Decl. ¶ 12.) Additionally, Classaura's Facebook advertising campaign generated more than 15 million impressions and had a reach of more than 14 million unique users. (Id. ¶¶ 9–10.) Finally, the press release was distributed via PR Newswire's California Distribution List and was picked up and republished by at least 301 media outlets. (Id. ¶ 13.)

Based on the Motion for Final Approval and its supporting documents, the Court finds that the Class Notice and notice procedure fairly and adequately informed Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and Class Members' right to exclude themselves from and object to the proposed settlement. Accordingly, the Court finds that the Class Notice was the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B).

### 4. Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is

the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Here, the Court held a final approval hearing on January 9, 2023.

To determine whether the settlement is fair, reasonable, and adequate, courts consider several factors, including "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Staton, 327 F.3d at 959 (citations omitted). Moreover, the settlement may not be a product of collusion among the negotiating parties. See In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). This list of factors is not exhaustive, and "different factors may predominate in different factual contexts." Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

    a. **Strength of Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**

The strength of Ms. Woodard's case favors approval. However, she "acknowledge[s] the risk of proceeding and continuing to litigate this matter." See Woodard v. Labrada, 2019 WL 4509301, at *9 (C.D. Cal. Apr. 23, 2019). Without the settlement, the parties must litigate the ultimate merits of the case—a "long, complex, and expensive" process. Id. As one example, determining whether the Class Products are actually ineffective "would like[ly] devolve into an expensive and uncertain 'battle of the experts.'" Id. at *10. Therefore, the risk, expense, complexity, and likely duration of further litigation also favors approval.

    b. **Amount Offered in Settlement**

The Court reaffirms that the amount offered in settlement weighs in favor of approval. To determine whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459. Here, the Court previously considered the report of Plaintiff's damages expert and found that the Settlement Amount of $625,000 is a reasonable percentage of the estimated damages recoverable at trial. (See Preliminary Approval Order at 7.) Now that Class Members have claimed a total of 73,710 products purchased, each settlement class member will receive approximately $4.52 per product claimed. (Motion for Final Approval at 11–12.) The average payout per settlement class member will be approximately $17.62. (Id. at 12.) This amount is fair and reasonable because it represents recovery of approximately 18.8% of the retail purchase price per each product claimed. (Id.) Accordingly, the Court finds that the Settlement Amount provides meaningful relief to Class Members.

Time: 00:02

### c. Extent of Discovery Completed and the Stage of Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998). "The parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted). "[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008).

Here, the Court previously found that the parties "have vigorously litigated the action for over six years"—including the class certification and summary judgment stages—and "they reached this settlement after intensive arms-length negotiation under the supervision" of an experienced mediator. (Preliminary Approval Order at 6.) The parties have completed substantial discovery, including multiple rounds of written discovery, depositions, and the exchange of expert reports. (Id.) Therefore, the Court finds that this factor weighs in favor of approval.

### d. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Because Class Counsel recommends the settlement, this factor weighs in favor of approval. (See id. at 8.)

### e. Class Members' Reaction to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529. Here, there were only three requests for exclusion by Class Members and zero objections to the settlement. (See Retnasaba Decl. ¶ 20.) Given the low number of opt-outs and the absence of objections, the Court finds that this factor weighs in favor of approval.

### f. Collusion Between the Parties

Finally, the Court reaffirms that there has been no collusion between the parties. (See Preliminary Approval Order at 8.) The settlement was negotiated at arms-length under the supervision of an experienced mediator. (Motion for Final Approval at 13.) This process is in accordance with Rule 23(e)(2)(B).

All of the factors above weigh in favor of approval, and the Court finds that the Agreement is fair, reasonable, and adequate. The Court hereby **GRANTS** the Motion for Final Approval.

**C. Costs and Incentive Award**

Under the Agreement, Class Counsel may seek fees and costs not to exceed 30% of the Settlement Fund or $187,500, whichever is less. Class Counsel hereby requests an award of costs in the amount of $187,500, which is 30% of the Settlement Fund. (See Motion for Costs at 1.) "Because Class Counsel's costs exceed the $187,500 amount set forth in the Agreement, Class Counsel are only seeking an award of costs and not their attorneys' fees." (Id. at 2.) The requested award accounts for 66.6% of Class Counsel's total costs that have not been reimbursed. (Id. at 5.) Such costs are typically recoverable in litigation. Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.") Therefore, the Court finds that an award of $187,500 to Class Counsel is fair and reasonable.

Additionally, under the Agreement, Class Counsel may seek a $5,000 incentive award for Ms. Woodard as the named plaintiff. (See Motion for Costs at 5.) Ms. Woodard "provided substantial assistance that enabled Class Counsel to successfully prosecute the Action including sitting for a deposition, reviewing material filings, continuous communications with Class Counsel throughout the litigation including being on stand-by during the mediations . . . ; reviewing and approving the Settlement Agreement; and being committed to secure substantive relief on behalf of the Class." (Id. at 6.) Further, in one of our sister districts, "a $5,000 payment is presumptively reasonable." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases). Therefore, the Court finds that an incentive award of $5,000 for Ms. Woodard is fair and reasonable.

The Court hereby **GRANTS** the Motion for Costs.

**VII. CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

1. Plaintiff's Motion for Final Approval is **GRANTED**. The parties shall perform their obligations pursuant to the terms of the Agreement and this Order.

2. Plaintiff's Motion for Costs is **GRANTED**. Class Counsel shall receive an award of costs in the amount of $187,500, and Ms. Woodard shall receive an incentive fee in the amount of $5,000.

3. All Class Members who did not validly and timely request exclusion from the settlement have released their claims against the Released Parties, as defined in the Agreement.

4. Except as to any Class Members who have validly and timely requested exclusion, this action is **DISMISSED WITH PREJUDICE**, with all parties to bear their own fees and costs, except as set forth herein and in the prior orders of this Court.

5. Without affecting the finality of this Order, the Court retains jurisdiction over the parties, including Class Members, for the purposes of construing, enforcing, and administering the Order and Judgment, as well as the Agreement itself.

6. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**